# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| KAYLA HOMINSKI and NICHOLAS HOMINSKI | ) Case No.: 1:24-CV-21590-KMM |
| | ) |
| | ) AMENDED COMPLAINT FOR DAMAGES |
| Plaintiff, | ) |
| | ) DEMAND FOR JURY TRIAL |
| v. | ) |
| | ) |
| GUSAR, LLC; COLSEN FIRE PITS, LLC; | ) |
| WAYFAIR, LLC, and NIKL PARTNERS, | ) |
| LLC, as successor in interest to Gusar, LLC, | ) |
| | ) |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiffs, Kayla Hominski and Nicholas Hominski (hereinafter "Plaintiffs"), by and through their undersigned counsel, brings this Complaint against Defendants Gusar, LLC; Colsen Fire Pits, LLC; Wayfair, LLC, and NIKL PARTNERS, LLC, as successor in interest to Gusar, LLC and allege as follows:

1. This is an action for damages arising out of failures relating to Defendants' design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying, and/or selling of the defective tabletop fire pit at issue.

## PARTIES

2. Plaintiff Kayla Hominski is an adult resident and citizen of Sussex County, Delaware and claims damages as set forth below.

3. Plaintiff Nicholas Hominski is an adult resident and citizen of Sussex County, Delaware and claims damages as set forth below.

4.      At all times material hereto, Plaintiffs Kayla Hominski and Nicholas Hominski were and are lawfully married.

5.      Defendant Gusar, LLC ("Defendant Gusar") is a Florida limited liability company with its principal place of business in Miami, Florida. Upon information and belief, Defendant Gusar, LLC has two members, Gustavo Pantin and Armando Colimodo, who are residents and citizens of Florida. Defendant Gusar is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, tabletop fire pits, including the tabletop fire pit at issue.

6.      Defendant Colsen Fire Pits, LLC ("Defendant Colsen") is a Florida limited liability company with its principal place of business in St. Petersburg, Florida. Upon information and belief, Defendant Colsen Fire Pits, LLC has three members, Michael Nebrich, Milton Barbarosh, and Nicholas Connolly, who are residents and citizens of Florida. Defendant Colsen is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, tabletop fire pits, including the tabletop fire pit at issue.

7.      Defendant Wayfair, LLC ("Defendant Wayfair") is a Massachusetts limited liability company registered to do business and doing business in the State of Florida. Upon information and belief, Defendant Wayfair LLC's, sole member is SK Retail, Inc., which is incorporated under the laws of the Commonwealth of Massachusetts, with its principal place of business in Boston, Massachusetts, and thus is a citizen of the Commonwealth of Massachusetts.

Defendant Wayfair is engaged in the business of marketing, distributing, and selling tabletop fire pits, including the tabletop fire pit at issue.

8.     Defendant NIKL Partners, LLC ("Defendant NIKL") is the successor in interest to Gusar, LLC. Defendant NIKL is a Florida limited liability company with its principal place of business in St. Petersburg, Florida. Upon information and belief, Defendant NIKL's sole member is Nicholas Connolly, who is a resident and citizen of Florida. Upon information and belief, Defendant NIKL is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, tabletop fire pits, based on a purchase from Defendant Gusar, LLC.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a)(1). Specifically, there is complete diversity of citizenship between Plaintiffs and Defendants. Plaintiffs are citizens of Delaware, which is different than the Defendants' states of citizenship: Defendant Gusar is a citizen of Florida, Defendant Colsen is a citizen of Florida, Defendant Wayfair is a citizen of Massachusetts, and Defendant NIKL is a citizen of Florida. The amount in controversy exceeds $75,000.00, exclusive of interest and cost.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) by virtue of the facts that (a) a substantial part of the events or omissions giving rise to the claims occurred in this District and (b) Defendants' products are produced, sold to, and consumed by individuals in the State of Florida, thereby subjecting Defendants to personal jurisdiction in this action and making them all "residents" of this judicial District under 28 U.S.C. § 1391(d).

11.    Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has in personam jurisdiction over Defendants because Defendants are present in the

State of Florida, such that requiring an appearance does not offend traditional notices of fair and substantial justice.

## FACTUAL ALLEGATONS

12.     In approximately May 2023, Plaintiff Kayla Hominski purchased Defendants Gusar and Colsen's rectangle tabletop fire pit (hereinafter "Fire Pit") from Defendant Wayfair's website.

13.     The Fire Pit is listed on Wayfair's website as a "Colsen" product, but the User Instruction Card on Defendant Colsen's website ("User Instruction Card") also identifies "Gusar llc."

14.     Defendants Gusar and Colsen advertise their tabletop fire pits, which are designed for indoor and outdoor use, as "Smokeless & Odorless" and "Easy & Safe to Use."[1]

15.     Defendants Gusar and Colsen advertise that "safety and simplicity are paramount, ensuring a worry-free experience. Engineered for user well-being, [the tabletop fire pits] offer hassle-free warmth, ideal for any outdoor gathering."[2]

16.     Upon information and belief, at the time Plaintiff Kayla Hominski purchased the Fire Pit, Defendants Gusar and Colsen promised and promoted that their fire pits "[p]roduce[] barely any smoke and [z]ero odor" and are "[e]asy to light with Isopropyl alcohol and a kitchen lighter and easy to extinguish."[3]

---

[1] *See* Exhibit A – Colsen Rectangular Tabletop Fire Pit, available at https://colsenfirepits.com/products/colsen-rectangular (accessed April 3, 2024).
[2] *Id.*
[3] *See* Exhibit B – Colsen Fire Pits website on March 29, 2023, and *see* Exhibit C – Colsen Fire Pits website on May 26, 2023, accessed through the Way Back archive website available at https://web.archive.org/web/20230329063951/https:/colsenfirepits.com/ (accessed April 4, 2024).

17.     Upon information and belief, at the time Plaintiff Kayla Hominski purchased the Fire Pit, Defendants Gusar and Colsen recommended on their website to use Isopropyl alcohol and that "the higher the percentage of alcohol, the better the alcohol will burn."[4]

18.     On the eve of July 14, 2023, and/or July 15, 2023, at approximately 12:00 AM, Plaintiffs and their two friends decided to enjoy the purchased Fire Pit outside their home.

19.     Plaintiff Nicholas Hominski lit the Fire Pit using a bottle of Isopropyl alcohol, as recommended by Defendants. The Fire Pit burned for about 30 minutes, until it appeared as though the flame had dissipated. After waiting a reasonable period of time, Plaintiff Nicholas Hominski went to re-light the Fire Pit with the same fuel. Plaintiff Kayla Hominski was standing near the Fire Pit at that time when she felt a "woosh" and became engulfed in flames.

20.     Plaintiff Kayla Hominski was in and out of consciousness and transported to the Crozer Burn Hospital in Pennsylvania by emergency helicopter. Kayla Hominski suffered second and third degree burns to 43% of her body as a whole.

21.     Plaintiff Kayla Hominski was hospitalized for almost four weeks, undergoing intubation, two graft surgeries, and a blood transfusion.

22.     Plaintiff Kayla Hominski was discharged from the hospital on or about August 9, 2023.

23.     Plaintiff Kayla Hominski had to take disability leave from work, attend physical therapy twice a week, and for about a month, return to the hospital weekly for bandage changes.

24.     She continues to suffer from injuries caused by the Fire Pit and has significant and permanent scarring and disfigurement. Plaintiff Kayla Hominski has mobility issues, constant pain

---

[4] *See* Exhibit D – "Alcohol as a Fuel Source," Colsen Fire Pits website on March 22, 2023, accessed through the Way Back archive website, available at https://web.archive.org/web/20230322190751/https://colsenfirepits.com/pages/alcohol-as-a-fuel-source-v02 (accessed April 4, 2024).

from nerve damage, and will require significant ongoing medical treatment, including several additional surgeries.

25.     Plaintiff Kayla Hominski was likely the victim of a phenomenon known as "flame-jetting" because she was burned while the Fire Pit was being re-fueled with Isopropyl alcohol.

26.     Flame-jetting can occur during the refueling of an appliance when that appliance is not fully extinguished, and the flame is not readily visible.

27.     The United States Consumer Product Safety Commission ("CPSC") defines "flame-jetting" as follows: "[f]lame jetting is a phenomenon where an external ignition source – such as an open flame – causes a sudden ignition of fuel within a container and forcefully expels burning vapor and liquid from the mouth of the container, resulting in a blowtorch-like effect,"[5] and can cause nearby flammable objects to catch fire.

28.     According to Health Canada, a flame-jetting occurrence is unexpected and occurs in a fraction of a second, making it impossible for the user and/or bystander to react quickly enough to move away from a flame jet, resulting in serious injuries and even fatalities.[6]

29.     As early as 2019, Health Canada began collaborating with the CPSC to set safety standards to address flame-jetting, specifically safety standards related to fire pits and mitigation devices on disposable fuel containers.[7] A "flame arrestor" is an important and necessary mitigation device. The very purpose of a flame arrestor is to prevent flame-jetting.

---

[5] *See* Exhibit E – United States Consumer Product Safety Commissions, "CPSC Requires Lifesaving Flame Mitigation Devices on Gas Cans and Other Portable Fuel Containers" (January 17, 2023), available at https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-Requires-Lifesaving-Flame-Mitigation-Devices-on-Gas-Cans-and-Other-Portable-Fuel-Containers (accessed April 4, 2024).

[6] *See* Exhibit F – Government of Canada, "Health Canada warns Canadians of health and safety risks of certain containers of pourable alcohol-based fuels and certain firepots that use pourable fuels" (Oct. 9, 2019), available at https://recalls-rappels.canada.ca/en/alert-recall/health-canada-warns-canadians-health-and-safety-risks-certain-containers-pourable (accessed April 3, 2024).

[7] *Id.*

30. Flame arrestors resemble a screen that is built into a container's opening, allowing liquid to flow out while at the same time reducing the chance that a flame can travel into and/or near the container and cause flame-jetting.[8]

31. Below are photographic examples of common flame arrestors used on different flammable liquid bottles:



32. By at least 2019, it was known in the industry that fuel containers without flame arrestors should not be utilized to refuel fire pits.[9] It was also known that Isopropyl alcohol is rubbing alcohol and, due to its standard uses, "rubbing alcohol containers typically do not have a flame arrestor."[10]

33. Despite this knowledge, Defendants Gusar and Colsen recommended and still recommend to this day that Isopropyl alcohol is a "good candidate[] for use as a fuel source" for its tabletop fire pits: "Isopropyl alcohol (rubbing alcohol) is an acceptable cooking fuel."[11]

---

[8] *Id.*

[9] *Id.*

[10] *See* Exhibit G – Government of Canada, "Health Canada warns against using rubbing alcohol products to fuel firepots – this can result in serious burn injuries" (last updated Dec. 21, 2023), available at https://recalls-rappels.canada.ca/en/alert-recall/health-canada-warns-against-using-rubbing-alcohol-products-fuel-firepots-can-result (accessed April 3, 2024).

[11] *See* Exhibit H – "Alcohol as a Fuel Source," Colsen Fire Pits' website, available at https://colsenfirepits.com/pages/alcohol-as-a-fuel-source-v02 (accessed April 3, 2024).

34.     Upon information and belief, the User Instruction Card that accompanied the Fire Pit provided to Plaintiffs is identical to or substantially similar to the one currently posted on Colsen Fire Pits' website.[12] The User Instruction Card provides:

## ANYTHING FIRE RELATED MUST COME WITH INSTRUCTIONS. THESE ARE OURS.

Colsen's fire pit is safe to burn indoors and outdoors. • Isopropyl alcohol burns clean and will not put soot on your ceiling. • When properly ventilated, no carbon monoxide will be generated. • Create the perfect environment with fire anytime & anywhere. • Experience near 40+ minutes of real fire time. • Use Isopropyl alcohol at 70% or 91%. • A perfect and safe accessory to make s'mores, use it on your cheese board and much more. • Add essential oils to the top (not inside burner) and create a perfect environment. • Add citronella oil to avoid unwanted bugs. Mix half and half both citronella and alcohol.

### THE WARNINGS

Safety should be a priority when operating the fire pit.

Remember fire pit fuel is highly flammable and extremely dangerous if not handled according to instructions. Be sure to read these safety instructions prior to operating the fire pit.

• Fire pit must be used strictly on horizontal and flat surface.

• Use 70% or 91% isopropyl alcohol as fuel. Never fill the reservoir higher than 1" inch from the edge.

• Flame follows fuel; spilled fuel should be cleaned with a dry paper towel or a rag before lighting.

### THE WARNINGS

• Use only an extended lighter or long match to ignite.

• Never refill, move or touch the fire pit while burning or when it is still hot.

• Cover to extinguish out. Do not attempt to blow out.

• If lit fuel spills, suffocate to extinguish or spray with a fire extinguisher.

• The fire pit should never be activated, handled, or filled by minors.

• Never leave a burning fire pit unattended.

---

[12] *See* Exhibit I – User Instructions, Colsen Fire Pits website on March 22, 2023, accessed through the Way Back archive website, available at Ushttps://web.archive.org/web/20230322190751/https://colsenfirepits.com/pages/instructions-translated er Instructions | Colsen Fire Pits (archive.org) (accessed April 7, 2024).



35.     The User Instruction Card does not mention the terms "flame-jetting" or "flame arrestor," does not warn of the risk of flame-jetting when refueling the Fire Pit, does not describe flame-jetting or its severe and potentially fatal consequences, and does not warn that most Isopropyl alcohol containers do not have flame arrestors and thus their use with the Fire Pit produces a substantial risk of flame-jetting.

36.     The User Instruction Card neither instructs nor warns that fuel, including Isopropyl alcohol, should only be poured from containers or canisters with flame arrestors.

37.     The User Instruction Card does not warn that because Isopropyl alcohol produces flames that may not be readily visible, it is hard or impossible to see if a flame is fully extinguished, which increases the risk of flame-jetting.

38.     In addition to the likely occurrence of flame-jetting, the Fire Pit is prone to cracking, causing fuel to dangerously leak out of the fire pit and allowing flames to extend beyond the boundaries of the Fire Pit.

39.     Defendants knew, or reasonably should have known, that the Fire Pit is prone to cracking because customers brought the issue to the attention of Defendants via, inter alia, online customer reviews.

40.     Amazon.com, Inc., ("Amazon"), like Defendant Wayfair, distributes Defendants Gusar and Colsen's fire pits. Examples of customer reviews from Amazon's website discussing fire pit cracks include but are not limited to the following:

a. June 7, 2022: "[I]t's only been about 3 months and the whole thing is cracking! Obviously can't use it anymore."

b. April 22, 2023: "I foolishly ignored the other reviews that posted about issues with cracking thinking they probably didn't care for the thing properly. Well I did and it's still cracking and the flame are coming out of the sides!"

c. January 31, 2022: "It didn't fall, we went to wipe it down with a dry towel and it just cracked down the middle. Crazy."

d. January 18, 2024: "Got this for Christmas morning. It was amazing and worked great. Yesterday, it developed a crack and started leaking the bio fuel. Immediately trashed. Unsafe product."[13]

41.     Despite knowing that the fire pits are prone to cracking, the User Instruction Card does not adequately warn of the fire risk due to cracks in the Fire Pit.

42.     Instead, Defendants Gusar and Colsen brag that their fire pits are "crafted with a proprietary concrete blend that revolutionizes tabletop designs, ensuring long-lasting quality."[14]

---

[13] Amazon Prime Website "Colsen Black Rectangle Tabletop Fire Pit – Smokeless Odorless Fire Pit – Outdoor Indoor Fireplace – Portable – Table Top Fire Pit – Durable Heat Resistance Concrete Fireplace." Available at https://www.amazon.com/Tabletop-Fireplace-Portable-Concrete-Rectangular/dp/B09WJCQF12/ref=pd_ci_mcx_mh_mcx_views_0?pd_rd_w=WxaT0&content-id=amzn1.sym.8b590b55-908d-4829-9f90-4c8752768e8b%3Aamzn1.symc.40e6a10e-cbc4-4fa5-81e3-4435ff64d03b&pf_rd_p=8b590b55-908d-4829-9f90-4c8752768e8b&pf_rd_r=42SHCXA17X1FEFZNY8MJ&pd_rd_wg=2iw02&pd_rd_r=dda892b6-9fa8-49d7-bc39-7b2124873282&pd_rd_i=B09WJCQF12 (accessed April 5, 2024).
[14] *See* Exhibit A – Colsen Rectangular Tabletop Fire Pit, available at https://colsenfirepits.com/products/colsen-rectangular (accessed April 3, 2024).

## COUNT I
## NEGLIGENT DESIGN
**(Against Defendants Gusar, Colsen, and Wayfair)**

43.     Plaintiffs incorporate Paragraphs 1–42 as if fully set out herein.

44.     Defendants Gusar and Colsen, as the designers, manufacturers, sellers, distributors, and/or suppliers of the Fire Pit, owed a duty to the consuming public in general, including foreseeable users and bystanders such as Plaintiffs here, to exercise reasonable care in designing tabletop fire pits, including the Fire Pit.

45.     Defendant Wayfair, as the seller, distributor, and/or supplier of the Fire Pit, owed a duty to the consuming public in general, including foreseeable users and bystanders, such as Plaintiffs here, to sell, distribute, and/or supply safe and reasonably designed tabletop fire pits, including the Fire Pit.

46.     At all times relevant, Defendants knew, or reasonably should have known, of the Fire Pit's risks and dangers of overheating, flame jetting, and other instances of injury caused by ignited fuel.

47.     At all times relevant, Defendants knew, or reasonably should have known, that users refuel its tabletop fire pits, including the Fire Pit, once it appears the fire has dissipated but when the fire may not be completely extinguished. This scenario greatly increases the risk of flame-jetting if the fire pit is refueled at that time.

48.     At all times relevant, Defendants knew, or reasonably should have known, that a "smokeless" and "odorless" Fire Pit causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions, which, in turn, increases the risk of flame-jetting and/or explosion.

49. At all times relevant, Defendants knew, or reasonably should have known, of the dangers of refueling a fire pit from fuel canisters without flame arrestors or without some other mechanism to eliminate the risk of flame-jetting and/or explosion.

50. At all times relevant, Defendants knew, or reasonably should have known, that one of its recommended fuels—Isopropyl alcohol—is typically sold in containers that do not have flame arrestors, increasing the risk of flame-jetting and/or explosion.

51. At all times relevant, Defendants knew, or reasonably should have known, that designing, manufacturing, selling, distributing, and/or supplying a tabletop fire pit, including the Fire Pit, without some mechanism to eliminate the risk of flame-jetting and/or explosion is dangerous and can lead to flame-jetting, burning bystanders and users. Despite this knowledge, Defendants did nothing to alter the design of its tabletop fire pits, including the Fire Pit, to make them safer to users and bystanders, including Plaintiffs, and in fact recommended using Isopropyl alcohol as fuel, despite that most Isopropyl alcohol containers do not have a flame arrestor. Defendants knew, or reasonably should have known that their Fire Pit should have, at a minimum, been sold with a flame arrestor particularly in light of the recommendation to utilize Isopropyl alcohol as a refueling source.

52. At all times relevant, Defendants knew, or reasonably should have known, that the Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Fire Pit and risking a widespread fire that could severely injure users and/or bystanders, including Plaintiffs.

53. Defendants negligently designed, manufactured, sold, distributed, and/or supplied the Fire Pit, thereby breaching its duties to the public and introducing a defective product into the stream of commerce that ultimately injured Plaintiff, in at least the following ways, by:

a. Choosing not to use the reasonable care a reasonable designer, manufacturer, seller, distributor, and/or supplier would use when designing, manufacturing, selling, distributing, and/or supplying the Fire Pit;

b. Choosing to design, manufacture, sell, distribute, and/or supply the Fire Pit with an unsafe combustion source;

c. Choosing to design, manufacture, sell, distribute, and/or supply the Fire Pit without safety features to prevent against flame-jetting or explosions during re-fueling;

d. Choosing to design, manufacture, sell, distribute, and/or supply the Fire Pit as "smokeless" and "odorless," which causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions;

e. Choosing to design, manufacture, sell, distribute, and/or supply the Fire Pit that is prone to cracking, allowing flames to dangerously escape the Fire Pit;

f. Choosing to design, manufacture, sell, distribute, and/or supply the Fire Pit that is intended to be used with Isopropyl alcohol;

g. Choosing to design, manufacture, sell, distribute, and/or supply the Fire Pit to be used with alcohol that is sold without flame arrestors or other defensive mechanisms that prevent flame-jetting; and

h. Choosing to design the Fire Pit without a flame arrestor or a refueling canister that contained a flame arrestor.

54. In addition, although Defendants knew, or reasonably should have known, at the time of production that its tabletop fire pits, including the Fire Pit, have an unreasonably dangerous risk of flame-jetting and cracking causing serious injury, Defendants failed to act in a reasonably prudent manner and breached their duty by failing to perform the necessary process of data collection, inspection, detection, assessment, monitoring, prevention, and reporting or disclosure of adverse outcomes of individuals who use its tabletop fire pits, including the Fire Pit.

55. At all times relevant to this action, Plaintiffs used the Fire Pit in its intended manner and for its intended purpose and in a manner that was reasonably foreseeable to Defendants.

56. Defendants' negligence in the design of the Fire Pit was the direct and proximate cause of Plaintiff Kayla Hominski's severe burns and Plaintiffs' injuries.

57. As a direct and proximate result of the tortious conduct described herein, Plaintiffs seek to recover the damages identified below.

**COUNT II**
**NEGLIGENT MANUFACTURING**
**(Against Defendants Gusar, Colsen, and Wayfair)**

58. Plaintiffs incorporate Paragraphs 1–42 as if fully set out herein.

59. Defendants Gusar and Colsen, as the designers, manufacturers, sellers, distributors, and/or suppliers of the Fire Pit, owed a duty to the consuming public in general, including foreseeable users and bystanders such as Plaintiffs here, to exercise reasonable care in manufacturing tabletop fire pits, including the Fire Pit.

60. Defendant Wayfair, as the seller, distributor, and/or supplier of the Fire Pit, owed a duty to the consuming public in general, including foreseeable users and bystanders, such as Plaintiffs here, to sell, distribute, and/or supply fire pits, including the Fire Pit, that were manufactured with reasonable care.

61. At all times relevant, Defendants knew, or reasonably should have known, of the Fire Pit's risks and dangers of overheating, flame jetting, and other instances of injury caused by ignited fuel.

62. At all times relevant, Defendants knew, or reasonably should have known, that the Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Fire Pit and risking a widespread fire that could severely injure users and/or bystanders, including Plaintiffs.

63. The Fire Pit contained a manufacturing defect when it left Defendants' possession, and thus Defendants introduced a defective product into the stream of commerce that ultimately

injured Plaintiffs. The Fire Pit differed from Defendants' intended design and/or from other ostensibly identical units of the same product line.

64. Upon information and belief, the Fire Pit that caused Plaintiffs' injuries varied from its intended specifications in one or more of, but not limited to, the following ways:

    a. The Fire Pit was manufactured, sold, distributed, and supplied with one or more cracks;

    b. The Fire Pit was manufactured, sold, distributed, and supplied with subpar material that is prone to cracking or leaking;

    c. The Fire Pit was manufactured, sold, distributed, and supplied without a safety inspection or testing; and

    d. The Fire Pit was manufactured, sold, distributed, and supplied in a condition which prohibited the Plaintiffs from seeing and/or appreciating that the fire had not been completely extinguished.

65. Defendants' Fire Pit was defectively manufactured because:

    a. Defendants failed to use reasonable care—what other manufacturers, sellers, distributors, and suppliers would use under like circumstances—in manufacturing, selling, distributing, and supplying the Fire Pit;

    b. Defendants did not ensure that the Fire Pit was manufactured, sold, distributed, and supplied without cracks, which a reasonably careful manufacturer, seller, distributor, and supplier would have done under like circumstances;

    c. Defendants did not ensure that the Fire Pit was manufactured, sold, distributed, and supplied with a material that prevented cracking or leaking, which a reasonably careful manufacturer, seller, distributor, and supplier would have done under like circumstances;

    d. Defendants did not conduct a safety inspection or conduct testing to ensure that the Fire Pit was manufactured, sold, distributed, and supplied in the manner intended, which a reasonably careful manufacturer, seller, distributor, and supplier would have done under like circumstances; and

    e. As a result, the Fire Pit had a defect.

66. In addition, although Defendants knew, or reasonably should have known, at the time of production that its tabletop fire pits, including the Fire Pit, have an unreasonably dangerous

risk of flame-jetting and cracking causing serious injury, Defendants failed to act in a reasonably prudent manner and breached its duty by failing to perform the necessary process of data collection, inspection, detection, assessment, monitoring, prevention, and reporting or disclosure of adverse outcomes of individuals who use its tabletop fire pits, including the Fire Pit.

67.     At all times relevant to this action, Plaintiffs used the Fire Pit in its intended manner and for its intended purpose and in a manner that was reasonably foreseeable to Defendants.

68.     Defendants' negligence in the manufacture of the Fire Pit, was the direct and proximate cause of Plaintiff Kayla Hominski's severe burns and Plaintiffs' injuries, i.e., the manufacturing defect caused Plaintiff Kayla Hominski to be a victim of flame-jetting and/or an explosion due to leaked fuel and caused her severe burns and injuries.

69.     As a direct and proximate result of the tortious conduct described herein, Plaintiffs seek to recover the damages identified below.

## COUNT III
### NEGLIGENT FAILURE TO WARN
**(Against Defendants Gusar, Colsen, and Wayfair)**

70.     Plaintiffs incorporate Paragraphs 1–42 as if fully set out herein.

71.     Defendants Gusar and Colsen, as the designers, manufacturers, sellers, distributors, and/or suppliers of the Fire Pit, owed a duty to foreseeable users and bystanders, such as Plaintiffs here, to warn about the dangers of the Fire Pit, because Defendants either knew, or should have known, of these risks at the time it designed, manufactured, marketed, distributed, supplied, and/or sold the Fire Pit.

72.     Defendant Wayfair, as the seller, distributor, and/or supplier of the Fire Pit, owed a duty to foreseeable users and bystanders, such as Plaintiffs here, to warn about the dangers of the

Fire Pit, because Defendant either knew, or should have known, of these risks at the time it marketed, distributed, supplied, and/or sold the Fire Pit.

73.    Defendants' duty to warn is part of its general duty to design, manufacture, market, distribute, supply, and sell products that are reasonably safe for their foreseeable uses.

74.    At all times relevant, Defendants knew, or reasonably should have known, of the Fire Pit's risks and dangers of overheating, flame jetting, and other instances of injury caused by ignited fuel.

75.    At all times relevant, Defendants knew, or reasonably should have known, that users refuel its tabletop fire pits, including the Fire Pit, once it appears the fire has dissipated but when the fire may not be completely extinguished. This scenario greatly increases the risk of flame-jetting if the fire pit is refueled at that time.

76.    At all times relevant, Defendants knew, or reasonably should have known, that a "smokeless" and "odorless" Fire Pit causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions, which, in turn, increases the risk of flame-jetting and/or explosion.

77.    At all times relevant, Defendants knew, or reasonably should have known, of the dangers of refueling a fire pit from fuel canisters without flame arrestors or without some other mechanism to eliminate the risk of flame-jetting and/or explosion.

78.    At all times relevant, Defendants knew, or reasonably should have known, that one of its recommended fuels—Isopropyl alcohol—is typically sold in containers that do not have flame arrestors, increasing the risk of flame-jetting and/or explosion. Defendants failed to warn consumers, including the Plaintiffs, that it was extremely dangerous to utilize Isopropyl alcohol as a refueling source without a flame arrestor.

79.     At all times relevant, Defendants knew, or reasonably should have known, that designing, manufacturing, selling, distributing, and/or supplying a tabletop fire pit, including the Fire Pit, without some mechanism to eliminate the risk of flame-jetting and/or explosion is dangerous and can lead to flame-jetting, burning bystanders and users.

80.     At all times relevant, Defendants knew, or reasonably should have known, that the Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Fire Pit and risking a widespread fire that could severely injure users and/or bystanders, including Plaintiffs.

81.     In designing, manufacturing, marketing, selling, distributing, and/or supplying the Fire Pit, Defendants had a duty to adequately warn of the foreseeable and particular risks of harm of the Fire Pit which Defendants knew or should have known are involved in the reasonably foreseeable uses of the Fire Pit, including but not limited to:

    a.   the increased risk of flame-jetting when refueling the Fire Pit;

    b.   what flame-jetting is;

    c.   that flame-jetting can cause serious burns and even death to those in the vicinity of the Fire Pit;

    d.   how flame-jetting can occur when refueling the Fire Pit, which is designed to be

        i.   smokeless and odorless; and

        ii.   and used with Isopropyl alcohol, which can produce an invisible flame, making it difficult to determine when a fire is extinguished, and is most often sold in containers without a flame arrestor;

    e.   the need to utilize a flame arrestor on any canister containing fuel, including specifically Isopropyl alcohol; and

    f.   that the Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Fire Pit and risking a widespread fire that could severely injure users and/or bystanders.

82.     Despite this duty, Defendants failed to adequately warn of the risks posed by the Fire Pit, which a reasonably careful designer, manufacturer, seller, distributor, and/or supplier would do under like circumstances, making the product unreasonably dangerous, by:

a.  Choosing not to warn of the foreseeable risks of harm from the Fire Pit, as set forth in the preceding paragraph; and

b.  Choosing not to provide adequate instructions or warnings with the Fire Pit to reduce or avoid those risks, such as by instructing or warning that only fuel in containers with flame arrestors should be used with the Fire Pit and that because Isopropyl alcohol produces flames that may not be readily visible, it is hard or impossible to see if a flame is fully extinguished.

83.     The User Instruction Card that accompanied the Fire Pit recommended using Isopropyl alcohol, did not warn of the risk of flame-jetting when refueling the Fire Pit, did not describe or define flame-jetting, did not instruct that only fuel in containers with flame arrestors should be used with the Fire Pit to prevent flame jetting, did not warn that it is hard or impossible to see if a flame is fully extinguished when Isopropyl alcohol is used because Isopropyl alcohol produces flames that may not be readily visible, and did not describe the serious and often fatal consequences of flame-jetting.

84.     Neither did the User Instruction Card adequately warn of the fire risk due to cracks in the Fire Pit, which causes the fuel to dangerously leak or seep out of the Fire Pit and risks a widespread fire that could severely injure users and/or bystanders, including Plaintiffs.

85.     Had Plaintiffs known of the extreme risks, Plaintiffs would not have taken the same actions they did the night Plaintiff Kayla Hominski was burned. In other words, had Defendants provided adequate instructions or warnings regarding the foreseeable risks of harm (including, but not limited to, the risk of flame-jetting and/or explosion) associated with refueling the Fire Pit or being in the vicinity of the Fire Pit while it was being refueled or the risk of harm due to cracking, the harm to Plaintiffs could have been reduced or avoided.

86.     The Fire Pit was defective because it was unreasonably and defectively dangerous at the time the product left Defendants' control due to inadequate warnings, labeling, and/or instructions accompanying the Fire Pit.

87.     At all times relevant to this action, Plaintiffs used the Fire Pit in its intended manner and for its intended purpose and in a manner that was reasonably foreseeable to Defendants.

88.     Defendants' negligence in failing to adequately warn the public and purchasers about the foreseeable risks associated with the Fire Pit directly and proximately caused Plaintiff Kayla Hominski's severe burns and Plaintiffs' injuries.

89.     As a direct and proximate result of the tortious conduct described herein, Plaintiffs seek to recover the damages identified below.

## COUNT IV
### STRICT LIABILITY -- DESIGN DEFECT
**(Against Defendants Gusar, Colsen, and Wayfair)**

90.     Plaintiffs incorporate Paragraphs 1–42 as if fully set out herein.

91.     Defendants Gusar and Colsen, as the designers, manufacturers, sellers, distributors, and/or suppliers of the Fire Pit, owed a duty to foreseeable users and bystanders, including Plaintiffs, to design reasonably safe tabletop fire pits, including the Fire Pit.

92.     Defendant Wayfair, as the seller, distributor, and/or supplier of the Fire Pit, owed a duty to foreseeable users and bystanders, including Plaintiffs, to sell, distribute, and/or supply safe and reasonably designed tabletop fire pits, including the Fire Pit.

93.     At all times relevant, Defendants knew, or reasonably should have known, of the Fire Pit's risks and dangers of overheating, flame jetting, and other instances of injury caused by ignited fuel.

94.     At all times relevant, Defendants knew, or reasonably should have known, that the Fire Pit would be used in the reasonable manner Plaintiffs used it as described above.

95.     At all times relevant, Defendants knew, or reasonably should have known, that users refuel their tabletop fire pits, including the Fire Pit, once it appears the fire has dissipated but when the fire may not be completely extinguished. This scenario greatly increases the risk of flame-jetting if the fire pit is refueled at that time.

96.     At all times relevant, Defendants knew, or reasonably should have known, that refueling a "smokeless" and "odorless" fire pit, including the Fire Pit, is dangerous and can lead to flame-jetting, burning bystanders and users.

97.     At all times relevant, Defendants knew, or reasonably should have known, of the dangers of refueling a fire pit from fuel canisters without flame arrestors or without some other mechanism to eliminate the risk of flame-jetting and/or explosion.

98.     At all times relevant, Defendants knew, or reasonably should have known, that one of its recommended fuels—Isopropyl alcohol—is typically sold in containers that do not have flame arrestors, increasing the risk of flame-jetting and/or explosion.

99.     At all times relevant, Defendants knew, or reasonably should have known, that designing, manufacturing, selling, distributing, and/or supplying a tabletop fire pit, including the Fire Pit, without some mechanism to eliminate the risk of flame-jetting and/or explosion is dangerous and can lead to flame-jetting, burning bystanders and users. Despite this knowledge, Defendants did nothing to alter the design of its tabletop fire pits, including the Fire Pit, to make them safer to users and bystanders, including Plaintiffs, and in fact recommended using Isopropyl alcohol as fuel, despite that most Isopropyl alcohol containers do not have a flame arrestor.

100.    At all times relevant, Defendants knew, or reasonably should have known, that the Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Fire Pit and risking a widespread fire that could severely injure users and/or bystanders, including Plaintiffs.

101.    The Fire Pit had one or more poorly designed components that created an unreasonable risk of harm that was unknown and could not have been known by users and bystanders, like Plaintiffs, including but not limited to:

a.   The Fire Pit was designed with an unsafe combustion source;

b.   The Fire Pit was designed without safety features to prevent against flame-jetting or explosions during re-fueling;

c.   The Fire Pit was designed as "smokeless" and "odorless," which causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions;

d.   The Fire Pit was designed in a manner that is prone to cracking, allowing flames to dangerously escape the Fire Pit;

e.   The Fire Pit was designed to be used with Isopropyl alcohol;

f.   The Fire Pit was designed to be used with alcohol that is sold without flame arrestors or other defensive mechanisms; and

g.   The Fire Pit was designed without a flame arrestor or a refueling canister that contained a flame arrestor.

102.    The Fire Pit was defectively designed, and as a result Defendants introduced a defective product into the stream of commerce that ultimately injured Plaintiffs, in at least the following ways:

a.   It contained one or more conditions that rendered it unreasonably dangerous to users and persons in the vicinity of the Fire Pit as described above, including Plaintiffs;

b.   It was not reasonably suited for its intended use of providing a safe fire;

c.   It did not perform as safely as an ordinary consumer, including Plaintiffs, would expect when used as intended and/or used in a manner reasonably foreseeable by the manufacturer;

d.   It was not merchantable;

e.   It was prone to cracking and/or leaking; and

f.   The risk of danger in its design outweighed the benefits.

103.   Plaintiffs received the Fire Pit as expected and without substantial change affecting the unreasonably dangerous conditions of the Fire Pit.

104.   The Fire Pit was unreasonably dangerous and defectively dangerous at the time the product left Defendants' control, and was, at all times material, used in a reasonably foreseeable manner and for its intended use.

105.   The Fire Pit was unreasonably dangerous because Defendants intended the Fire Pit to be safe to refuel and had the Fire Pit been as safe as Defendants intended, flame-jetting would not have occurred.

106.   The Fire Pit's design defect was the direct and proximate cause of Plaintiffs injuries—i.e., the design defect caused Plaintiff Kayla Hominski to be a victim of flame-jetting and/or an explosion due to leaked fuel and caused her severe burns and injuries.

107.   As a direct and proximate result of the tortious conduct described herein, Plaintiffs seek to recover the damages identified below.

**COUNT V**
**STRICT LIABILITY – MANUFACTURING DEFECT**
**(Against Defendants Gusar, Colsen, and Wayfair)**

108.   Plaintiffs incorporate Paragraphs 1–42 as if fully set out herein.

109.   Defendants Gusar and Colsen, as the designers, manufacturers, sellers, distributors, and/or suppliers of the Fire Pit, owed a duty to foreseeable users and bystanders, including Plaintiffs, to manufacture reasonably safe tabletop fire pits, including the Fire Pit.

110.   Defendant Wayfair, as the seller, distributor, and/or supplier of the Fire Pit, owed a duty to foreseeable users and bystanders, including Plaintiffs, to sell, distribute, and/or supply safe and reasonably manufactured tabletop fire pits, including the Fire Pit.

111.    At all times relevant, Defendants knew, or reasonably should have known, of the Fire Pit's risks and dangers of overheating, flame jetting, and other instances of injury caused by ignited fuel.

112.    At all times relevant, Defendants knew, or reasonably should have known, that the Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Fire Pit and risking a widespread fire that could severely injure users and/or bystanders, including Plaintiffs.

113.    The Fire Pit contained a manufacturing defect when it left Defendants' possession, and thus Defendants introduced a defective product into the stream of commerce that ultimately injured Plaintiffs. The Fire Pit differed from Defendants' intended design and/or from other ostensibly identical units of the same product line.

114.    Upon information and belief, the Fire Pit that caused Plaintiffs' injuries varied from its intended specifications in one or more of, but not limited to, the following ways:

      a.   The Fire Pit was manufactured, sold, distributed, and supplied with one or more cracks;

      b.   The Fire Pit was manufactured, sold, distributed, and supplied with subpar material that is prone to cracking or leaking;

      c.   The Fire Pit was manufactured, sold, distributed, and supplied without a safety inspection or testing; and

      d.   The Fire Pit was manufactured, sold, distributed, and supplied in a condition which prohibited the Plaintiffs from seeing and/or appreciating that the fire had not been completely extinguished.

115.    Defendants' Fire Pit was defectively manufactured because:

      a.   The Fire Pit was in a condition unreasonably dangerous to users and persons in the vicinity of the Fire Pit, including Plaintiffs;

      b.   The Fire Pit was expected to and did reach the user or consumer without substantial change affecting that condition; and

c.   The Fire Pit was different from its intended design and failed to perform as safely as the design would have performed.

116.   The Fire Pit was unreasonably dangerous because Defendants intended the Fire Pit to be safe to refuel and had the Fire Pit been as safe as Defendants intended, flame-jetting would not have occurred.

117.   At all times relevant to this action, Plaintiffs used the Fire Pit in its intended manner and for its intended purpose and in a manner that was reasonably foreseeable to Defendants.

118.   The Fire Pit's manufacturing defect was the direct and proximate cause of Plaintiffs injuries—i.e., the manufacturing defect caused Plaintiff Kayla Hominski to be a victim of flame-jetting and/or an explosion due to leaked fuel and caused her severe burns and injuries.

119.   As a direct and proximate result of the tortious conduct described herein, Plaintiffs seek to recover the damages identified below.

**COUNT VI**
**STRICT LIABILITY – FAILURE TO WARN**
**(Against Defendants Gusar, Colsen, and Wayfair)**

120.   Plaintiffs incorporate Paragraphs 1–42 as if fully set out herein.

121.   Defendants Gusar and Colsen, as the designers, manufacturers, sellers, distributors, and/or suppliers of the Fire Pit, owed a duty to foreseeable users, including Plaintiffs, to warn about the dangers of the Fire Pit, because Defendants either knew, or should have known, of these risks at the time it designed, manufactured, marketed, distributed, supplied, and/or sold the Fire Pit.

122.   Defendant Wayfair, as the seller, distributor, and/or supplier of the Fire Pit, owed a duty to foreseeable users, including Plaintiffs, to warn about the dangers of the Fire Pit, because Defendant either knew, or should have known, of these risks at the time it marketed, distributed, supplied, and/or sold the Fire Pit.

123. Defendants' duty to warn is part of its general duty to design, manufacture, market, distribute, supply, and sell products that are reasonably safe for their foreseeable uses.

124. At all times relevant, Defendants knew, or reasonably should have known, of the Fire Pit's risks and dangers of overheating, flame jetting, and other instances of injury caused by ignited fuel.

125. At all times relevant, Defendants knew, or reasonably should have known, that users refuel its tabletop fire pits, including the Fire Pit, once it appears the fire has dissipated but when the fire may not be completely extinguished. This scenario greatly increases the risk of flame-jetting if the fire pit is refueled at that time.

126. At all times relevant, Defendants knew, or reasonably should have known, that a "smokeless" and "odorless" Fire Pit causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions, which, in turn, increases the risk of flame-jetting and/or explosion.

127. At all times relevant, Defendants knew, or reasonably should have known, of the dangers of refueling a fire pit from fuel canisters without flame arrestors or without some other mechanism to eliminate the risk of flame-jetting and/or explosion.

128. At all times relevant, Defendants knew, or reasonably should have known, that one of its recommended fuels—Isopropyl alcohol—is typically sold in containers that do not have flame arrestors, increasing the risk of flame-jetting and/or explosion. Defendants failed to warn consumers, including the Plaintiffs, that it was extremely dangerous to utilize Isopropyl alcohol as a refueling source without a flame arrestor.

129. At all times relevant, Defendants knew, or reasonably should have known, that designing, manufacturing, selling, distributing, and/or supplying a tabletop fire pit, including the

Fire Pit, without some mechanism to eliminate the risk of flame-jetting and/or explosion is dangerous and can lead to flame-jetting, burning bystanders and users.

130.    At all times relevant, Defendants knew, or reasonably should have known, that the Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Fire Pit and risking a widespread fire that could severely injure users and/or bystanders, including Plaintiff.

131.    In designing, manufacturing, marketing, selling, distributing, and/or supplying the Fire Pit, Defendants had a duty to adequately warn of the foreseeable risks of harm posed by the Fire Pit, including but not limited to:

    a.   the increased risk of flame-jetting when refueling the Fire Pit;

    b.   what flame-jetting is;

    c.   that flame-jetting can cause serious burns and even death to those in the vicinity of the Fire Pit;

    d.   how flame-jetting can occur when refueling the Fire Pit, which is designed to be

        i.   smokeless and odorless; and

        ii.   used with Isopropyl alcohol, which can produce an invisible flame, making it difficult to determine when a fire is extinguished, and is most often sold in containers without a flame arrestor;

    e.   the need to utilize a flame arrestor on any canister containing fuel, including specifically Isopropyl alcohol; and

    f.   that the Fire Pit is prone to cracking, causing fuel to dangerously leak or seep out of the Fire Pit and risking a widespread fire that could severely injure users and/or bystanders.

132.    Despite this duty, Defendants failed to adequately warn of the risks posed by the Fire Pit, making the product unreasonably dangerous, by:

    a.   Choosing not to warn of the foreseeable risks of harm from the Fire Pit, as set forth in the preceding paragraph; and

b. Choosing not to provide adequate instructions or warnings with the Fire Pit to reduce or avoid those risks, such as by instructing or warning that only fuel in containers with flame arrestors should be used with the Fire Pit and that because Isopropyl alcohol produces flames that may not be readily visible, it is hard or impossible to see if a flame is fully extinguished.

133. The User Instruction Card that accompanied the Fire Pit recommended using Isopropyl alcohol, did not warn of the risk of flame-jetting when refueling the Fire Pit, did not describe or define flame-jetting, did not instruct that only fuel in containers with flame arrestors should be used with the Fire Pit to prevent flame jetting, did not warn that it is hard or impossible to see if a flame is fully extinguished when Isopropyl alcohol is used because Isopropyl alcohol produces flames that may not be readily visible, and did not describe the serious injuries that can occur from flame-jetting.

134. Neither did the User Instruction Card adequately warn of the fire risk due to cracks in the Fire Pit, which causes the fuel to dangerously leak or seep out of the Fire Pit and risks a widespread fire that could severely injure users and/or bystanders, including Plaintiffs.

135. Had Plaintiffs known of the extreme risks, they would not have taken the same action they did the night Plaintiff Kayla Hominski was burned. In other words, had Defendants provided adequate instructions or warnings regarding the foreseeable risks of harm (including, but not limited to, the risk of flame-jetting and/or explosion) associated with refueling the Fire Pit or being in the vicinity of the Fire Pit while it was being refueled or the risk of harm due to cracking, the harm to Plaintiffs could have been reduced or avoided.

136. The Fire Pit was defective because it was unreasonably and defectively dangerous at the time the product left Defendants' control due to inadequate warnings, labeling, and/or instructions accompanying the Fire Pit, and was, at all times material, used in a foreseeable manner.

137.  At all times relevant to this action, Plaintiffs used the Fire Pit in its intended manner and for its intended purpose and in a manner that was reasonably foreseeable to Defendants.

138.  Defendants' failure to adequately warn the public and purchasers about the foreseeable risks associated with the Fire Pit directly and proximately caused Plaintiff Kayla Hominski's severe burns and injuries.

139.  As a direct and proximate result of the tortious conduct described herein, Plaintiffs seek to recover the damages identified below.

**COUNT VII**
**SUCCESSOR LIABILITY**
**(Against Defendant NIKL)**

140.  Plaintiffs incorporate Paragraphs 1–42 as if fully set out herein.

141.  Defendant NIKL is liable as successor to Defendant Gusar because, upon information and belief, Defendant NIKL expressly assumed Defendant Gusar's liabilities in the purchase agreement dated March 18, 2023.

142.  Defendant NIKL is liable as successor to Defendant Gusar because, upon information and belief, Defendant NIKL impliedly assumed Defendant Gusar's liabilities in the purchase agreement dated March 18, 2023.

143.  Defendant NIKL is a successor to Defendant Gusar because Defendant NIKL continued production of Defendant Gusar's product line, including the Colsen Fire Pit and the Fire Pit at issue here at the same manufacturing plant with the same management, personnel, and assets.

144.  As a direct and proximate result of the tortious conduct described herein and Defendant NIKL's successor liability therefore, Plaintiffs seek to recover the damages identified below.

## COUNT VIII
## LOSS OF CONSORTIUM/DERIVATIVE CLAIM OF NICHOLAS HOMINSKI
### (Against Defendants Gusar, Colsen and Wayfair)

145.    Plaintiffs incorporate Paragraphs 1–42 as if fully set out herein.

146.    At all times material hereto, Plaintiff Nicholas Hominski was the lawful husband of Plaintiff Kayla Hominski.

147.    As a direct and proximate result of the above-described negligence of the Defendants, Plaintiff Nicholas Hominski, has in the past, and is currently and will in the future suffer the loss and deprivation of his wife's companionship, support, services, comfort, society, attentions, consortium, and loss of earnings in the past and future.

## DAMAGES

148.    As to each and every count in this Complaint, and as a direct and proximate result of the above-described negligence, the Plaintiffs are entitled to recover the following damages, in the past and in the future:

a.    KAYLA HOMINSKI: demands judgment against each Defendant and every one of them jointly, individually, and severally, for damages including, but not limited to: (a) past and future pain, suffering, and mental anguish; (b) past and future medical expenses and bills; (c) past loss of earnings and future loss of earning capacity; (d) past and future anxiety, hysteria, or phobias which have developed into a reasonable and traumatic fear of an increased risk of injury; (e) significant and permanent scarring or disfigurement; (f) costs; and (g) any other relief to which she may be legally or equitably entitled.

b.    NICHOLAS HOMINSKI: demands judgment against each Defendant and every one of them jointly, individually, and severally, for damages including, but not limited to:

past and future loss and deprivation of his wife's services, comfort, society, attentions, consortium and past and future loss of earnings.

Wherefore, Plaintiffs demand judgment for damages and costs against Defendants Gusar, LLC, Colsen Fire Pits, LLC, Wayfair, LLC, and NIKL Partners, LLC.

<strong>DEMAND FOR JURY TRIAL</strong>

Plaintiffs hereby demand trial by jury on all issues.

Respectfully submitted,

**RATZAN WEISSMAN & BOLDT**
2850 Tigertail Ave, Suite 400
Coconut Grove, FL 33133
Telephone: (305) 374-6366
stuart@rwblawyers.com
eservice.legal@rwblawyers.com


By: /s/ Stuart N. Ratzan
  STUART N. RATZAN
  Florida Bar No.: 911445
  KIMBERLY L. BOLDT
  Florida Bar No. 957399
  STUART J. WEISSMAN
  Florida Bar No.: 57909
  BROOKE M. MESNER
  Florida Bar No. 1032022

  *Attorneys for Plaintiff*