# EXHIBIT C

 Caution
As of: April 7, 2025 8:47 PM Z

## *In re Denture Cream Prods. Liab. Litig.*

United States District Court for the Southern District of Florida, Miami Division

October 18, 2012, Decided; October 18, 2012, Entered on Docket

CASE NO. 09-2051-MD-ALTONAGA/SIMONTON

**Reporter**
2012 U.S. Dist. LEXIS 151014 *; 2012 WL 5057844

In re: DENTURE CREAM PRODUCTS LIABILITY LITIGATION,

**Subsequent History:** Motion granted by, in part, Motion denied by, in part *In re Denture Cream Prods. Liab. Litig., 2012 U.S. Dist. LEXIS 152277 (S.D. Fla., Oct. 22, 2012)*

**Prior History:** *In re Denture Cream Prods. Liab. Litig., 2012 U.S. Dist. LEXIS 119939 (S.D. Fla., Aug. 23, 2012)*

## Core Terms

documents, privilege log, attorney-client, undersigned, communications, **legal advice**, **work product** doctrine, privileged, labeling, email, disclosure, withheld, **work product**, in camera, Defendants', advice, non-attorney, supplemental, employees, purposes, descriptions, authored, confer, assertions, Parties, handwritten note, anticipated, in-house, product safety, denture

**Counsel:  [*1]** In Re Denture Cream Products Liability Litigation: Scott William Weinstein, LEAD ATTORNEY, Morgan & Morgan PA, Fort Myers, FL.

For Robert L. Pryor, Chapter 7 Trustee for the Estate of Anthony D'Ateno, Plaintiff: Scott E. Brady, Bohrer Law Firm LLC, Baton Rouge, LA.

For Plaintiffs' Lead Counsel, Plaintiff: Andres F. Alonso, LEAD ATTORNEY, Alonso Krangle, LLP, Melville, NY; Eric T. Chaffin, LEAD ATTORNEY, Chaffin Luhana LLP, New York, NY.

For Plaintiffs' Liaison Counsel, Plaintiff: Andres F. Alonso, LEAD ATTORNEY, Alonso Krangle, LLP, Melville, NY.

For Plaintiffs' Steering Committee ("PSC"), Plaintiff: Andres F. Alonso, LEAD ATTORNEY, Alonso Krangle, LLP, Melville, NY; Eric T. Chaffin, LEAD ATTORNEY, Chaffin Luhana LLP, New York, NY; Laura Gianni, LEAD ATTORNEY, Gianni Petoyan, Pacific Palisades, CA; Michael A. London, LEAD ATTORNEY, Douglas & London PC, New York, NY; Philip Bohrer, LEAD ATTORNEY, Bohrer Law Firm LLC, Baton Rouge, LA.

For Sharon Gay Lane, as the Administrator for the Estate of Robert Donald Lane, Plaintiff: Jordan Lucas Chaikin, LEAD ATTORNEY, Parker Waichman Alonso LLP, Bonita Springs, FL.

For Johnny R. Ellzy, as the Administrator of the Estate of Misty Dawn Jordan, Plaintiff:  **[*2]** Jordan Lucas Chaikin, Parker Waichman Alonso LLP, Bonita Springs, FL.

For Lee Russo, Andew Russo, Felecia Biffle, individually and as Administratrix of the Estate, Consol Plaintiffs: Andres F. Alonso, LEAD ATTORNEY, Alonso Krangle, LLP, Melville, NY; Daniel C. Burke, LEAD ATTORNEY, PRO HAC VICE, Parker Waichman Alonso, LLP, Port Washington, NY; David Bruce Krangle, LEAD ATTORNEY, Alonso Krangle, LLP, Melville, NY; Jerrold S. Parker, LEAD ATTORNEY, Parker Waichman Alonso LLP, Great Neck, NY; Melanie H. Muhlstock, LEAD ATTORNEY, Parker Waichman Alonso, LLP, Port Washington, NY.

For Beverly Jones, Steve Jones, Consol Plaintiffs: A. Laurie Koller, Patrick Eugene Carr, LEAD ATTORNEYS, Carr & Carr, Tulsa, OK; Andres F. Alonso, LEAD ATTORNEY, Alonso Krangle, LLP, Melville, NY; Daniel C. Burke, LEAD ATTORNEY, PRO HAC VICE, Parker Waichman Alonso, LLP, Port Washington, NY; David Bruce Krangle,

LEAD ATTORNEY, Alonso Krangle, LLP, Melville, NY; Jerrold S. Parker, LEAD ATTORNEY, Parker Waichman Alonso LLP, Great Neck, NY; Melanie H. Muhlstock, LEAD ATTORNEY, Parker Waichman Alonso, LLP, Port Washington, NY.

For Paul Campione, Mae Campione, Consol Plaintiffs: Raymond C. Silverman, LEAD ATTORNEY, Parker [*3] Waichman, LLP, Port Washington, NY.

For Pantelis Rezitis, Mary Rezitis, Christian Bogart-Edwards, Steven Edwards, Tammy Baugh, Joseph Baugh, Consol Plaintiffs: Michael A. London, LEAD ATTORNEY, Douglas & London PC, New York, NY.

For Sue Ann Hickey, John Hickey, Consol Plaintiffs: Eric T. Chaffin, LEAD ATTORNEY, Chaffin Luhana LLP, New York, NY; Roopal P. Luhana, LEAD ATTORNEY, Morissa R. Falk, Chaffin Luhana, LLP, New York, NY.

For Katherine B. Mehrhoff, David L. Mehrhoff, Consol Plaintiffs: Daniel E. Becnel , Jr., Matthew B. Moreland, LEAD ATTORNEYS, Becnel Law Firm LLC, Reserve, LA.

For Melissa J. Babb, Consol Plaintiff: Jordan Lucas Chaikin, LEAD ATTORNEY, Parker Waichman Alonso LLP, Bonita Springs, FL; Melanie H. Muhlstock, LEAD ATTORNEY, Parker Waichman Alonso, LLP, Port Washington, NY.

For Thomas R. Babb, Consol Plaintiff: Andres F. Alonso, David Bruce Krangle, LEAD ATTORNEYS, Alonso Krangle, LLP, Melville, NY; Jordan Lucas Chaikin, LEAD ATTORNEY, Parker Waichman Alonso LLP, Bonita Springs, FL; Melanie H. Muhlstock, LEAD ATTORNEY, Parker Waichman Alonso, LLP, Port Washington, NY.

For Donald Kimball, James R. Wilkerson, Marie Wilkerson, Consol Plaintiffs: Eric T. Chaffin, LEAD ATTORNEY, [*4] Chaffin Luhana LLP, New York, NY; Roopal P. Luhana, LEAD ATTORNEY, Morissa R. Falk, Chaffin Luhana, LLP, New York, NY.

For Virginia Kresge, Consol Plaintiff: Michael A. London, LEAD ATTORNEY, Douglas & London PC, New York, NY.

For Melinda Hall, Individually, on Behalf of Herself and on Behalf of All Others Similarly Situated, Carmal Hall, Jr., On behalf of Himself and on Behalf of All Others Similarly Situated, Consol Plaintiffs: Daniel E. Becnel , Jr., LEAD ATTORNEY, Becnel Law Firm LLC, Reserve, LA.

For Duane J. Kuhn, Consol Plaintiff: Daniel E. Becnel , Jr., LEAD ATTORNEY, Becnel Law Firm LLC, Reserve, LA; Marisha H. Fraaza, Becnel Law Firm LLC, Reserve, LA.

For Thomas Wood, Consol Plaintiff: Philip Bohrer, LEAD ATTORNEY, Bohrer Law Firm LLC, Baton Rouge, LA; Scott E. Brady, Bohrer Law Firm LLC, Baton Rouge, LA.

For Carol Ann Gittings, Brenda Kay Cahill, Consol Plaintiffs: George Wise , Brad Hendricks Law Firm , Little Rock, AR; Jane Joseph, Skikos Crawford Skikos Joseph & Millican, San Francisco, CA; Lamar Porter, Brad Hendricks Law Firm, Little Rock, AR; Philip Bohrer, LEAD ATTORNEY, Bohrer Law Firm LLC, Baton Rouge, LA; Scott E. Brady, Bohrer Law Firm LLC, Baton Rouge, LA; Steve Skikos, [*5] Skikos Crawford Skikos Joseph & Millican, San Francisco, CA.

For Shawn Renay Rankin, Max Rankin, Brian Shumate, Gary Weber, Rick A. Harrell, Robert L. Cornett, Barry Couch, Diane De Haven, Anne M. Coffman, Consol Plaintiffs: Andres F. Alonso, Alonso Krangle, LLP, Melville, NY; Daniel C. Burke, PRO HAC VICE, Parker Waichman Alonso, LLP, Port Washington, NY; David Bruce Krangle, Alonso Krangle, LLP, Melville, NY; Melanie H. Muhlstock, Parker Waichman Alonso, LLP, Port Washington, NY.

For Robin Ann Evans, Rhonda Jolene Shumate, Heidi Sue Weber, Joyce Lunne Harrell, Jennifer J. Cornett, Angela Couch, Barbara Sue Mendenhall, Faye G. Hobson, Peggy Ann Smith-Lloyd, Mary Lou Smith-Broxton, Christina Ballman, Shari Baker Garrison, Ellenie Steele, Dorothy Gibson, Cynthia A. Williams, Stephen L. Berman, Brian L. Steine, Consol Plaintiffs: Daniel C. Burke, PRO HAC VICE, Parker Waichman Alonso, LLP, Port Washington, NY; Melanie H. Muhlstock, Parker Waichman Alonso, LLP, Port Washington, NY.

For Marlene Adams, Deborah Carnahan, Pamela Smith, Consol Plaintiffs: Laura Gianni, LEAD ATTORNEY, Marcus A. Petoyan, Gianni Petoyan, Pacific Palisades, CA.

For Dora Annette Rowlen, Consol Plaintiff: Duncan Lott,  [*6] Booneville, MS.

For Linda Burton, Consol Plaintiff: Clifford Lee Carter, Kirk J. Wolden, LEAD ATTORNEYS, Clayeo C Arnold PLC, Sacramento, CA.

For Jesse E. West, individually and as a personal representative of the Estate of Opal H. West, Consol Plaintiff: Daniel E. Becnel , Jr., LEAD ATTORNEYS, Becnel Law Firm LLC, Reserve, LA; Marisha H. Fraaza, Becnel Law Firm LLC, Reserve, LA.

For Dolores Mae Tight, Barbara Best, William Haeflinger, Consol Plaintiffs: Rebecca G. Newman, Michael A. London, LEAD ATTORNEYS, Douglas & London, P.C., New York, NY.

For Michael Burke, as survivor of decedent Pamela Burke, Michael Burke, Jr., Michelle Burke-Koon, as survivor of decedent Pamela Burke, Consol Plaintiffs: Kevin M Carnie , Jr., LEAD ATTORNEY, St. Louis, MO; John G. Simon, Simon Law Firm, P.C., St. Louis, MO.

For Evelyn M. Collier, as survivor of decedent Pamela Burke, Consol Plaintiff: Kevin M Carnie , Jr., LEAD ATTORNEY, St. Louis, MO.

For Bobby Cockrill, Betty Cockrill, James Byles, Peter Michael Bassin, Anna Jane Baker, Peggy L. Singleton, Ann Clair, Consol Plaintiff: Jordan Lucas Chaikin, LEAD ATTORNEY, Parker Waichman Alonso LLP, Bonita Springs, FL.

For Iris Scrivener, Consol Plaintiff: Daniel  [*7] C. Burke, PRO HAC VICE, Parker Waichman Alonso, LLP, Port Washington, NY; Melanie H. Muhlstock, Parker Waichman Alonso, LLP, Port Washington, NY; Jordan Lucas Chaikin, Parker Waichman Alonso LLP, Bonita Springs, FL.

For Raymond English, Theresa English, Consol Plaintiff: Ed Blizzard, J. Scott Nabers, Rebecca B. King, Stephen P. McCarthy, Blizzard McCarthy & Nabers LLP, Houston, TX.

For Johnny Nations, Consol Plaintiff: Eric T. Chaffin, LEAD ATTORNEY, Chaffin Luhana LLP, New York, NY; Jordan Lucas Chaikin, LEAD ATTORNEY, Parker Waichman Alonso LLP, Bonita Springs, FL.

For Denice Sedlacek, Michael Sedlacek, Consol Plaintiffs: Jordan Lucas Chaikin, Parker Waichman Alonso LLP, Bonita Springs, FL; Roopal P. Luhana, Chaffin Luhana, LLP, New York, NY.

For Judith Sullivan, Consol Plaintiff: Ed Blizzard, J. Scott Nabers, Rebecca B. King, Stephen P. McCarthy, Blizzard McCarthy & Nabers LLP, Houston, TX; William Kent Walker, Jr., Squire Sanders & Dempsey LLP, Miami, FL.

For Donna S. Kelley, Consol Plaintiff: David Bohannon, Sword, Floyd & Moody, PLLC, Richmond, KY; James T. Gilbert, Coy, Gilbert & Gilbert, Richmond, KY.

For William M Keith, Individually and as Executor de son Tort of The Estate of  [*8] Linda Sakcriska, Consol Plaintiff: Eric T. Chaffin, Chaffin Luhana LLP, New York, NY; Michael Steven Goetz, Morgan & Morgan, Tampa, FL; Scott William Weinstein, Morgan & Morgan PA, Fort Myers, FL.

Patricio R. Mamot, Consol Plaintiff, Pro se, Long Island City, NY.

For Nancy Shearen, Laurence Shearen, Sr., Consol Plaintiff: Clayeo C. Arnold, Clifford Lee Carter, Kirk J. Wolden, LEAD ATTORNEYS, Clayeo C Arnold PLC, Sacramento, CA.

For Ann V. Collins, Consol Plaintiff: Andrew Franklin Knopf, C. Richard Newsome, LEAD ATTORNEYS, Newsome Law Firm, Orlando, FL.

For Opal Carter, Corbitt Carter, Consol Plaintiffs: Michael Steven Goetz, LEAD ATTORNEY, Morgan & Morgan, Tampa, FL; Eric T. Chaffin, Chaffin Luhana LLP, New York, NY.

For Patricia Carroll, Marcellia Muller, Leed J. Hardy, Jr., Hazel Gore, Franklin Gore, Thomas McCorkle, Debbie Folse, as Representative of the Estate of Francis Alexander, Consol Plaintiffs: Christopher Kirchmer, LEAD ATTORNEY, Provost Umphrey Law Firm LLP, Beaumont, TX.

For William R Willis, Consol Plaintiff: Daniel C. Burke, LEAD ATTORNEY, PRO HAC VICE, Parker Waichman Alonso, LLP, Port Washington, NY; Jordan Lucas Chaikin, LEAD ATTORNEY, Parker Waichman Alonso LLP, Bonita **[*9]** Springs, FL; Melanie H. Muhlstock, LEAD ATTORNEY, Parker Waichman Alonso, LLP, Port Washington, NY.

For Zachary Younce, Consol Plaintiff: John Peter Hilgeman, LEAD ATTORNEY, Cowan & Hilgeman - 3, Dayton, OH; John R. Hilgeman, LEAD ATTORNEY, Dayton, OH.

For Randi I Shaw, Gene Gosnell, Consol Plaintiffs: Daniel C. Burke, LEAD ATTORNEY, PRO HAC VICE, Parker Waichman Alonso, LLP, Port Washington, NY; Jordan Lucas Chaikin, LEAD ATTORNEY, Parker Waichman Alonso LLP, Bonita Springs, FL; Matthew J. McCauley, LEAD ATTORNEY, Parker Waichman, LLP, Bonita Springs, FL; Melanie H. Muhlstock, LEAD ATTORNEY, Parker Waichman Alonso, LLP, Port Washington, NY; Raymond C. Silverman, LEAD ATTORNEY, Parker Waichman, LLP, Port Washington, NY.

Michael Ferdik, Consol Plaintiff, Pro se, North Las Vegas, NV.

For Janice Lynn Kerr, Harvel Kerr, Consol Plaintiffs: Jordan Lucas Chaikin, LEAD ATTORNEY, Parker Waichman Alonso LLP, Bonita Springs, FL; Matthew J. McCauley, LEAD ATTORNEY, Parker Waichman, LLP, Bonita Springs, FL; Melanie H. Muhlstock, LEAD ATTORNEY, Parker Waichman Alonso, LLP, Port Washington, NY; Raymond C. Silverman, LEAD ATTORNEY, Parker Waichman, LLP, Port Washington, NY.

For James L Atkinson, Tana S **[*10]** Atkinson, Consol Plaintiffs: Matthew J. McCauley, LEAD ATTORNEY, Parker Waichman, LLP, Bonita Springs, FL; Raymond C. Silverman, LEAD ATTORNEY, Parker Waichman, LLP, Port Washington, NY. Daniel C. Burke, LEAD ATTORNEY, PRO HAC VICE, Parker Waichman Alonso, LLP, Port Washington, NY; Jordan Lucas Chaikin, LEAD ATTORNEY, Parker Waichman Alonso LLP, Bonita Springs, FL; Melanie H. Muhlstock, LEAD ATTORNEY, Parker Waichman Alonso, LLP, Port Washington, NY.

For Kathleen Headberg, Consol Plaintiff: Andres F. Alonso, LEAD ATTORNEY, Alonso Krangle, LLP, Melville, NY; David Bruce Krangle, LEAD ATTORNEY, Alonso Krangle, LLP, Melville, NY.

For Celine K. Schmitz, Consol Plaintiff: Matthew J. McCauley, LEAD ATTORNEY, Parker Waichman, LLP, Bonita Springs, FL; Raymond C. Silverman, LEAD ATTORNEY, Parker Waichman, LLP, Port Washington, NY; Daniel C. Burke, PRO HAC VICE, Parker Waichman Alonso, LLP, Port Washington, NY; Jordan Lucas Chaikin, Parker Waichman Alonso LLP, Bonita Springs, FL; Melanie H. Muhlstock, Parker Waichman Alonso, LLP, Port Washington, NY.

For Deborah G. Jones, Alan J. Jones, Consol Plaintiff: Eric T. Chaffin, LEAD ATTORNEY, Chaffin Luhana LLP, New York, NY; Justin Zachary, William Robert **[*11]** Pointer, LEAD ATTORNEYS, Duncan Firm, P.A., Little Rock, AR; Phillip J. Duncan, LEAD ATTORNEY, Duncan Firm, Little Rock, AR; Richard Lee Quintus, LEAD ATTORNEY, Roberts Law Firm, P.A., Little Rock, AR.

For Robert L. Ziegler, Monica R. Ziegler, Consol Plaintiffs: Andres F. Alonso, David Bruce Krangle, LEAD ATTORNEYS, Alonso Krangle, LLP, Melville, NY; Joel J. Turney, LEAD ATTORNEY, Law Offices of Joel J. Turney, New York, NY.

For Michael Niles, Kay Niles, Consol Plaintiffs: Matthew J. Sill, LEAD ATTORNEY, PRO HAC VICE, Sill & Medley, Edmond, OK.

For Defendants Lead and Liaison Counsel "GSK Defendants", for Defendants Smithkline Beecham Corporation d/b/a/ Glaxosmithkline, Glaxosmithkline Consumer Healthcare, L.P., Glaxosmithkline Consumer Healthcare, L.L.C., and Block Drug Company, Inc., Defendant: Stephanie Ann Smith, LEAD ATTORNEY, Fulbright & Jaworski LLP, Austin, TX.

For Defendants Lead Counsel and Federal/State Liaison Counsel "P&G Defendants", The Procter & Gamble Manufacturing Company and The Procter & Gamble Distributing LLC, Defendant: Frank C. Woodside , III, LEAD ATTORNEY, Dinsmore & Shohl, Cincinnati, OH.

For Defendants Liaison Counsel "GSK Defendants", for Defendants Smithkline **[*12]** Beecham Corporation d/b/a/ Glaxosmithkline, Glaxosmithkline Consumer Healthcare, L.P., Glaxosmithkline Consumer Healthcare, L.L.C., and Block Drug Company, Inc., Defendant: Edward Walter Gerecke, LEAD ATTORNEY, Carlton Fields, Tampa, FL.

For SmithKline Beecham Corporation, Consol Defendant: Amy Sherry Fischer, Larry D. Ottaway, LEAD ATTORNEYS, Foliart Huff Ottaway & Bottom, Oklahoma City, OK; Amy Lane Hurwitz, LEAD ATTORNEY, Carlton Fields, Miami, FL; Cheryl A. Sabnis, Donald Frederick Zimmer , Jr., LEAD ATTORNEYS, King & Spalding LLP, San Francisco, CA; D Matthew Allen, LEAD ATTORNEY, Carlton Fields, P.A., Tampa, FL; David J. Walz, Edward Walter Gerecke, LEAD ATTORNEYS, Carlton Fields, Tampa, FL; Douglas J. Moore, James B. Irwin , V, Stephanie Lottinger Irwin, LEAD ATTORNEYS, Irwin Fritchie Urquhart & Moore, New Orleans, LA; Emily Turner Landry, Jill M. Steinberg, LEAD ATTORNEYS, Baker Donelson Bearman Caldwell & Berkowitz, Memphis, TN; Frank H. Newton, LEAD ATTORNEY, Fulbright & Jaworski, LLP, Houston, TX; Gerry Lowry, LEAD ATTORNEY, PRO HAC VICE, Fulbright & Jaworski LLP, Houston, TX; Jacob D. Bundick, LEAD ATTORNEY, Ballard Spahr Andrews & Ingersoll LLP, Las Vegas, NV; Jami Mills **[*13]** Vibbert, LEAD ATTORNEY, Fulbright & Jaworski, New York, NY; Joseph E. O'Neil, LEAD ATTORNEY, Lavin O'Neil Ricci Cedrone & DiSipio, Philadelphia, PA; Lisa Horvath Shub, LEAD ATTORNEY, Fulbright & Jaworski L.L.P., San Antonio, TX; Osborne J. Dykes , III, LEAD ATTORNEY, Fulbright & Jaworski LLP, Denver, CO; Robert E. Glanville, LEAD ATTORNEY, Phillips Lytle LLP, Buffalo, NY; Stacey A. Martinez, LEAD ATTORNEY, Jennifer D. O'Sullivan, Kalani Hawks, Megan Alter Hudgeons, Fulbright & Jaworski LLP, Austin, TX; Susan M. Clare, LEAD ATTORNEY, King & Spalding, Atlanta, GA; William H. Falin, LEAD ATTORNEY, Moscarino & Treu, LLP, Cleveland, OH; Brandon L. Crisp, Fulbright & Jaworski, Dallas, TX; Emilie P. Baine, Fulbright & Jaworski LLP, San Antonio, TX; Laura M Williams, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC-Nashville, Nashville, TN; R Brad Morgan, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC (Knox), Knoxville, TN; Barclay A. Manley, LEAD ATTORNEY, Fulbright & Jaworski LLP, Houston, TX; Laurie A. Weiss, Fulbright & Jaworski L.L.P.; Stephanie Ann Smith, LEAD ATTORNEY, Fulbright & Jaworski LLP, Austin, TX.

For GlaxoSmithKline Consumer Healthcare L.L.C., Glaxosmithkline Consumer **[*14]** Healthcare, L.P., Block Drug Company Inc., Consol Defendants: Amy Lane Hurwitz, LEAD ATTORNEY, Carlton Fields, Miami, FL; Barclay A. Manley, LEAD ATTORNEY, Fulbright & Jaworski LLP, Houston, TX; Cheryl A. Sabnis, Donald Frederick Zimmer , Jr., LEAD ATTORNEYS, King & Spalding LLP, San Francisco, CA; D Matthew Allen, LEAD ATTORNEY, Carlton Fields, P.A., Tampa, FL; David J. Walz, Edward Walter Gerecke, LEAD ATTORNEYS, Carlton Fields, Tampa, FL; Frank H. Newton, LEAD ATTORNEY, Fulbright & Jaworski, LLP, Houston, TX; Gerry Lowry, LEAD ATTORNEY, PRO HAC VICE, Fulbright & Jaworski LLP, Houston, TX; Jacob D. Bundick, LEAD ATTORNEY, Ballard Spahr Andrews & Ingersoll LLP, Las Vegas, NV; Jami Mills Vibbert, LEAD ATTORNEY, Fulbright & Jaworski, New York, NY; Joseph E. O'Neil, LEAD ATTORNEY, Lavin O'Neil Ricci Cedrone & DiSipio, Philadelphia, PA; Laurie A. Weiss, LEAD ATTORNEY, PRO HAC VICE, Fulbright & Jaworski L.L.P., San Antonio, TX; Lisa Horvath Shub, LEAD ATTORNEY, Fulbright & Jaworski L.L.P., San Antonio, TX; Marcy Hogan Greer, LEAD ATTORNEY, Fullbright & Jaworski, Austin, TX; Martha M. Harris, LEAD ATTORNEY, Phillips Lytle LLP, Buffalo, NY; Megan Alter Hudgeons, Stacey A. Martinez, LEAD **[*15]** ATTORNEYS, Jennifer D. O'Sullivan, Kalani Hawks, Fulbright & Jaworski LLP, Austin, TX; Stephanie Ann Smith, LEAD ATTORNEY, Fulbright & Jaworski LLP, Austin, TX; Susan M. Clare, LEAD ATTORNEY, King & Spalding, Atlanta, GA; Thomas A Countryman, LEAD ATTORNEY, Fulbright & Jaworski, LLP, San Antonio, TX; William H. Falin, LEAD ATTORNEY, Moscarino & Treu, LLP, Cleveland, OH; Brandon L. Crisp, Fulbright & Jaworski, Dallas, TX; Edward Soto, Weil Gotshal & Manges, Miami, FL; Emilie P. Baine, Fulbright & Jaworski LLP, San Antonio, TX; Kimberly S. Penner, Phillips Lytle, LLP, New York, NY; Laura M Williams, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC-Nashville, Nashville, TN; R Brad Morgan, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC (Knox), Knoxville, TN; Robert E. Glanville, LEAD ATTORNEY, Phillips Lytle LLP, Buffalo, NY; Tamara P. Halpern, Phillips Lytle, LLp, Buffalo, NY.

For The Procter & Gamble Company, Consol Defendant: David M. Fuqua, LEAD ATTORNEY, Metropolitan Tower, Little Rock, AR; Edward Soto, LEAD ATTORNEY, Weil Gotshal & Manges, Miami, FL; Michael D. Shalhoub, LEAD ATTORNEY, PRO HAC VICE, Goldberg Segalla LLP, White Plains, NY; Patrick Spivey, LEAD ATTORNEY, Fuqua **[*16]** Campbell, P.A., Little Rock, AR; Robert H. Alexander , Jr., LEAD ATTORNEY, Law Office of Robert H. Alexander, Jr. PC, Oklahoma City, OK; Ardith M. Bronson, Weil Gotshal & Manges, Miami, FL; Deanna M. Wendler Modde, Armstrong Teasdale, LLP, St. Louis, MO; Frank N. Gundlach, Armstrong Teasdale Schlafly & Davis, St.

Louis, MO; John D. Cosmich, Michael Davis Simmons, Cosmich & Simmons, PLLC, Jackson, MS; Lisa M. Wood, Armstrong Teasdale, LLP, St. Louis, Mo.

For The Procter & Gamble Manufacturing Co., Consol Defendant: Alan Dean Weinberger, Dominic Joseph Gianna, LEAD ATTORNEYS, Middleberg Riddle & Gianna, New Orleans, LA; David M. Fuqua, LEAD ATTORNEY, Metropolitan Tower, Little Rock, AR; Edward Soto, LEAD ATTORNEY, Weil Gotshal & Manges, Miami, FL; Jacob D. Bundick, LEAD ATTORNEY, Ballard Spahr Andrews & Ingersoll LLP, Las Vegas, NV; John J. Love, LEAD ATTORNEY, Law Office of Robert H. Alexander, Jr. PC, Oaklahoma City, OK; Michael D. Shalhoub, LEAD ATTORNEY, PRO HAC VICE, Goldberg Segalla LLP, White Plains, NY; Patrick Spivey, LEAD ATTORNEY, Fuqua Campbell, P.A., Little Rock, AR; Robert W. Ivy, LEAD ATTORNEY, Law Office of Robert H. Alexander, Jr., PC, Oklahoma City, OK; Andrew R. Kwiatkowski,  [*17] Katrina R. Atkins, Stephen G. Schweller, Dinsmore & Shohl LLP, Cincinnati, OH; Ardith M. Bronson, Weil Gotshal & Manges, Miami, FL; Donna M. Meehan, Cosmich & Simmons, PLLC, Jackson, MS; Neil Goldberg, PRO HAC VICE, Goldberg Segalla Law Firm, Buffalo, NY.

For The Procter and Gamble Manufacturing Company, Consol Defendant: Evan Nahmias, Henry T.V. Miller, LEAD ATTORNEYS, McDonald Kuhn, Memphis, TN; Frank C. Woodside , III, Mary-Jo Pullen, Melissa Lynn Korfhage, Nicholas James Kemphaus, LEAD ATTORNEYS, Dinsmore & Shohl, Cincinnati, OH; Howard D. Scher, LEAD ATTORNEY, Buchanan Ingersoll & Rooney PC, Philadelphia, PA; Philip Raymond Richards, LEAD ATTORNEY, Richards & Connor, Tulsa, OK; Deanna M. Wendler Modde, Armstrong Teasdale, LLP, St. Louis, MO; Edward Soto, LEAD ATTORNEY, Weil Gotshal & Manges, Miami, FL; Frank N. Gundlach, Armstrong Teasdale Schlafly & Davis, St. Louis, MO; Katrina R. Atkins, Stephen G. Schweller, Dinsmore & Shohl LLP, Cincinnati, OH; Lisa M. Wood, Armstrong Teasdale, LLP, St. Louis, Mo; Michael D. Brophy, Goldberg Segalla, LLP, Philadelphia, PA; Michael D. Shalhoub, PRO HAC VICE, Goldberg Segalla LLP, White Plains, NY; Neil Goldberg, PRO HAC VICE, Goldberg Segalla  [*18] Law Firm, Buffalo, NY.

For Procter and Gamble Distributing Company, Consol Defendant: Edward Soto, LEAD ATTORNEY, Weil Gotshal & Manges, Miami, FL; Evan Nahmias, Henry T.V. Miller, LEAD ATTORNEYS, McDonald Kuhn, Memphis, TN; Frank C. Woodside , III, LEAD ATTORNEY, Dinsmore & Shohl, Cincinnati, OH; Neil Goldberg, PRO HAC VICE, Goldberg Segalla Law Firm, Buffalo, NY.

For The Procter & Gamble Distributing LLC, Consol Defendant: Alan Dean Weinberger, Dominic Joseph Gianna, LEAD ATTORNEYS, Middleberg Riddle & Gianna, New Orleans, LA; David M. Fuqua, LEAD ATTORNEY, Metropolitan Tower, Little Rock, AR; Edward Soto, LEAD ATTORNEY, Weil Gotshal & Manges, Miami, FL; Howard D. Scher, LEAD ATTORNEY, Buchanan Ingersoll & Rooney PC, Philadelphia, PA; Jacob D. Bundick, LEAD ATTORNEY, Ballard Spahr Andrews & Ingersoll LLP, Las Vegas, NV; John J. Love, LEAD ATTORNEY, Law Office of Robert H. Alexander, Jr. PC, Oaklahoma City, OK; Mary-Jo Pullen, Melissa Lynn Korfhage, Nicholas James Kemphaus, LEAD ATTORNEYS, Dinsmore & Shohl, Cincinnati, OH; Patrick Spivey, LEAD ATTORNEY, Fuqua Campbell, P.A., Little Rock, AR; Philip Raymond Richards, LEAD ATTORNEY, Richards & Connor, Tulsa, OK; Robert H. Alexander ,  [*19] Jr., LEAD ATTORNEY, Law Office of Robert H. Alexander, Jr. PC, Oklahoma City, OK; Robert W. Ivy, LEAD ATTORNEY, Law Office of Robert H. Alexander, Jr., PC, Oklahoma City, OK; Andrew R. Kwiatkowski, Katrina R. Atkins, Stephen G. Schweller, Dinsmore & Shohl LLP, Cincinnati, OH; Ardith M. Bronson, Weil Gotshal & Manges, Miami, FL; Deanna M. Wendler Modde, Armstrong Teasdale, LLP, St. Louis, MO; Donna M. Meehan, Cosmich & Simmons, PLLC, Jackson, MS; Frank N. Gundlach, Armstrong Teasdale Schlafly & Davis, St. Louis, MO; Frank C. Woodside , III, LEAD ATTORNEY, Dinsmore & Shohl, Cincinnati, OH; Lisa M. Wood, Armstrong Teasdale, LLP, St. Louis, Mo; Michael D. Brophy, Goldberg Segalla, LLP, Philadelphia, PA; Michael D. Shalhoub, PRO HAC VICE, Goldberg Segalla LLP, White Plains, NY; Neil Goldberg, PRO HAC VICE, Goldberg Segalla Law Firm, Buffalo, NY.

For Glaxosmithkline Consumer Healthcare, Consol Defendant: James B. Irwin , V, LEAD ATTORNEY, Irwin Fritchie Urquhart & Moore, New Orleans, LA; Thomas A Countryman, LEAD ATTORNEY, Fulbright & Jaworski, LLP, San Antonio, TX.

For Glaxosmithkline LLC, formerly known as SmithKline Beecham Corporation, doing business as GlaxoSmithKline, Consol Defendant:  [*20] Frank H. Newton, LEAD ATTORNEY, Fulbright & Jaworski, LLP, Houston, TX; Amy Lane Hurwitz, LEAD ATTORNEY, Carlton Fields, Miami, FL; Brandon L. Crisp, Fulbright & Jaworski, Dallas, TX; Kimberly

S. Penner, Phillips Lytle, LLP, New York, NY; Martha M. Harris, LEAD ATTORNEY, Phillips Lytle LLP, Buffalo, NY; Robert E. Glanville, Phillips Lytle LLP, Buffalo, NY; Tamara P. Halpern, Phillips Lytle, LLp, Buffalo, NY.

For Schnuck Markets, Inc., Consol Defendant: Deanna M. Wendler Modde, Armstrong Teasdale, LLP, St. Louis, MO; Frank N. Gundlach, Armstrong Teasdale Schlafly & Davis, St. Louis, MO; Lisa M. Wood, Armstrong Teasdale, LLP, St. Louis, Mo.

For Procter & Gamble Pharmaceuticals Inc, Procter & Gamble Fed Inc, Procter & Gamble Inc, Consol Defendants: Robert H. Alexander , Jr., LEAD ATTORNEY, Law Office of Robert H. Alexander, Jr. PC, Oklahoma City, OK.

For Wal-Mart Stores, Inc., Consol Defendant: David M. Fuqua, LEAD ATTORNEY, Metropolitan Tower, Little Rock, AR; Patrick Spivey, LEAD ATTORNEY, Fuqua Campbell, P.A., Little Rock, AR.

For Melissa Hill, Consol Claimant: Daniel M. Delluomo, Steven W. Crow, LEAD ATTORNEYS, Delluomo & Crow, Oklahoma City, OK.

**Judges:** ANDREA M. SIMONTON, UNITED STATES MAGISTRATE  **[*21]** JUDGE.

**Opinion by:** ANDREA M. SIMONTON

# Opinion

## ORDER ON PLAINTIFFS' MOTION TO COMPEL THE PROCTOR AND GAMBLE DEFENDANTS TO PRODUCE A FINAL PRIVILEGE LOG AND DOCUMENTS IMPROPERLY DESIGNATED AS PRIVILEGED FOLLOWING *IN CAMERA* REVIEW

Presently pending before the Court is Plaintiffs' Motion to Compel the Proctor & Gamble Defendants to Produce a Final Privilege Log and Documents Improperly Designated as Privileged Following *In Camera* Review (DE # 1582). The Proctor & Gamble Defendants ("P&G") have filed a Response to the Motion (DE # 1603), and the Plaintiffs have filed a Reply (DE # 1624). The Motion has been referred to the undersigned Magistrate Judge (DE ## 611, 1048). The Parties have also submitted supplemental briefs on the issue (DE ## 1776, 1777-2, 1788). In addition, the P&G Defendants have submitted unredacted copies of twenty-eight "sample" disputed documents to the undersigned for purposes of an in camera review and an ex parte memorandum to support their privilege assertions.[1]

Based upon the arguments advanced by the Parties, the papers filed by the Parties on this issue including the supplemental filings, and the documents submitted *in camera* to the undersigned, the undersigned concludes that the twenty-eight sample documents are protected by either the attorney-client privilege or the **work product** doctrine, or both, and thus are not subject to disclosure.

## I. PROCEDURAL HISTORY

This Multi-District Litigation ("MDL") involves claims by consumers who purchased and used an over the counter denture cream manufactured and distributed by the P&G Defendants, which purportedly resulted in those consumers suffering the effects of zinc poisoning. This Order is the second order issued by the undersigned regarding the Plaintiffs' Motion to Compel production of documents which the Plaintiffs contend were improperly

---

[1] The Plaintiffs contend that there are twenty-nine "sample" documents at issue that have been submitted to the Court for an in camera review (DE # 1776 at 1). However, the P&G Defendants contend that there are only twenty-eight **[*22]** "sample" documents that remain in dispute (DE # 1777-2 at 3). The one document difference appears to be because one of the previously disputed documents (Privilege Log Entry # 4809) has already been produced by the Defendants. *Id.*

designated by the P&G Defendants as either attorney-client privileged or as protected by the **work-product** doctrine. The first Order, **[*23]** issued after a hearing on the initial Motion to Compel, granted the Plaintiffs' Motion to Compel, in part, and directed the Defendants to review the approximately one-hundred documents identified by the Plaintiffs as "sample" documents and produce those documents that the Defendants conceded, if any, were not privileged (DE # 1747).[2] In addition, the Defendants were directed to provide responses to the Plaintiffs' challenges and an updated privilege log for those remaining "sample" documents for which the Defendants still asserted a privilege.

In compliance with the Court's March 22, 2012 Order, after the P&G Defendants reviewed and supplemented certain disputed privilege log entries, and after the Parties met and conferred in an attempt to resolve the Plaintiffs' remaining challenges to those privilege logs, the Plaintiffs and the P&G Defendants filed supplemental memoranda of law setting forth their respective positions on the remaining disputed documents (DE ## 1776, 1777-2, **[*24]** 1788). In addition, the P&G Defendants submitted unredacted copies of twenty-eight "sample" disputed documents to the undersigned for purposes of an *in camera* review. In addition, as contemplated by this Court's March 22, 2012 Order, the P&G Defendants submitted an ex parte memorandum to support their privilege assertions wherein they set forth the details surrounding the creation of the disputed documents.

## II. THE POSITIONS OF THE PARTIES

### A. The Position of the Plaintiffs

In their Supplemental Memorandum of Law, the Plaintiffs state that after the Parties met and conferred, the P&G Defendants withdrew their claim of privilege for a number of documents, and similarly, the Plaintiffs withdrew their objections to other documents that had been designated as privileged by the Defendants. The Plaintiffs further state that the Defendants provided the Plaintiffs with an updated privilege log which contained supplemental descriptive information for every single entry on the log where the privilege was not withdrawn. Plaintiffs thus explain that, although 3800 documents still remain in dispute, the sample documents submitted to the Court for an in camera review are representative of the categories **[*25]** of privileged documents that the Plaintiffs maintain are incorrectly designated as privileged as set forth in the Plaintiffs' Initial Motion to Compel. The Plaintiffs contend that they are entitled to obtain the documents in dispute because the attorney-client privilege and the **work product** doctrine as applied to those documents exceeds the scope of those protections. In addition, the Plaintiffs contend that they are entitled to a revised privilege log because the descriptions in P&G's log are insufficient for the Plaintiffs to glean any meaningful information.

Further, in their initial Motion to Compel, the Plaintiffs identified three categories of documents contained in the Defendants' privilege logs to which the Plaintiffs objected as follows:

Category A: Documents in which no attorney was identified;

Category B: Documents in which no attorney was identified but Defendants claim that the document reflects **legal advice**; and

Category C: Documents that were authored by a non-attorney and disseminated to two non-attorneys, indicating that the document was primarily for business purposes.

(DE # 1582-2 at 8). Thus, the Plaintiffs generally contend that the following categories of documents **[*26]** are improperly designated as privileged: 1) communications between P&G employees; 2) communications that contain business advice rather than **legal advice**; and, 3) communications created for purposes other than anticipated or pending litigation.

---

[2] The Order also denied the Plaintiffs' request to have the Defendants review all of the privilege logs that had been previously produced on a rolling basis, and to produce one master privilege log (DE # 1747 at 4).

In addition, in their Supplemental Memorandum of Law in Support of Plaintiffs' Motion to Compel, the Plaintiffs again assert that P&G should be required to provide additional descriptive information in its privilege logs that Plaintiffs contend without which, the Plaintiffs would not be able to ascertain the true nature of the privilege for purposes of challenging that designation (DE # 1776 at 2).

Also, in their Supplemental Memorandum of Law, the Plaintiffs contend that although P&G has provided supplemental descriptions of certain documents, the Plaintiffs still challenge some of those documents as primarily involving business advice or as not being created for anticipated or pending litigation (DE # 1776 at 5-6). Specifically, the Plaintiffs challenge certain documents as relating to labeling, safety assessments, product information and product studies and FDA communications.

As to the substantive legal issues, the Plaintiffs contend that Florida's attorney-client **[*27]** privilege standard as codified in _Fla. Stat. § 90.502_ applies to this action rather than the Ohio attorney-client privilege standard, as suggested by the Defendants. However, the Plaintiffs contend that under either state's attorney-client privilege law, P&G should be required to produce a final, complete and more descriptive privilege log.

Finally, in the Supplemental Memorandum, the Plaintiffs contend that P&G's interpretation of the requirement of identifying privileged documents pursuant to Southern District of Florida _Local Rule 26.1(g)(3)(C)_ is overbroad. Specifically, the Plaintiffs asset that the Defendants must include documents between the Defendants and their counsel on their privilege log even if those documents were created after the commencement of litigation and are related to that litigation, because those documents have been listed on other privilege logs in other similar MDL actions.

B. The Position of the P&G Defendants

As stated above, the P&G Defendants have filed the Privilege Log of Sample 100 Documents (DE ## 1777-1, 1772-2) and a Memorandum of Law in Support of Filing Privilege Log for Sample 100 Documents (DE # 1777-2). In addition, the P&G Defendants have submitted **[*28]** an ex parte Memorandum in Support of Privilege Assertions which describes in greater detail the circumstances surrounding the creation of the sample documents. In the Memorandum filed with the Court, the Defendants have identified the twenty-eight documents submitted for an in camera review as falling into four categories, as follows:

1. 2006 Pre-Litigation Documents

This group of documents consists of emails created during 2006, prior to any litigation being initiated against P&G for zinc toxicity claims, but after a claim had been filed against the manufacturer of another denture adhesive.

According to the Defendants, these twelve sample documents (Privilege Log Entry Nos. 2175 through 2186) stem from a request by P&G in-house Counsel, Paul Franz, to P&G employees seeking certain product information so that Counsel could develop legal guidance and advice on anticipated claims related to the use of Fixodent.

**2. Work Product and Attorney Advice Related to Product Labeling**

P&G asserts that this group of documents (Privilege Log Entry Nos. 991, 998, 983, 3447, 7284, 7110, 4836, 4802, 4797, 7107, 11419 and Pull Back Doc. No 1) primarily relate to **legal advice** and **work product** requests regarding **[*29]** the labeling of denture adhesive products. P&G points out that it has not asserted that all labeling documents that involve counsel are privileged but instead has produced over 1500 documents either sent or received by three of its in-house counsel and over 11,000 related to labeling. Rather, P&G contends that it has only withheld documents related to labeling when those documents involved **legal advice** and/or **work product** communications related to litigation or anticipated litigation.

**3. Attorney Advice Related to FDA Communications**

2012 U.S. Dist. LEXIS 151014, *29

P&G contends that the one document in this category (Privilege Log Entry No. 4760) relates to handwritten notes taken by Greg Collier, Director of Product Safety and Regulatory Affairs for P&G, from a meeting with in-house counsel Matt Malloy, in advance of a meeting with the FDA.[3] The privilege log entry for this document describes the document as "Correspondence with counsel and handwritten notes regarding preparations and strategy for discussions with regulatory agency on litigation-related Matters." (DE # 1776-3 at 3). In addition, the supplemental information provided after the Parties' October 5, 2011 meet and confer provided in the privilege log stated, **[*30]** "As discussed with Attorney Falk in the meet and confer on 10/26, this document is Greg Collier's handwritten notes from a strategy meeting with in-house legal counsel. The topic of meeting was to prepare for discussions with the FDA. Handwritten notes from meeting with legal counsel on top of an email previously produced to Plaintiffs (874386)." *Id.* In addition, in the materials submitted to the Court for an in camera inspection, P&G explained in greater detail the handwritten notes on the email.

#### 4. Work Product Projects Related to Product Analysis and Adverse Events

P&G contends that the documents in this category (Privilege Log Entry Nos. 9367, 11175, 11176) relate to **legal advice** and **work product** projects involving product analyses and adverse event reports. P&G asserts that each of these documents was prepared at the direction of counsel and in support of litigation defense efforts. P&G contends that pursuant to *Federal Rule of Civil Procedure 26(b)(3)*, documents protected by the **work product** doctrine **[*31]** need not be authored by an attorney but rather may be protected if the document is created by a party's agent in anticipation of litigation.

In further support of their ex parte Memorandum, the Defendants have submitted the **affidavits** of the following people: 1) Paul Franz, Esq., Vice President and Associate General Counsel of the Procter & Gamble Company; 2) Lori Combs, Senior Scientist, Global Safety Surveillance at P&G; 3) Dr. Greg Collier, Director of Product Safety and Regulatory Affairs for Global Oral Care at P&G; 4) Sarah Vater, Ph.D., former Section Head in the Product Safety and Regulatory Affairs Department in the Oral Care Division with responsibility for the Fixodent Denture Cream North America business; 5) Donald L. Bjerke, Ph.D., Principal Scientist in the Product Safety & Regulatory Affairs Department in the Beauty Care Division of P&G since 2008, and former Principal Scientist in the Oral Care division of P&G; 6) Jacqueline M. Allshouse-Hutchens, Esq., an attorney in P&G's Legal Division; and, 7) Bladimir Ovando, Ph.D., Senior Scientist in the Product Safety & Regulatory Affairs Department in the Global Oral Care Division of P&G. All of the **affidavits** and declarations **[*32]** recount the facts and circumstances surrounding the creation of the various documents and specifically address the privileged nature of each of the sample documents.

In addition, as to the substantive law, the P&G Defendants contend that the law of Ohio regarding attorney-client privilege rather than Florida law should govern the application of that privilege in this MDL action, and further contend that, unlike the Florida attorney-client privilege law, Ohio law does not require a "heightened scrutiny" analysis when the privilege is applied to corporate entities.

The P&G Defendants further contend that the Plaintiffs have failed to raise specific challenges to the Defendants' privilege log entries, but instead have only raised general categorical objections which flatly contradict the settled parameters of attorney-client and **work product** protections. Similarly, the P&G Defendants contend that other of the general categorical objections incorrectly apply Florida law, and fail to sufficiently explain how the challenged documents are not protected by the **work product** and attorney-client privilege, even after the P&G Defendants have provided detailed explanation of the privileged and protected **[*33]** nature of those documents.

Finally, the P&G Defendants contend that *Rule 26.1(g)(3)(C) of the Local Rules* for the Southern District of Florida clearly provides that "written and oral communications between a party and its counsel after commencement of the action and **work product** material created after the commencement of the action" need not be included on a

---

[3] The Plaintiffs have identified one additional document as falling into the FDA communications category, Privilege Log Entry No. 9435, which has not been submitted for an in camera review.

privilege log. Thus, the Defendants contend that any communications made with their counsel after the commencement of this action need not be included on the Defendants' privilege log.

## III. <u>LEGAL FRAMEWORK</u>

### A. <u>Attorney-Client Privilege</u>

*Florida Statute § 90.502*, entitled "Lawyer-client privilege," provides in relevant part,

(1) For purposes of this section:

(a) A "lawyer" is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.

(b) A "client" is any person, public officer, corporation, association, or other organization or entity, either public or private, who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer.

(c) A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third **[\*34]** persons other than:

1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.

2. Those reasonably necessary for the transmission of the communication.

(2) A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.

Typically, in a diversity action, state law governs the scope of the attorney-client privilege.[4] *See 1550 Brickell Assocs. v. Q.B.E. Ins. Co., 253 F.R.D. 697, 699 (S.D. Fla. 2008)*. Pursuant to Florida law, "[a] communication between lawyer and client is 'confidential' if it is not intended to be disclosed to third persons." *Fla. Stat. § 90.502(1)(c)*; *Cunningham v. Appel, 831 So. 2d 214, 215 (Fla. Dist. Ct. App. 2002)*. It is established that the attorney-client privilege applies to corporations. *In re Vioxx, 501 F. Supp. 2d 789, 796 (E.D. La. 2007)*, citing *Upjohn Co. v. United States, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)*; *Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970)*. The Florida Supreme Court has held that, unlike a claim of attorney-client privilege **[\*35]** made by an individual, a claim of privilege raised by a corporation is subject to a "heightened level of scrutiny." *Southern Bell Tel. & Tel. Co. v. Deason, 632 So.2d 1377, 1383 (Fla. 1994)*. To establish that communications are protected by the attorney-client privilege, P&G, as coporate Defendants, therefore, must demonstrate that the documents satisfy the following requirements:

(1) the communication would not have been made but for the contemplation of legal service;

(2) the employee making the communication did so at the direction of his or her corporate superior;

(3) the superior made the request of the employee as part of the corporation's effort to secure **legal advice** or services;

---

[4] *Fed. R. Evid. 501*, entitled "Privilege in General," provides:

The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the **[\*36]** following provides otherwise:

• the United States Constitution;

• a federal statute; or

• rules prescribed by the Supreme Court.

But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

(4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;

(5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Id.*[5]

In addition, the burden of proof rests squarely on the party claiming the attorney-client privilege to show that the primary purpose of the communication in question was for the purpose of obtaining **legal advice**, not business advice. *See, e.g., Carpenter v. Mohawk Indus., Inc., No. 4:07-CV-0049-HLM, 2007 U.S. Dist. LEXIS 98135, 2007 WL 5971741, at *9 (N.D. Ga. Oct. 1, 2007)* ("When advice given by an attorney relates to both business and legal matters, the **legal advice** must predominate in order for the attorney-client privilege to apply."); *Hasty v. Lockheed Martin Corp., No. Civ. A. 98-1950, 1999 U.S. Dist. LEXIS 12373, 1999 WL 600322, at *2 (E.D. La. Aug. 6, 1999)* ("[T]he business aspects of [a corporate]  **[*39]**  decision are not protected simply because legal considerations are also involved;" and, "in those cases where the document does not contain sufficient information to indicate whether the material was considered confidential, that material should not be privileged."). There is general agreement that the protection of the privilege applies only if the primary or predominant purpose of the attorney-client consultations is to seek **legal advice** or assistance. *In re Seroquel Products Liability Litigation, No. 6:06-md-1769-ORL-22DAB, 2008 U.S. Dist. LEXIS 39467, 2008 WL 1995058, at * 4 (M.D. Fla. May 7, 2008)* citing 1 Paul R. Rice, Attorney-Client Privilege in the United States § 7:5.

## B. Work Product Doctrine[6]

The **work product** doctrine as set forth in *Federal Rule of Civil Procedure 26(b)(3)* provides, *inter alia*,

---

[5] As stated above, the Parties disagree as to whether Florida attorney-client privilege law or Ohio attorney-client privilege law is applicable to this action. In Ohio, attorney-client privilege is established both by statute and at common law. The statutory privilege, *R.C. 2317.02(A)*, is a testimonial privilege and provides generally that an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client." *See also, State ex rel. Leslie v. Ohio Housing Finance Agency, 105 Ohio St. 3d 261, 2005 Ohio 1508, 824 N.E. 2d 990, 994 (Ohio 2005)*. The common law privilege governs those areas not covered by statute. *Id.* At common law, communication is protected "(1) [w]here **legal advice** of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected  **[*37]**  (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Id. at 995* (quoting *Reed v. Baxter, 134 F.3d 351, 355-356 (6th Cir. 1998))*.

The P&G Defendants argue that the Plaintiffs have incorrectly asserted that Florida's attorney-client privilege law should apply to this MDL action, rather than Ohio attorney-client privilege law (DE ## 1603 at 6-8, 1777-2 at 3-8). The Defendants contend that the Ohio attorney-client privilege law does not require the "heightened scrutiny" analysis required by Florida attorney-privilege law as applied to corporations (DE # 1777-2 at 6). Therefore, the P&G Defendants request that this Court apply the Ohio attorney-client privilege standard rather than the Florida attorney-client privilege law.

Given the documents which have been submitted to this Court for review, it is not necessary to determine whether Ohio attorney-client privilege law rather than the Florida attorney-client privilege law should apply because, even assuming that the standards differ under Florida and Ohio law, it is clear that the documents satisfy both standards to the extent that the attorney-client privilege has been asserted by the P&G Defendants.  **[*38]**  This determination is particularly inconsequential in this case where the Plaintiffs contend that "[t]he Florida and Ohio attorney-client privilege standards are essentially the same" (DE # 1776 at 6), and the Defendants contend that even under the "heightened standard" set forth in the Florida law, the documents at issue are protected by the attorney-client privilege, and further admit that the "substantive law [whether Florida or Ohio] may not impact whether any of the documents being reviewed in camera are privileged. . ." (DE # 1777-2 at 8).

[6] The Parties agree that the federal **work product** doctrine applies to this action.

(b) Discovery Scope and Limits.
. . . .
(3) Trial Preparation: Materials.

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, **[\*40]** indemnitor, insurer, or agent). But, subject to *Rule 26(b)(4)*, those materials may be discovered if:

(i) they are otherwise discoverable under *Rule 26(b)(1)*; and
(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
(B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

*Fed. R. Civ. P. 26(b)(3)*. Thus, pursuant to this rule, the **work product** doctrine protects documents prepared in anticipation of litigation or for trial from discovery. The rule provides qualified protection to "documents and tangible things ... prepared in anticipation of litigation or for trial" by or for a party, or by or for a party's representative. *Fed. R. Civ. P. 26(b)(3)*. The **work product** doctrine also protects oral expressions of an attorney's mental impressions, legal theories and subjective evaluations. *Lott v. Seaboard Sys. R.R., Inc., 109 F.R.D. 554, 557-58 (S.D. Ga. 1985)*. However, the **[\*41]** **work product** doctrine does not protect facts contained in documents prepared in anticipation of litigation. *See United States v. Pepper's Steel & Alloys., 132 F.R.D. 695, 698 (S.D. Fla. 1990)*.

In addition, in order for the doctrine to apply, a party must anticipate litigation at the time the documents were drafted. *CSX Transp., Inc. v. Admiral Ins. Co., No. 930132-CIV-J-10, 1995 U.S. Dist. LEXIS 22359, 1995 WL 855421, at \*2 (M.D. Fla. July 20, 1995)*. Thus, documents drafted in the ordinary course of business are not protected. *Id.* Accordingly, in assessing whether the **work product** doctrine is applicable to a particular document, a court must determine when the document was created, and why it was created. *Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 698 (S.D. Fla. 2007)* (citations and quotations omitted); *Moye, O'Brien, O'Rourke, Hogan & Pickert v. National R.R. Passenger Corp., No. 6:02-CV-126-ORL-KRS, 2003 U.S. Dist. LEXIS 28409, 2003 WL 21146674, \*14 (M.D.Fla. May 13, 2003)* ("The **[\*42]** testing question for the **work product** privilege, ... is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.") (internal quotations omitted).

Finally, like the attorney-client privilege, the party asserting that a document or information is protected **work product** has the burden of establishing that the document was prepared or information was provided both (1) in anticipation of litigation and (2) by the party or by a representative of the party. *Fed. R. Civ. P. 26(b)(3)*; *Hodges, Grant & Kaufmann v. United States, 768 F.2d 719, 721 (5th Cir. 1985)*; *Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland, 131 F.R.D. 596, 600 (M.D. Fla. 1990)*.


## C. Local Rule 26.1 (g)

Southern District of Florida *Local R. 26.1 (g)*, which governs the method for asserting a privilege, provides, in relevant part,

(g) Interrogatories and Production Requests.
. . .
(B) Where a claim of privilege is asserted in objecting to any interrogatory or production demand, or sub-part thereof, and an answer is not provided on the basis of such assertion:

(i) The attorney asserting **[\*43]** the privilege shall in the objection to the interrogatory or document demand, or subpart thereof, identify the nature of the privilege (including **work product**) which is being claimed and if the

privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked;

. . . .

(C) This rule requires preparation of a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or **work product** protection except the following: written and oral communications between a party and its counsel after commencement of the action and **work product** material created after commencement of the action.

Thus, *inter alia*, pursuant to this rule, although a litigant must provide the grounds for the asserted privilege as in a privilege log, a litigant need not identify on that privilege log those communications between a litigant and its counsel after the commencement of an action.


# IV. ANALYSIS


## A. Timeliness of Plaintiffs' Objections

As an initial matter, to the extent that the timeliness of the Plaintiffs' objections to the Defendants' privilege logs **[*44]** was not resolved in the first hearing on the Motion to Compel and the Order entered memorializing the rulings made at that hearing (DE # 1747), the undersigned briefly addresses that issue. The P&G Defendants contend that the Plaintiffs should have raised their objections to the "rolling privilege logs" provided by the Defendants within thirty days of the production of each of those logs as required by *Local Rule 26.1(h)(1)*, of the Local Rules for the Southern District of Florida. In addition, the Defendants contend that the Plaintiffs' Motion to Compel was also untimely.

Based upon a review of the chronology of the discovery process in this matter, the undersigned concludes that the Plaintiffs' objections to the Defendants' privilege logs were timely raised. Specifically, Case Management Order No. 3 issued in this case, which set forth the requirement that the parties produce privilege logs within ninety (90) days after an initial or subsequent production of documents, was silent as to when objections to those privilege logs needed to be raised (DE # 89 at 12). However, it is undisputed that after the Defendants had responded to a number of the Plaintiffs' document requests and provided **[*45]** privilege logs related to those productions, the Court set a deadline of September 15, 2011 for the Plaintiffs to raise objections to the Defendants' privilege logs (DE # 1405 at 1). By all accounts, the Plaintiffs did raise objections as to those privilege logs previously produced by the P&G Defendants on or before that deadline (DE # 1603 at 3).[7] In addition, the undersigned finds merit in the Plaintiffs' contention that, because the Defendants did not produce a privilege log covering their entire production until December 6, 2011, the Plaintiffs' Motion to Compel a Final Privilege Log, which was filed within thirty days of that date, was timely under the applicable rules (DE # 1582-2 at 17).

Finally, given the complex nature of this MDL litigation, including the fact that the Defendants have produced close to fifty (50) privilege logs, and the Parties have continually engaged in conferences regarding the production of documents including those documents withheld on the basis of privilege, the undersigned concludes that it is

---

[7] In this regard, the undersigned notes that the Order setting the deadline date for the Plaintiffs' response to the privilege logs was entered by the Court after the Parties submitted their respective proposed scheduling orders (DE ## 1379-1, 1379-32), wherein the Plaintiffs addressed the issue of responding to the Defendants' privilege logs by, among other things, proposing the September 15, 2011 deadline date. The Defendants' written proposed scheduling order was silent as to the time for the **[*46]** Plaintiffs to respond to the Defendants' privilege logs (DE ## 1379-1, 1379-2 at 6 n 5).

appropriate to entertain the Plaintiffs' objections to the documents withheld by the P&G Defendants on the basis of attorney-client privilege and the **work product** doctrine.[8]

## B. Sufficiency  [*47] of the Descriptions of Entries Contained in the Defendants' Privilege Logs

In the Motion to Compel, the Plaintiffs have requested that P&G be required to provide additional descriptions of the documents listed in the various privilege logs. Typically, a privilege log should identify each document and the individuals who were parties to the communications with sufficient detail to permit the compelling party or court to determine if the privilege is properly claimed. *Arthrex, Inc., v. Parcus Medical, LLC, No. 2:11-CV-694-FTM-29SPC, 2012 U.S. Dist. LEXIS 124173, 2012 WL 3778981 at *4 (M.D. Fla. Aug. 31, 2012)*, citing *CSX Transportation, Inc., v. Admiral Insurance Co., No. 93-132-CIV-J-10, 1995 U.S. Dist. LEXIS 22359, 1995 WL 855421, at *3 (M.D. Fla. July 20, 1995)*. Thus, a proper privilege log should contain the following information:

> (1) the name and job title or capacity of the author of the document;
>
> (2) the name and job title or capacity of each recipient of the document;
>
> (3) the date the document was prepared and if different, the date(s) on which it was sent to or shared with persons other than the author(s);
>
> (4) the title and description of the document;
>
> (5) the subject matter addressed in the document;
>
> (6) the purpose(s) for which it was prepared  [*48] or communicated; and
>
> (7) the specific basis for the claim that it is privileged.

*Roger Kennedy Construction, Inc. v. Amerisure Insurance Co., No. 6:06-C-1075-ORL-19KRS, 2007 WL 1362746, at *1 (M.D. Fla. May 7, 2007)* (detailing the information needed in a proper privilege log).

The undersigned has reviewed the descriptions in the privilege log of the sample documents submitted for an *in camera* review and concludes that the descriptions currently in that log, which were supplemented after a meet and confer held in October of 2011, and again after a meet and confer held in March of 2012, are sufficient to place the Plaintiffs on notice of the nature of the asserted privilege, and thus do not need to be supplemented. By way of example, Privilege Log Entry No. 11175, which Plaintiffs cite as an example of a deficient privilege log description, is an email dated June 3, 2011, which initially was described as, "Correspondence from P&G employee to P&G employee regarding searches for Fixodent information and data and compiling same at the request of counsel for purposes of litigation." (DE # 1776 at 3). The Privilege Log entry for this document also identified the date of the email, the person  [*49] who created the email, and the person to whom the email was sent. This entry was supplemented by the P&G Defendants on March 22, 2012, to include the following information:

> This email is from one P&G employee to another P&G employee sending an attachment which contains Fixodent consumer information asked to be compiled at the request of counsel for purposes of preparing a defense for the litigation. The law clearly holds that compiled or prepared information at the request of counsel, even though performed by company employees, are entitled to **work product** protections. This is squarely a case of this exact scenario as the information was prepared for the defense of the Fioxdent litigation where there were allegations of zinc toxicity and consumer claims reported to P&G are at issue in this litigation.

(DE # 1776 at 3). Even with this supplemental information, the Plaintiffs contend that this description is insufficient because it is conclusory with no legal, factual or evidentiary support for P&G's assertion that the email is entitled to

---

[8] The undersigned notes that implicit in the Court's earlier Order on the Motion to Compel issued on March 22, 2012, (DE # 1747) was the fact that the Court deemed the Plaintiffs' objections to the Defendants' privilege logs as timely. Consistent with that determination, the Parties did not reassert their arguments related to the timeliness of the Plaintiffs' objections in their respective Supplemental Memoranda of Law filed in conjunction with the sample documents submitted for the Court's *in camera* review. In addition, neither Party objected to the undersigned's earlier Order.

2012 U.S. Dist. LEXIS 151014, *49

**work product** protection. The undersigned concludes, for the following reasons, that the Plaintiffs' contentions are without merit.

First, the Plaintiffs **[*50]** have not specifically stated that the Defendants' privilege log fails to adequately identify the dates, authors or recipients of the entries on the log. In this regard, the undersigned notes that Case Management Order No. 3 also set forth the requirements of the privilege log including requiring that the log, consistent with *Fed. R. Civ. P. 26(b)(5)*, include; (a) Custodian or source; (b) Date; (c) From/author(s)-to the extent available: (d) Recipient(s) (For email and hard-copy communications such as letter and internal memoranda)(including copies and blind copies); (e) Identifications of the privilege claimed; and (f) Description of the document and basis for the privilege claim. (DE # 89 at 12-13). The Plaintiffs have not identified which parts of Case Management Order No. 3 the Defendants specifically failed to comply with, other than asserting that the descriptions of the documents are insufficient. Second, it is hard to fathom how the descriptions from the privilege log set forth above are insufficient to place the Plaintiffs on notice as to the basis of the Defendants' asserted privilege and whether the Plaintiffs had a basis for objecting to that assertion. Other than specifically **[*51]** stating the exact contents of the withheld documents, the undersigned is unclear what other information the Plaintiffs contend that the Defendants' should have divulged. In this regard, the undersigned concludes that even the descriptions of the sample documents that were supplemented after the October 2011 meet and confer were sufficient to satisfy the privilege log disclosure requirements. The additional information added to those entries after the March 2012 meet and confer exceeds what is typically required to be provided in a privilege log. While the Court understands the Plaintiffs' desire to have additional information regarding the contents of the documents withheld by the Defendants, requiring a fully detailed description of the withheld document would, in essence, eviscerate the purpose of the privilege rule.

In this regard, it is worth noting that the purpose of the March 2012 meet and confer, held after the hearing on the initial Motion to Compel, was for the Parties to attempt to resolve disputes regarding the then-approximately 100 sample documents over which P&G asserted a privilege, which resulted in P&G withdrawing some assertions as to those sample documents. The goal **[*52]** of collecting sample documents was to determine whether privileges had been properly or improperly claimed and for the Parties to apply those rulings to the remaining documents, without the need for further court review. Where P&G agreed to withdraw its assertion of privilege during the meet and confer process regarding the sample documents, there was no need for a court ruling. Nonetheless, even though there was no court ruling regarding the applicability of the privilege, the undersigned assumes that, consistent with the purpose of the sample review process, P&G has withdrawn any similar claims of privilege with respect to the 3800 documents originally challenged, and has produced any similar documents.[9]

In addition, it is for this same reason that P&G need not provide supplemental descriptions for the remaining approximately 3800 documents identified in its privilege logs. The purpose of requiring P&G to provide more detailed descriptions of the sample documents after the March 2012 meet and confer was so that the Plaintiffs could raise meaningful challenges to the assertions **[*53]** of privilege for those documents. Thus, requiring P&G to provide additional descriptive information for documents similar to the sample documents would be a futile task, because, as discussed fully below, the undersigned has concluded that P&G's assertions of attorney-client privilege and/or **work product** protection for the sample documents submitted to the Court, in camera, were entirely proper. In other words, if P&G supplemented its descriptions for the remaining documents in its privilege logs, which are similar to the sample documents that were submitted for an in camera review, the Court would likely find that those documents were also protected from disclosure, and thus the task of providing supplemental descriptions would serve no purpose. Indeed, it is presumably for this reason that the Plaintiffs requested that the Court conduct an in camera review of sample documents in the first place. Accordingly, the P&G Defendants need not supplement the descriptions of documents contained in their privilege logs.

### C. Analysis of Sample Document Categories

---

[9] If such documents have not been produced, P&G must produce them within 30 days from the date of this Order.

### 1. <u>Plaintiffs' General Objections</u>[10]

As stated above, the Plaintiffs initially contended that certain documents withheld by the Defendants were not subject to protection from disclosure because the privilege log descriptions for those documents did not reflect that an attorney either authored or received the specific correspondence or document being withheld (DE # 1582-2 at 8). Specifically, the Plaintiffs identified certain documents as falling within the following categories for support of their contention that the documents should have been produced:

Category A: Documents in which no attorney was identified;

Category B: Documents in which no attorney was identified but Defendants claim that the document reflects **legal advice**; and

Category C: Documents that were authored by a non-attorney and disseminated to two non-attorneys, **[*55]** indicating that the document was primarily for business purposes.

However, despite the Plaintiffs' categorization of the documents withheld by the Defendants, it is clear that pursuant to the relevant case law, the determination of whether a document is protected by the attorney-client privilege or the **work product** doctrine does not turn solely on whether a particular document reflects that an attorney and/or certain corporate management employees either authored or received the document in dispute.

Indeed, by way of background, in *Southern Bell Telephone and Telegraph, Co. v. Deason, 632 So. 2d 1377 (Fla. 1994)*, the Florida Supreme Court rejected the "control-group test" in favor of the "subject matter test" in determining whether certain communications between non-upper echelon employees were protected from disclosure. While the control group test limited the application of the attorney-client privilege to those communications between the attorney and members of the corporation who are "in a position to control or even to take a substantial part in a decision about action which the corporation may take upon the advice of the attorney," the "subject matter test" extended the zone of **[*56]** attorney-client privilege to other corporate employees under certain circumstances. *Southern Bell, 632 So.2d 1377 at 1381* (citing *City of Philadelphia v. Westinghouse Elec. Corp., 210 F.Supp. 483 (E.D. Pa. 1962))*. Specifically, the Florida Supreme Court acknowledged that middle and lower-level employees frequently play a crucial role in a corporation's activities and thus an attorney representing a corporation may be charged with gathering the facts from employees with information relevant to the corporations' legal problem regardless of their rank. Thus, although *Deason* dealt with communications between counsel and various corporate employees, the Court in that case, in essence, acknowledged the realities of other lower level employees in facilitating the dissemination of **legal advice** to the corporation which may extend the scope of the attorney-client privilege.

Consistent with this principle, in *Tyne v. Time Warner Entm't Co., L.P., 212 F.R.D. 596 (M.D. Fla. 2002)*, the Court applied the Deason subject matter test to determine whether certain correspondence between non-attorneys sought from a corporation during discovery was protected under Florida's attorney-client privilege. The **[*57]** plaintiff in the matter asserted that certain documents were not protected by the attorney-client privilege because the documents were authored by a non-attorney employee who was not an agent of the legal department, and who distributed the information to other non-attorney individuals who also were not in the corporation's legal department. The court rejected this position and concluded that, because the non-attorney who authored the documents disseminated **legal advice** from the legal department to key individuals who were tasked with acting on the advice, the communications were, in fact, protected by Florida's attorney-client privilege. *Id. at 600-01*. The court's conclusion on this issue was supported by the statements of the head of the corporation's legal department who testified that

---

[10] Although the Plaintiffs have identified the Defendants' withheld documents as falling into either **[*54]** categories A, B or C based upon the authors and/or recipients of certain documents, because in response to the Motion to Compel the Defendants have asserted the attorney-client privilege and/or **work product** protection based upon the substantive content of the documents, the undersigned analyzes the documents by the substantive categories identified by the Defendants in the following portions of this Order.

the non-attorney, who authored the disputed documents, had direct, daily contact with him, and regularly consulted with attorneys on issues before passing the information on to other non-legal employees. *Id.*

Similarly, in *Preferred Care Partners Holding Corp. v. Humana, Inc., 258 F.R.D. 684 (S.D. Fla. 2009)*, the undersigned concluded that certain emails were protected by the Florida attorney-client **[*58]** privilege despite the fact that the emails were sent between two employees. *Id. at 696*. In so doing, the undersigned stated,

> [T]he [ ] Email-in both its redacted and unredacted form-is protected by the attorney-client privilege. The fact that [the Plaintiff] redacted portions of the document consisting of direct communications to and from [the litigant's] attorneys is not the dispositive factor where, as here, the unredacted portions of the document comprise communications among the corporation's employees intended to disseminate the **legal advice** provided by counsel and discussing the ramifications of that **legal advice**. See *Weeks v. Samsung Heavy Indus. Co., No. 93-C-4899, 1996 U.S. Dist. LEXIS 8554, 1996 WL 341537, at \*4 (N.D.Ill. June 20, 1996)* ("A privileged communication does not lose its status as such when an executive relays **legal advice** to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the **legal advice** rendered to them as agents of the corporation.") (internal citations omitted).

Thus, although the Plaintiffs in this case are generally correct that courts have denied corporate entities from withholding documents on the **[*59]** basis of attorney-client privilege where those entities' legal departments have broad powers and the corporation "simultaneously sends communications to both lawyers and non-lawyers", see, e.g., *In re Vioxx Products Liability Litigation, 501 F. Supp. 2d 789, 805 (E.D. La. 2007)*; *In re Seroquel Prods. Liability Litig., No. 6:06-md-1769-Orl-22DAB, 2008 U.S. Dist. LEXIS 39467, 2008 WL 1995058, at \*4 (M.D. Fla. May 7, 2008)*, as evidenced by the holdings in *Tyne* and *Preferred Care Partners*, this blanket rule does not apply to all documents or communications between non-legal employees in the corporate setting. Rather, as stated in *Vioxx*,

> The fictitious legal entity is the client that cannot speak, but that entity is personified by the employees who represent its interests and speak on its behalf. Consequently, it protects communications between those employees and corporate legal counsel on matters within the scope of their corporate responsibilities, as well as communications between corporate employees in which prior advice received is being transmitted to those who have a need to know in the scope of their corporate responsibilities.

*In re Vioxx, 501 F. Supp. 2d 789, 796 (E.D. La. 2007)*. In addition, as stated in *U.S. v. Lockheed Martin Corp., 995 F. Supp. 1460, 1464 (M.D. Fla. 1988)*, **[*60]** "The Supreme Court [has] established that privileged communications are not limited to those in control of the corporation. When executives who will act on **legal advice** direct lower level employees to provide information to counsel, those communications (though not the underlying information) may qualify for the privilege." *Id.*, citing *Upjohn Co. v. United States, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)*.

Similarly, simply because a communication is made between two corporate employees, neither of whom are attorneys, that fact is not determinative of whether that communication primarily involves business advice rather than **legal advice** for purposes of applying the attorney-client privilege to that correspondence. To conclude otherwise would result in a somewhat absurd finding that a document generated for purposes of obtaining and/or assisting in the transmission of **legal advice** would not only lose its privileged character, but would be artificially viewed as primarily a business communication merely because the author and recipient were not attorneys. Thus, the Plaintiffs' contention that the absence of an attorney on a particular correspondence or document renders that document discoverable as it cannot **[*61]** satisfy the "**legal advice** or services" requirement of Florida's attorney-client privilege law, is without merit.[11]

---

[11] The undersigned acknowledges that the Plaintiffs are without the benefit of viewing the actual withheld documents, or the Defendants' ex parte submissions, including **affidavits** and declarations, that provide greater detail about the documents at issue, and thus are unable to precisely describe the reasons that the privilege may not be applicable.

2012 U.S. Dist. LEXIS 151014, *61

Therefore, the undersigned declines to adopt the Plaintiffs' wholesale approach to concluding that certain documents withheld by the P&G Defendants are not privileged based solely upon the fact that the particular document did not reference an attorney, was authored by a non-attorney and/or was disseminated by two non-attorneys. Rather, the undersigned must examine the documents and the circumstances surrounding the creation of those documents on an individual basis to ascertain whether they are entitled to attorney-client protection.

This same analysis applies equally to those documents withheld on the basis of the **work product** doctrine. As stated in *Lafarge North America, Inc. v. Matraco-Colorado, Inc., No. 07-80112-CIV, 2008 U.S. Dist. LEXIS 47508, 2008 WL 2474638 at * 5 (S.D. Fla. June 19, 2008)*, **[*62]** "[I]n addition to the attorney-client privilege, protection is afforded to attorney **work product**. Materials prepared by a party's representative, including his or her designated agent, to aid in anticipated or pending litigation will be protected from disclosure unless the party seeking discovery shows substantial need for the materials and cannot acquire a substantial equivalent without undue hardship." *Id.* citing *Hickman v. Taylor, 329 U.S. 495, 511, 67 S. Ct. 385, 91 L. Ed. 451 (1947)*; *Fed. R. Civ. P. 26(b)(3)(A)*. Thus, the **work product** doctrine, as interpreted in case law, and explicitly set forth in *Fed. R. Civ. P. 26 (b)(3)*, does not require that the withheld document be prepared by an attorney, or even reviewed by an attorney.

In addition, litigation need not be already initiated in order for the **work product** doctrine to apply. In *Tyne,* for example, the Court concluded that to the extent that the undisclosed documents were not protected by the Florida attorney-client privilege, they could be protected by the **work product** doctrine. In reaching this conclusion, the Court stated,

> Finally, even if the documents were not protected from discovery by the attorney-client privilege, they may be protected by the **work** **[*63]** **product** doctrine. While many of the documents are created and circulated with the purpose of avoiding litigation, some documents indicate that specific litigation had been overtly threatened. Many, if not all, of the documents are protected by the **work product** doctrine because they were developed in order to avoid, and eventually to defend against, threatened or anticipated litigation. The production companies accurately anticipate that they may be sued for misuse of certain material in their films. The legal department analyzes the legal risks of including such material in the film, and either obtains what it believes to be adequate clearance, or recommends that the studio not include the material in the film. The **work product** associated with this process is produced in anticipation of litigation, and is protected from discovery. Plaintiffs have failed to demonstrate need and undue hardship in order to overcome that protection.

*Id. at 601*. It is significant that the Court focused on whether the work performed was in anticipation of litigation, even if no litigation was ultimately commenced on the particular issue.

Therefore, the Plaintiffs' contention that certain of the documents are **[*64]** not protected by the **work product** doctrine because they were not authored or received by an attorney, standing alone, is insufficient to demonstrate that no protection applies to those documents. Rather, as set forth below, the undersigned has conducted a document by document review of each of the sample documents, including examining the circumstances surrounding the creation of a particular document, to ascertain whether the particular document is attorney-client privileged or entitled to **work product** protection. Based thereon, the undersigned concludes, for the following reasons, that each of the documents are protected from disclosure by either attorney-client privilege or the **work product** doctrine, or both.

## 2. Specific Documents

### a. 2006 Pre-Litigation Documents

As stated above, the Defendants describe these sample documents (Privilege Log Entry Nos. 2175 through 2186) as consisting of emails created during 2006, prior to any litigation being initiated against P&G for zinc toxicity claims, but after a claim had been filed against the manufacturer of another denture adhesive. Specifically,

2012 U.S. Dist. LEXIS 151014, *64

according to the Defendants, these twelve sample documents stem from a request by P&G in-house [*65] Counsel, Paul Franz, Esq., to P&G employees seeking certain product information so that Counsel could develop legal guidance and dispense advice on anticipated claims related to P&G's products. In support of this contention, the Defendants have submitted, ex parte, the **affidavit** of Paul Franz, Esq., P&G Vice President and Associate General Counsel, which sets forth the circumstances surrounding the creation of the withheld documents. The Plaintiffs generally objected to these documents being withheld because either no attorney was identified (Category A) or the document was authored by a non-attorney author and there were at least two non-attorney recipients (Category C).

After a thorough review of the documents submitted by the Defendants, including the **Affidavit** of Mr. Franz, and consistent with the analysis set forth above in *Tyne* and *Preferred Care Partners*, the undersigned concludes that all of the documents listed in this category (Privilege Log Entry Nos. 2175-2186) are protected from disclosure as they either satisfy the requirements of the Florida attorney-client privilege as applied to corporations, or are documents prepared in anticipation of litigation as required by the [*66] **work product** doctrine, or both. To the extent that the Plaintiffs objected to the documents as being subject to disclosure because they were either authored by, or received by, non-attorney or non-legal personnel, the Defendants' ex parte submissions sufficiently rebut this assertion. In particular, almost all of the persons identified on the documents as either the author or one of the recipients were either attorneys, Directors at P&G of departments relevant to the legal subjects at issue, or persons who would have access to information necessary to Mr. Franz's information gathering task.[12] Thus, this is not a case where otherwise protected documents were distributed widely to persons who did not need to be informed of the **legal advice** disseminated by P&G's counsel.[13]

### b. Work Product and Attorney Advice Related to Product Labeling

The Defendants contend that this group of documents (Privilege Log Entry Nos. 991, 998, 983, 3447, 7284, 7110, 4836, 4802, 4797, 7107, 11419 and Pull Back Doc. No 1) primarily involve **legal advice** and **work product** requests relating to the labeling of denture adhesive products.[14] In support of this contention, the P&G Defendants

---

[12] The **Affidavits** and Declarations submitted ex parte by the P&G Defendants establish the following: Paul Franz, Esq., is the Vice President and Associate General Counsel of P&G, Dr. Ron Stout was the Associate Director of Global Safety Surveillance of P&G during the relevant time frame; Jack Amburgey worked in P&G's Product Safety and Regulatory Affairs Department; Lori Combs was a Senior Scientist in the Global Safety [*67] Surveillance department at P&G; Holly Cheers was a Senior Scientist in Global Safety Surveillance & Analysis at P&G; William Greg Collier, Ph.D. was the Director of Product Safety and Regulatory Affairs for Global Oral Care at P&G and also previously was the Associate Director of that department; Sally Vater, Ph.D. was the Section Head in the Product Safety and Regulatory Affairs Department in the Oral Care Division; Michael Achampong was the Regulatory Manager for Fixodent at P&G and reported to Sally Vater; Mark Griffiths was the Regulatory Section Head for European Fixodent business; Donald L. Bjerke, Ph.D. was the Principal Scientist in the Product Safety & Regulatory Affairs Department in the Beauty Care Division at P&G and formerly was a Principal Scientist in the Oral Care division; Bladimar Ovando, Ph.D is the current Fixodent toxicologist; Jeff King was the Fixodent Brand Manager; Dr. Dave Mitchell was the Section Head of Central Product Safety; and Jacqueline Allshouse-Hutchens and Matt Malloy were in-house Counsel for P&G. In addition, Counsel for P&G has identified Keith Triebwasser as the Director in the Global Product Safety and Regulatory Affairs Department.

[13] The undersigned [*68] notes that the Plaintiffs have not contended that they are unable to obtain the documents without significant hardship, and thus, for purposes of resolving the instant dispute, it is inconsequential whether the documents are protected from disclosure by the attorney-client privilege or the **work product** doctrine, or both.

[14] It is unclear whether the Plaintiffs still object to the "pull back" document on the basis that the Defendants waived any objection to the disclosure of this document by failing to raise the objection earlier. At any rate, it doesn't appear the privilege was waived. Although the Court applies the substantive law of the State when evaluating attorney-client privilege, Federal *Rule 502* provides:

2012 U.S. Dist. LEXIS 151014, *68

point out that they have not asserted that all labeling documents that involve counsel are privileged but instead have produced over 1500 documents either sent or received by three of P&G's in-house counsel and over 11,000 documents related to labeling. Rather, the P&G Defendants contend that they have only withheld documents related to labeling when those documents involved **legal advice** and/or **work product**. Generally, the undersigned finds that these documents are protected by the **[*69]** attorney-client privilege and the **work product** doctrine based, in large part, upon the statements contained in the **Affidavit** of Paul Franz, Esq., Vice President and Associate General Counsel of P&G, which were submitted on an ex parte basis to the Court.

As to Privilege Entry Nos. 991, 998, 983 and Pull Back Doc. No 1 specifically, the Defendants have provided the undersigned with several other privileged emails, that have not been challenged by the Plaintiffs, which provide additional context for the redacted emails which are currently at issue. Based upon a thorough review of those documents, and the **Affidavits** of Paul Franz, Esq., and Donald Bjerke, Ph.D., as well as the Declaration of Greg Collier, the undersigned concludes that Privilege Log Entry Nos. 991, 998, 983 and Pull Back Doc. No. 1 are protected by the attorney-client privilege and **work product** doctrine, despite the fact that labeling is mentioned in those documents. Specifically, it is clear that the documents are not concerned with business and/or marketing decisions related to labeling but clearly pertain to legal concerns including potential litigation.[15] As such, the documents may be properly withheld by the Defendants.

In addition, Privilege Log Entries Nos. 7284 and 7110 are documents pertaining to Julie Aker, President and CEO of Concentrics Research, LLC, related to litigation strategy, who was contacted as a consulting litigation expert by Jacqueline Allshouse-Hutchens, Esq., **[*72]** an attorney in the Legal Department of P&G. The information regarding the privilege was included in the Defendants' Privilege Log after the meet and confer held on October 5, 2011 (DE # 1776-1). Specifically, Privilege Log Entry No. 7110 provides,

> This document contains handwritten notes of Sally Vater reflecting her discussions with in-house legal counsel, Jacqueline Allshousehutchens, regarding counsel's consultation with a human factors litigation consultant (Julie Aker) on the Fixodent denture adhesive label. As more fully explained in Ms. Allshousehutchens' **affidavit** previously provided to Plaintiffs' counsel in this litigation, Ms. Allshousehutchens' consultation with Ms. Aker was undertaken by counsel for the purpose of seeking information to assist her in advising the company in pending/anticipated litigation.

---

When made in a Federal proceeding . . ., the disclosure [of a communication or information covered by the attorney-client privilege] does not operate as a waiver in a Federal or State proceeding if:

(1) the disclosure is inadvertent;

(2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and

(3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following *Federal Rule of Civil Procedure 26(b)(5)(B)*.

*Fed. R. Evid. 502(b)*. Thus, it appears in this case, that the Defendants inadvertently **[*70]** disclosed this document and attempted to rectify this error, thereby satisfying the requirements of *Rule 502(b)*. Accordingly, the P&G Defendants are permitted to withhold Pull Back Doc. No. 1, on the basis of the asserted privileges.

[15] The persons who **[*71]** were in receipt of these documents also generally fall into the category of persons identified in the pre-2006 communications, in that they are either Counsel for P&G, directors at P&G in departments relevant to the legal issues at hand, or persons whose knowledge of the legal issue or task related to the issue is necessary for completion of that task. It is also worth noting that none of the documents submitted for in camera review rely exclusively on the attorney-client privilege for their protection, but all of the documents list the **work product** doctrine, as well. Thus, to the extent that the Plaintiffs contend that the P&G Defendants have failed to satisfy the Florida attorney-client privilege because of dissemination of the withheld documents beyond those persons who, because of the corporate structure, need to know their contents, that argument fails because the documents are protected by the **work product** doctrine.

2012 U.S. Dist. LEXIS 151014, *71

(DE # 1776-1 at 5). Based upon a review of this document, as well as Privilege Log Entry No. 7284, and the **Affidavit** of Jacqueline Allshouse-Hutchens, Esq., submitted in support of the Defendants' contention that this document is protected from disclosure, the undersigned agrees that both documents are protected by the **work product** doctrine.

The Defendants have provided **[*73]** the unredacted form of Privilege Entry No. 3447, which includes references to labeling but specifically refers to litigation and expresses impressions from P&G's counsel, and thus is protected from disclosure, under the attorney **work product** doctrine. This conclusion is supported by the **Affidavit** of Donald L. Bjerke, Ph.D., a principal scientist in the Product Safety and Regulatory Affairs Department in the Beauty Care Division at P&G, which has been submitted to the undersigned on an ex parte basis. Dr. Bjerke's **Affidavit** makes clear that the email in question was generated as part of his completion of a task for the P&G legal department related to litigation. Thus, although the Plaintiffs are correct when they state that "non-attorney impressions are not protected **work product**," (DE # 1624 at 8), the carrying out of tasks at the behest of legal counsel, or the summarization of **legal advice**, even if done by a non-attorney for purposes of disseminating that advice to other corporate employees is clearly protected, as is the case of the document authored by Dr. Bjerke.

As to Privilege Log Entry Nos. 4836, 4802, 4797, and 7107, all of which were created after litigation was initiated **[*74]** in this action, these documents, although containing references to labels, primarily involve legal considerations regarding labeling relating to pending and/or anticipated products liability litigation matters, and thus are protected by the **work product** doctrine. This conclusion is reached in part based upon the Declaration of Greg Collier, Director of Product Safety and Regulatory Affairs for Global Oral Care at P&G, and the **Affidavits** of Jacqueline Allshouse-Hutchens, Esq., and Sarah Vater, Ph.D., all of which provide the factual context for which these documents were created. The unredacted documents have also been provided to the undersigned and confirm that Privilege Entry Nos. 4836 and 4802 are protected by the Florida attorney-client privilege as they involve communications from a P&G corporate division director directed to its counsel soliciting **legal advice**.

Further, Privilege Entry No. 11419, which refers to labeling issues, is protected by the **work product** doctrine as it was generated in anticipation and consideration of litigation. This conclusion is reached in part based upon the **Affidavit** of Sarah Vater, Ph.D, the former Section Head of Product Safety and Regulatory Affairs **[*75]** Department in the Oral Care Division which was submitted ex parte to the Court.

In sum, the materials submitted to the undersigned in this category relate to strategies and concerns about litigation which are affected by the labels affixed upon the products at issue and include suggestions by counsel regarding that labeling. Thus, the documents withheld by the Defendants are not akin to those regulatory labeling documents at issue in the cases of Vioxx and Seroquel which are cited by the Plaintiffs and discussed below, but rather are specifically related to the litigation strategy and/or primarily seek or complete a task related to **legal advice**. As such, the documents are protected from disclosure.

c. Attorney Advice Related to FDA Communications

P&G contends that the one document in this category (Privilege Log Entry No. 4760) relates to handwritten notes taken by Greg Collier, Director of Product Safety and Regulatory Affairs at P&G, during a meeting with in-house counsel Matt Malloy, in advance of a meeting with the FDA.[16] The privilege log entry for this document describes the document as "Correspondence with counsel and handwritten notes regarding preparations and strategy for discussions **[*76]** with regulatory agency on litigation-related Matters." In addition, the supplemental information provided after the Parties' October 2011 meet and confer provided in the privilege log states, "As discussed with Attorney Falk in the meet and confer on 10/26, this document is Greg Collier's handwritten notes from a strategy meeting with in-house legal counsel. The topic of meeting was to prepare for discussions with the FDA. Handwritten notes from meeting with legal counsel on top of an email previously produced to Plaintiffs (874386)." Further, in the

---

[16] The Plaintiffs have identified one additional document as falling into the FDA communications category, Privilege Log Entry No. 9435, which has not been submitted for an in camera review.

materials submitted to the Court for an in camera inspection, P&G explained in greater detail the handwritten notes on the email.

Given the circumstances surrounding the creation of this email, the undersigned concludes that this case is distinguishable from *In re Seroquel Products Liability Litigation, Case No. 06-1769-ORL-22DAB, 2008 U.S. Dist. LEXIS 39467, 2008 WL 1995058, at *1 (M.D. Fla. May 7, 2008)*, which the Plaintiffs rely on in support of their contention that the email **[*77]** concerns primarily business advice relating to the FDA rather than **legal advice** and therefore is discoverable. In particular, although, as correctly noted by the Plaintiffs, the court in Seroquel concluded that the attorney-client privilege attached to documents only if the primary or predominate purpose of the attorney-client consultation was to seek **legal advice** or assistance, in that case, the defendants asserted, among other things, that their in-house counsel's advice on product safety and efficacy issues was protected because it had "profound legal implications for risk assessment and analysis, as well as regulatory advice, and advice regarding actual or potential litigation." *2008 U.S. Dist. LEXIS 39467, [WL] at *5*. In addition, the Court characterized the defendants' claims of privilege as reaching "all documents created in the very broad context of seeking FDA approval, correspondence pertaining to FDA review or approval, working of package inserts, product advertising, promotional materials considered labeling, and oral promotional activities,..." *2008 U.S. Dist. LEXIS 39467, [WL] at *6*. The court, in rejecting the defendant's broad application of the attorney-client privilege stated,

> This argument goes way too far. Almost any act **[*78]** by a business (or an individual for that matter) carries the potential for running afoul of some law or regulation or giving rise to a civil action. The pharmaceutical industry is subject to more regulation and more complex regulation than some other industries (though less than some others). The fact of extensive or pervasive regulation does not make the everyday business activities legally privileged from discovery. Routine inclusion of attorneys in the corporate effort of creating marketing and scientific documents does not support the inference that the underlying communications were created and transmitted primarily to obtain **legal advice** as is required to justify a privilege.

*2008 U.S. Dist. LEXIS 39467, [WL] at *7*. The Court then cited *In re Vioxx*, and stated, "The great bulk of [the litigant's] privilege claims suffer from [the] approach of simply relying on an attorney's tangential involvement in the process of creating a document to shield the entire process of gathering information and drafting, revising the document. This collaborative effort argument, if successful, would effectively immunize all internal communications of the drug industry, thereby defeating the broad discovery authorized in the Federal **[*79]** Rules of Civil Procedure." *Id.*, citing *In re Vioxx, 501 F. Supp. 2d 789, 796 (E.D. La. 2007)* (internal quotations omitted).

In contrast, in the case at bar, the one sample document submitted which references the FDA (Privilege Log Entry No. 4760), contains hand-written notes taken of statements made by P&G's counsel regarding a future meeting with the FDA, including specific reference to the litigation at hand. The Declaration of Greg Collier supports the Defendants' contention on this issue. Thus, while the Plaintiffs are correct that advice from counsel related to the business determinations for purposes of ensuring regulatory compliance likely would not be protected by either the attorney-client or **work product** doctrine, when that advice is dispensed, not in the regular course of business, but in response and/or in contemplation of litigation, the protection may apply. Such a conclusion is wholly consistent with the holdings in *Seroquel* and *Vioxx*. Indeed, in *Vioxx*, the Court in defining the scope of the attorney-client privilege for correspondence and/or documents generated by or sent to in-house counsel at a corporation, quoted *Hercules Inc. v. Exxon Corp., 434 F. Supp. 136 (D. Del. 1977)*, **[*80]** by stating, "[o]nly if the attorney is 'acting as a lawyer'-giving advice with respect to the legal implications of a proposed course of conduct-may the privilege be properly invoked. In addition, if a communication is made primarily for the purpose of soliciting **legal advice**, an incidental request for business advice does not vitiate the attorney-client privilege." *Id. at 798-99*.

Privilege Log Entry No. 4760 falls squarely into this description. Finally, the fact that the notes were made by Greg Collier, an employee of P&G, rather than counsel does not alter this analysis because the notes memorialized **legal advice** dispensed by Counsel to its client. In other words, the notes are no less protected than a letter from Counsel setting forth **legal advice** would be. Similarly, documents made for purposes of communicating information to a litigant's attorney are protected by the attorney-client privilege. *See e.g. Clark v. Buffalo Wire Works, Co., 190*

2012 U.S. Dist. LEXIS 151014, *80

*F.R.D. 93 (W.D.N.Y. 1999)* (concluding that handwritten notes were made to communicate with his attorneys for purposes of seeking **legal advice**); *Bernbach v. Timex Corp., 174 F.R.D. 9 (D. Conn. 1997)* (same). Thus, the document is protected by **[*81]** the attorney-client privilege, and is not discoverable.

### d. Work Product Projects Related to Product Analysis and Adverse Events

P&G contends that the documents in this category (Privilege Log Entry Nos. 9367, 11175, 11176) relate to **legal advice** and **work product** projects involving product analyses and adverse event reports. P&G asserts that each of these documents was prepared at the direction of counsel and in support of litigation defense efforts. P&G contends that pursuant to *Federal Rule of Civil Procedure 26(b)(3)*, documents protected by the **work product** doctrine need not be authored by an attorney but rather may be protected if the document is created by a party's agent in anticipation of litigation.

At the outset, the undersigned notes that the documents at issue were created after the Denture Cream Products Liability Litigation was commenced. In addition, the Defendants' contention that the documents are from the file of Bladimir Ovando, Ph.D, a Senior Scientist at P&G in the Product Safety and Regulatory Affairs Department in the Global Oral Care Division, and were generated at the request of in-house and litigation counsel is supported by the Declaration of Dr. Ovando, which **[*82]** was submitted to the Court, ex parte. The Declaration makes clear that the documents at issue were generated in 2011 as part of crafting a litigation strategy for the Denture Cream litigation and contain references to a "legal" issue. Thus, although the Plaintiffs have contended that the documents may not be considered privileged because there is no attorney identified on the communication, i.e. Category A, again this fact, standing alone does not render the document discoverable.

Privilege Log Entry No. 9367 has been provided to the undersigned in both its redacted and unredacted form, and thus the undersigned is able to ascertain that only those portions of the document which are "legal" so far as they relate to the strategies regarding the Denture Cream Litigation, have, in fact, been redacted, rather than the entire document. As such, the document is protected by the attorney-client privilege.

Privilege Log Entry Nos. 11175 and 11176 are protected by the **work product** doctrine. The Defendants' assertion regarding the creation of these documents is supported by the **Affidavit** of Lori Combs, a senior scientist in the Global Safety Surveillance department at P&G. Thus, the documents in **[*83]** this category are protected by the **work product** doctrine and are not discoverable.

### D. Application of Local Rule 26.1(g)(3)(C)

The Parties disagree as to whether *Local Rule 26.1(g)(3)(C)*, as applied to this action, required the Defendants to include documents on the privilege log that were created after the instant litigation was initiated. While the Plaintiffs do not dispute that *Rule 26.1(g)(3)(C)* permits the exclusion of these documents from the privilege log, the Plaintiffs contend that the Defendants waived their right to omit these documents from review when they included these documents on the privilege log in order to comply with the disclosure requirements for a matter pending in another jurisdiction. Thus, the Plaintiffs argue that any documents that were created after the initiation of this law suit that were placed on the privilege log, albeit for purposes of a different action pending in a different jurisdiction, may be submitted to the Court for an in camera review to ascertain whether the documents are, in fact, privileged or otherwise protected from disclosure.

The Defendants contend that they included these documents in the privilege log only for a different action, the **[*84]** Pennsylvania Court of Common Please Denture Adhesive Cream Mass Tort Program ("MTP"), due to the need to comply with disclosure requirements for that specific jurisdiction (DE # 1624 at 9). The Defendants therefore contend that any documents that satisfy the requirements of *Local Rule 26.1(g)(3)(C)* should not be subject to an *in camera* review by this Court because the Defendants were never required to list those documents in the privilege log in the first place.

2012 U.S. Dist. LEXIS 151014, *84

The undersigned concludes, for the following reasons, that the P&G Defendants have not waived their right to refrain from placing documents on the privilege log for this action which were created after the initiation of this litigation as contemplated by *Rule 26.1(g)(3)(C)*, simply because those documents were placed on the privilege log to comply with the requirements of an action pending in another jurisdiction. First, there is no indication that the Defendants intended to waive their rights to rely on this Local Rule by listing documents on the privilege log that conformed with the privilege log requirements of the MTP litigation. In this regard, the undersigned notes that the argument advanced by the Plaintiffs is not that **[*85]** the P&G Defendants disclosed privileged documents thereby waiving any privilege to those documents, but rather that the P&G Defendants waived their right to not identify on the privilege log communications between counsel and P&G, after the commencement of litigation in this action. The Plaintiffs fail to identify relevant legal support for this claim. The local rule presumes that communication between a party and its litigation counsel after the commencement of litigation are privileged and thus including those communications on a privilege log would be inefficient. The Plaintiffs have failed to establish that the general requirements of this local rule should be modified in this case.

Moreover, it is entirely unclear whether the Plaintiffs have withheld the production of their own documents based upon this Local Rule. Thus, it would be patently unfair to extend the benefit of this rule to one litigant in this action, and deny it to the other, where it is clear that the Defendants intended to withhold the identification of those documents in this action.

Therefore, the undersigned concludes that the P&G Defendants did not waive their right pursuant to *Local Rule 26.1(g)(3)(C)* to refrain **[*86]** from including documents on their privilege log between P&G and their counsel that were created after the initiation of this litigation. Thus, to the extent that the P&G Defendants have not already submitted documents in camera for the Court to review for purposes of determining whether the documents are protected from disclosure, the undersigned concludes that if the documents satisfy the dictates of *Local Rule 26.1 (g)(3)(C)*, they need not be placed on the Defendants' privilege log, and thus need not be submitted to the Court for review.

## V. <u>CONCLUSION</u>

Therefore, based upon the arguments advanced by the Parties, the sample documents submitted for an in camera review, a review of the record as a whole, and for the reasons set forth above, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion to Compel the Proctor and Gamble Defendants to Produce a Final Privilege Log and Documents Improperly Designated as Privileged Following *In Camera* Review (DE # 1582) is **DENIED**, except to the extent that P&G must produce documents similar to those sample documents as to which P&G withdrew its claim of privilege during the March 2012 conference with Plaintiffs' counsel. If P&G has not already produced **[*87]** such documents, it must do so within thirty (30) days from the date of this order. P&G shall file a notice of compliance with this Order, accompanied by an **<u>affidavit</u>** which describes this review.

**DONE AND ORDERED** in chambers in Miami, Florida on October 18, 2012.

/s/ Andrea M. Simonton

ANDREA M. SIMONTON

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**

 Caution
As of: March 11, 2025 3:04 PM Z

# Dewit v. UPS Ground Freight

United States District Court for the Northern District of Florida, Gainesville Division

May 30, 2017, Decided; May 30, 2017, Filed

Case No. 1:16cv36-MW/GRJ

**Reporter**
2017 U.S. Dist. LEXIS 161572 *

MARGIE DEWIT AND BERNARD DEWIT, Plaintiffs, v. UPS GROUND FREIGHT, INC., D/B/A UPS FREIGHT, A FOREIGN CORPORATION, Defendant.

**Prior History:** Dewit v. UPS, 2017 U.S. Dist. LEXIS 159391 (N.D. Fla., Mar. 31, 2017)

## Core Terms

work-product, anticipation of litigation, discovery, documents, opposing party, undue hardship, discoverable, anticipated, generating, purposes, prepare, risks

**Counsel:** [*1] For Margie Dewit, Bernard Dewit, Plaintiffs BROOKS CHARLES RATHET, BROMAGEN & RATHET - FORT LAUDERDALE FL, Fort Lauderdale, FL USA; CHARLES BERNARD CARTER, CARTER DRYLIE & LITTLE PA - GAINESVILLE FL, Gainesville, FL USA; MATTHEW NICHOLS POSGAY, COKER SCHICKEL SORENSON ETC - JACKSONVILLE FL, Jacksonville, FL USA.

For Ups Ground Freight, A FOREIGN CORPORATION doing business as UPS FREIGHT, Defendant: ANNEKE SHEPARD, PHILIP R GREEN, SUSAN M CLARE, W RANDALL BASSETT, KING & SPALDING LLP - ATLANTA GA, Atlanta, GA USA.

For Terry G Stone, Defendant: BRADLEY W PRATT, NATHAN ANDREW GUEST, LEAD ATTORNEYS KING & SPALDING LLP - ATLANTA GA, Atlanta, GA USA; SUSAN M CLARE, LEAD ATTORNEY, PRO HAC VICE, ANNEKE SHEPARD, PHILIP R GREEN, KING & SPALDING LLP - ATLANTA GA, Atlanta, GA USA.

**Judges:** Mark E. Walker, United States District Judge.

**Opinion by:** Mark E. Walker

## Opinion

### ORDER DENYING PLAINTIFFS' MOTION TO COMPEL PREVENTABILITY REPORTS

This Court has considered, without hearing, Plaintiffs' Motion to Compel Preventability Report. ECF No. 62. That motion seeks the production of "preventable vs. non-preventable crash determination" reports that Defendant UPS Ground Freight allegedly prepared following the accident at issue in this case. [*2] *Id.* at 2. For the following reasons, that motion is **DENIED**.

The work-product doctrine is a limitation on the scope of discovery. *See Hickman v. Taylor*, 329 U.S. 495, 510, 67 S. Ct. 385, 91 L. Ed. 451 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."). Under Federal Rule of Civil Procedure 26(b)(3)(A), "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or

2017 U.S. Dist. LEXIS 161572, *2

agent) [unless] those materials . . . are otherwise discoverable . . . and the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

For work-product protection to attach, the party opposing discovery must demonstrate that litigation was anticipated "*at the time the materials were created or drafted.*" *Button v. Royal Caribbean Cruises Ltd.*, No. 12-23624-CIV, 2013 U.S. Dist. LEXIS 194692, 2013 WL 12064489, at *4 (S.D. Fla. June 25, 2013) (emphasis in original) (citing *Schulte v. NCL (Bahamas) Ltd.*, No. 10-23265-CIV, 2011 U.S. Dist. LEXIS 9520, 2011 WL 256542, at *1-2 (S.D. Fla. Jan. 25, 2011)). The party opposing discovery must also demonstrate that "at least *one* of the principal purposes for generating" the materials was [*3] to aid in possible future litigation—even if litigation had not yet commenced. *Eisenberg v. Carnival Corp.*, No. 07-22058-CIV, 2008 U.S. Dist. LEXIS 56573, 2008 WL 2946029, at *2 (S.D. Fla. July 7, 2008) (citing *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)).

A party seeking work-product protection may establish that the materials were generated in anticipation of litigation by presenting evidence that the type of accident at issue regularly results in litigation and, further, that the party's policy was to generate materials to evaluate the legal risks associated with that particular accident. *See id.* (finding that an accident report was entitled to work-product protection because the party's policy was to "investigate all claims of passenger injuries in anticipation of litigation . . . because very often, even in slip and fall cases, litigation commonly ensues"); *see also Millard Mall Servs., Inc. v. Bolda*, 155 So.3d 1272, 1275 (Fla. 4th DCA 2015) (finding the same because "'[e]xperience has shown all retail stores that people who fall in their stores try to be compensated for their injuries'" (quoting *Publix Super Mkts., Inc. v. Anderson*, 92 So.3d 922, 923 (Fla. 4th DCA 2012))).

At issue here is whether the preventability reports were created in anticipation of litigation. UPS Ground Freight argues that they were and, in support, provides an affidavit which states that "[a]ccidents involving drivers employed by TDI frequently result in litigation or the threat of litigation." ECF [*4] No. 81-1, at 3. Thus, in response, TDI "investigat[es] accidents and collect[s] information for the company to defend such anticipated litigation." That information helps TDI "evaluate the legal risks associated with the motor vehicle accident." *Id.* at 4. Given that affidavit, this Court finds that at least one of the main purposes for generating the preventability reports was to prepare for litigation. Plaintiffs' bald assertions to the contrary are wholly unpersuasive. *See* ECF No. 62, at 12-13 ("These documents, on their face, are documents prepared in the ordinary course of business not subject to any work-product . . . privilege."). The work-product doctrine is therefore triggered.

Because this Court finds that the preventability reports were generated in anticipation of litigation, they are discoverable only if Plaintiffs can demonstrate a substantial need for that report. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii) (referencing the "substantial need" exception for fact work product); *see also Button*, 2013 U.S. Dist. LEXIS 194692, 2013 WL 12064489, at *5 ("Moreover, where Plaintiff has failed to demonstrate substantial need or undue hardship, as is the case here, the work product doctrine prevents the disclosure of these documents" (citing *Finnegan v. Carnival Corp.*, No. 09-21114, 2009 U.S. Dist. LEXIS 85384, 2009 WL 2852671, at *3 (S.D. Fla. Sept. 2, 2009))). But Plaintiffs have not even attempted to do so.

Accordingly,

**IT IS** [*5] **ORDERED**:

Plaintiffs' Motion to Compel, ECF No. 62, is **DENIED**.

**SO ORDERED on May 30, 2017**.

**/s/ Mark E. Walker**

**United States District Judge**

 Caution
As of: March 11, 2025 3:50 PM Z

# Eisenberg v. Carnival Corp.

United States District Court for the Southern District of Florida

July 7, 2008, Decided; July 7, 2008, Entered

CASE NO. 07-22058-CIV-JORDAN/TORRES

**Reporter**
2008 U.S. Dist. LEXIS 56573 *; 2008 WL 2946029

ELEANOR EISENBERG, Plaintiff, vs. CARNIVAL CORPORATION, Defendant.

## Core Terms

accident report, work product privilege, photographs, discovery, reconsideration motion, reconsideration, cases, anticipation of litigation, slip and fall, work product, Cruise, vessel

**Counsel:** [*1] For Eleanor Eisenberg, Plaintiff: John Heyward Hickey, LEAD ATTORNEY, Hickey Law Firm PA, Miami, FL.

For Carnival Corporation, doing business as Carnival Cruise Lines, Defendant: Donnise Annette DeSouza, LEAD ATTORNEY, Carnival Cruise Lines, Miami, FL; Jeffrey Eric Foreman, Noah Daniel Silverman, LEAD ATTORNEYS, Karina M. Cerda, Maltzman Foreman PA, Miami, FL.

**Judges:** EDWIN G. TORRES, United States Magistrate Judge.

**Opinion by:** EDWIN G. TORRES

## Opinion

<u>**ORDER DENYING MOTION FOR RECONSIDERATION**</u>

This matter is before the Court on Plaintiff's Motion for Reconsideration [D.E. 33] of the Court's Discovery Order entered February 28, 2008 [D.E. 26]. The Motion was actually an appeal filed to the District Judge under S.D. Fla. Local Mag. J. R. 4, seeking review of a non-dispositive Order for clear error. Based on the parties' consent to plenary magistrate judge jurisdiction over discovery matters, which waived either party's appeal rights to the District Judge, the Court struck Plaintiff's "appeal" on March 10, 2008 [D.E. 34] but agreed to deem such appeal a motion for reconsideration. Thus, upon review of the Plaintiff's Motion, Defendant's Response, and Plaintiff's Reply, this matter is ripe for disposition.

### *I. INTRODUCTION*

This [*2] case involves a claim that Plaintiff allegedly slipped and fell on salad dressing in a dining room aboard one of Carnival's vessels. Plaintiff primarily seeks production of the accident report that was prepared following the alleged incident as part of Carnival's investigation in anticipation of litigation, together with accident reports for other slip and fall incidents. Plaintiff also challenges the time and scope limitations imposed by the Court's February 28th Order.

2008 U.S. Dist. LEXIS 56573, *2

During the hearing on Plaintiff's Motion to Compel Production and Carnival's responses and objections to Plaintiff's Request for Production, the Court reviewed, in camera, Carnival's accident reports referenced in its privilege log and concluded that they were in fact protected by the work product privilege. The Court did, however, order Carnival to produce the names of individuals who had been identified in prior slip and fall incidents in the vessel's dining rooms for the three year period prior to the accident at issue. The Court also ordered Carnival to produce the photographs that were taken as part of the internal investigation that generated the accident report, ruling that such photographs, though fact work [*3] product, were critical items of evidence that overcame Carnival's work product privilege. As those contemporaneous photographs were not otherwise available to Plaintiff, Plaintiff satisfied her burden of showing substantial hardship requiring production of the photographs.

Plaintiff's pending Motion for Reconsideration, however, was not satisfied with the Court's rulings granting in part and denying in part Plaintiff's motion to compel. Plaintiff has provided additional argument and authorities why the Court's rulings were clearly erroneous. Plaintiff argues that the accident reports cannot be deemed work product and that additional production is required. Carnival responds that the Court's rulings were not in fact erroneous and that. Plaintiff has failed to satisfy her burden of showing why reconsideration is warranted at this stage.


## II. ANALYSIS

A Court may reconsider a prior ruling when (1) there is an intervening change in controlling law; (2) new evidence is available; and (3) there is a need to correct clear error or manifest justice. *See, e.g., Drago v. Jenne*, Case No. 03-61420-CIV-SEITZ/BANDSTRA, 2005 U.S. Dist. LEXIS 46655 (S.D. Fla. Aug. 10. 2005), *aff'd*, 453 F.3d 1301 (11th Cir. 2006); *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992); [*4] *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994).

"Because 'reconsideration of a previous order is an extraordinary remedy to be employed sparingly,' only a change in the law, or the facts upon which a decision is based, will justify a reconsideration of a previous order." *Drago*, 2005 U.S. Dist. LEXIS 46655 at *2 (*quoting Sussman*, 153 F.R.D. at 694). Motions for reconsideration cannot be used "as a vehicle for presenting authorities available at the time of the first decision or to reiterate arguments previously made." *Id.* 2005 U.S. Dist. LEXIS 46655 at *2 (citations omitted); *see also Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) (motion for reconsideration is not intended to serve as a vehicle to relitigate old matters, present the case under a new legal theory, or give the moving party another bite at the apple by permitting the arguing of issues that could and should have been raised prior to judgment). A motion for reconsideration is not an opportunity to rethink what the Court already thought through -- rightly or wrongly. *Z.K. Marine*, 808 F. Supp. at 1563; *see also Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc.*, 972 F. Supp. 665, 674 (N.D. Ga. 1997) ("A motion for reconsideration [*5] is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time.").

Plaintiff seeks reconsideration of the Court's February 28, 2008 Discovery Order that (1) sustained Carnival's work product objection regarding its accident/investigative reports, (2) sustained Carnival's relevance and work product objections regarding prior accident investigative materials within five (5) years before the subject accident and (3) overruled Carnival's objection to production of reports of guest complaints of comments for the subject cruise ship and subject voyage except as to a printout of the CRS system with regard to all formal dining rooms on the vessel.

With respect to the production of the Carnival's accident report, and upon thorough reconsideration, the Court finds that Plaintiff's motion must be denied. Based upon well-established precedent in this circuit and district, Carnival's accident/investigative reports are protected by the work product privilege. And these reports and related investigative materials are thus not subject to production unless the Plaintiff can show that she is unable to obtain the substantial [*6] equivalent by other means without undue hardship. The Court did not err in sustaining Carnival's work product, privilege objection with regard to its accident/investigative reports.

Carnival provided sworn evidence, by affidavit and deposition, that it is the policy of Carnival Cruise Lines to investigate all claims of passenger injuries in anticipation of litigation. When a passenger reports an accident resulting in injury, an accident report is prepared and photographs are taken to memorialize the results of the

investigation in anticipation of litigation, because very often, even in slip and fall cases, litigation commonly ensues. Indeed the accident report form utilized by Carnival was drafted by counsel for Carnival Cruise Lines and every completed accident report and photographs taken at the time of the accident are provided to counsel for Carnival following an accident. Based upon this sworn evidence, the Court finds that at least one of the principal purposes for generating these reports is the preparation of Carnival's defense to litigation if it ensues. That is sufficient to trigger qualified work product protection. *See, e.g., United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) [*7] ("It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.").

Several cases in this district have upheld the application of the work product privilege to these very same accident reports. *See, e.g., Alexander v. Carnival Corp.*, 238 F.R.D. 318, 320 (S.D. Fla. 2006) (Ungaro, J.) (reversing magistrate judge Order requiring production of Carnival's accident reports): *Hickman v. Carnival Corp.*, 04-20044-CIV-UNGARO (S.D. Fla. 2004) (Carnival accident report was "prepared on the advice of counsel to provide claims handling information in anticipation of litigation."); *Ioquinto v. Carnival Corp.*, 05-2J.652-CIV-JORDAN (S.D. Fla. 2005) (Magistrate Judge Klein held that Carnival had shown that the incident report, witness statements and photographs of the subject deck were prepared in anticipation of litigation).

There are of course circumstances where the work product privilege, [*8] being that it is only a qualified privilege, may have to yield to a compelling need for information that can only be found in the protected document. *See, e.g., Hayman v. Carnival Corp.,* 06-22205-CIV-GOLD (S.D. Fla. 2005) (ordering production of accident report even though"[t]he accident reports seem to be privileged material."). This Court indeed ordered production in this case of a significant aspect of the accident report - the attached photographs - precisely because Plaintiff's substantial need for that valuable evidence overcame Carnival's privilege. It should also be noted, however, that the Court also reviewed in camera the accident report itself and concluded that nothing in that report evidenced anything remotely necessary for Plaintiff's presentation of her claim in this litigation.

In arguing that the work product privilege does not apply here. Plaintiff points the Court in her motion to several cases addressing the scope of the work product privilege in the insurance context. The problem is, however, that those cases are first-party insurance coverage cases where courts find that a work product privilege cannot arise per se simply upon an insured making a claim with her [*9] insurance company. That situation does not warrant an immediate concern for litigation, given the insurance company's contractual obligation to provide coverage for its insureds. Those cases are clearly inapposite here where the case does not involve a first-party insurance dispute.

Similarly, the Court finds that Carnival's accident reports are not per se required by federal law under the International Safety Management (ISM) Code that is designed to provide for safe practices in vessel operation and a safe work environment onboard vessels. 33 C.F.R. §§ 96.240 and 96.250. Plaintiff's argument that these regulations vitiate any work product privilege is unavailing. The background and purpose of the ISM Code, together with a plain reading of the ISM Code, reveals that the ISM does not require reports to be filed with any particular governmental agency. Instead, the ISM requires shipowners such as Carnival to create a safety management system that meets certain objectives and provides a minimum level of documentation. The ISM Code does not impose upon Carnival a requirement to "provide" accident reports to a governmental agency following a slip and fall incident on salad dressing. This [*10] situation is a far cry from those examples Plaintiff relies upon to overcome the privilege. *See. e.g., Goosman v. A. Duie Pyle, Inc.*, 320 F.2d 45, 52 (4th Cir. 1963) (carriers were required by statute to prepare reports and submit such reports to the Interstate Commerce Commission).

Therefore, the Court did not err in originally sustaining Carnival's work product privilege objection in response to Plaintiff's Request for Production Nos. 6 and 7.

With respect to Request for Production No. 24, Plaintiff has failed to show a substantial need for production of accident investigative materials that occurred five years before the subject incident. Thus, the Court did not err in sustaining Carnival's relevance and work product privilege objections with regard to prior accidents. Plaintiff's contrary arguments raise constitute nothing more than re-argument of issues that the Court considered before and

2008 U.S. Dist. LEXIS 56573, *10

rejected. Plaintiff has failed to cite any federal case to support her argument that the Court's three (3) year limitation on the request was error or an abuse of discretion. *See also Lerer v. Ferno-Washington, Inc.*, 2007 U.S. Dist. LEXIS 86882, at *8 (S.D. Fla. 2007) (holding that "the scope [*11] of permissible discovery is not unbounded. Requested discovery must be relevant…."); *Gritt v. Target Corp.*, 2007 U.S. Dist. LEXIS 75976 (M.D. Fla. 2007) (in a slip and fall case due to a transitory substance, the court limited discovery; plaintiff requested food and drink invoices for the six months prior to the subject accident, but the court limited the scope of the request to three months prior; plaintiff requested maintenance invoices for the three years prior to the subject accident, but the court limited the scope of the request to one year prior).

Finally, with respect to Request for Production No. 52 (seeking "Any and All Reports of Guest Complaints or Comments for the Subject Cruise and the Subject Voyage"), the Court did not err in limiting the scope of Plaintiff's discovery requests to three (3) years. Plaintiff has failed to direct the Court to any supporting legal authority that would entitle her to production of all guest complaints and comments for the subject cruise for the subject voyage. Plaintiff has also not shown good cause to expand discovery under the broader "subject matter" standard.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's "appeal" that has been  [*12] deemed a motion for reconsideration [D.E. 33] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of July, 2008.

/s/ Edwin G. Torres

EDWIN G. TORRES

United States Magistrate Judge

---

**End of Document**

 Neutral

As of: April 9, 2025 6:24 PM Z

## *Chadwell v. Lone Star R.R. Contrs., Inc.*

United States District Court for the Eastern District of Arkansas, Jonesboro Division

August 8, 2019, Decided; August 8, 2019, Filed

NO. 3:17CV00053 JLH

**Reporter**

2019 U.S. Dist. LEXIS 133423 *; 2019 WL 3753187

LORRAINE CHADWELL, Individually and as Personal Representative of the Estate of Thomas J. Dazey, Deceased, and on behalf of the wrongful death beneficiaries of Thomas J. Dazey, PLAINTIFF v. LONE STAR RAILROAD CONTRACTORS, INC., et al., DEFENDANTS v. NUCOR CORPORATION, RESPONDENT

**Prior History:** *Chadwell v. Lone Star R.R. Contrs., 2018 U.S. Dist. LEXIS 13769, 2018 WL 587838 (E.D. Ark., Jan. 29, 2018)*

## Core Terms

photographs, work product, employees, scene, witness statement, derailment, anticipation of litigation, substantial equivalent, Rose Law, incident report, interview, witnesses, prepare

**Counsel:** **[*1]** For Lorraine Chadwell, Individually and as the Personal Representative of the Estate of Thomas J. Dazey, deceased, and on behalf of the wrongful death beneficiaries of Thomas J. Dazey, deceased, other, Thomas J Dazey, Plaintiff: Shawn Gayland Foster, Timothy C. Gaarder, LEAD ATTORNEYS, PRO HAC VICE, Davis, Bethune & Jones, LLC, Kansas City, MO; Thomas C. Jones, LEAD ATTORNEY, Davis, Bethune & Jones, LLC, Kansas City, MO; Grant L. Davis, Davis, Bethune & Jones, LLC, Kansas City, MO; Tony L. Wilcox, Wilcox Law Firm, Jonesboro, AR.

For Lone Star Railroad Contractors Inc, Defendant: John P. Lord , III, Terrence J. O'Toole , Jr., LEAD ATTORNEYS, Williams, Venker & Sanders, LLC, St. Louis, MO; Stacey R. McCullough, LEAD ATTORNEY, PRO HAC VICE, Williams, Venker & Sanders, LLC, St. Louis, MO.

For Wells Fargo Rail Corporation, Defendant: Joseph Cotten Cunningham, LEAD ATTORNEY, Barber Law Firm PLLC, Little Rock, AR; Joseph P. Pozen, LEAD ATTORNEY, BatesCarey LLP, Chicago, IL.

For BNSF Railway Company, Defendant: Laurel Elizabeth Stevenson, LEAD ATTORNEY, Haden, Cowherd & Bullock LLC, Springfield, MO; Joseph Barrett Deacon , Jr., Deacon Law Firm, Fayetteville, AR.

For Steel Dust Recycling LLC, Defendant: **[*2]** Haley Heath Burks, Phil W. Campbell, Fuqua Campbell PA, Little Rock, AR.

**Judges:** J. LEON HOLMES, UNITED STATES DISTRICT JUDGE.

**Opinion by:** J. LEON HOLMES

## Opinion

### OPINION AND ORDER

Danielle Karcich

Thomas J. Dazey, a locomotive operator for Nucor Steel Arkansas, died as a result of a railroad car derailment at the Nucor manufacturing plant near Armorel, Arkansas, on February 11, 2014. The personal representative of Dazey's estate, Lorraine Chadwell, sued various entities. At this stage the only remaining named defendants are Lone Star Railroad Contractors, Inc., and Phoenix Services, LLC. Nucor has not been named as a party.

Chadwell moves to compel production of three categories of investigative materials from non-party Nucor: photographs of the derailment; witness statements by the Nucor employees who first arrived on the scene; and incident reports prepared by Nucor for its lawyers. Nucor objects on the grounds that the work product doctrine protects all these materials and documents.

The work product doctrine has long ensured that an opponent cannot secure materials that an adversary has prepared in anticipation of litigation. *Hickman v. Taylor, 329 U.S. 495, 511, 67 S. Ct. 385, 394, 91 L. Ed. 451 (1947)*; *Gundacker v. Unisys Corp., 151 F.3d 842, 848 (8th Cir. 1998)*. *Federal Rule of Civil Procedure 26* governs. Under that rule,

> [o]rdinarily, a party may not discover documents and tangible things that **[*3]** are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But . . . those materials may be discovered if:

>> (i) they are otherwise discoverable under *Rule 26(b)(1)*; and
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

*Fed. R. Civ. P. 26(b)(3)(A)*. If such materials are ordered disclosed, the Court must nevertheless protect from disclosure any opinion work product, or the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Fed. R. Civ. P. 26(b)(3)(B)*.

The first category of materials Chadwell seeks are certain photographs taken of the scene of the derailment shortly after it occurred. According to an affidavit filed by Nucor's lawyer at the Rose Law Firm, Russell Bailey, on the morning of the incident Mr. Bailey went to the incident site. He took photographs of the scene and equipment with his personal camera upon arrival and again the following day. Document #110 at 7. Also on the following day the Rose Law Firm retained **[*4]** an expert safety consultant to investigate and provide opinions relating to the incident in order to help the Rose Law Firm render its legal services. *Id.* at 8. As part of his services the expert took photographs of the incident scene and equipment on the day after it occurred. *Id.* Additionally, in the days following the incident Austin Strother, Nucor Steel Arkansas's safety coordinator, took photographs of the incident scene and equipment, the cleanup, and the railcar rerailing process after being instructed to do so by Mr. Bailey. *Id.*

The Eighth Circuit has noted that ordinary work product, as opposed to opinion work product, includes "photographs and raw information." *Pittman v. Frazer, 129 F.3d 983, 987-88 (8th Cir. 1997)*. In *Pittman* photographs gathered by Union Pacific's investigator after a railroad accident constituted ordinary work product. *Id.* District courts have also held that photographs taken at the direction of an attorney are protected work product. *Huggins v. Fed. Express Corp., 250 F.R.D. 404, 407 (E.D. Mo. 2008)*; *Eisenberg v. Carnival Corp., 2008 U.S. Dist. LEXIS 56573, 2008 WL 2946029 at *1 (S.D. Fla. July 7, 2008)*; *Amerson v. Outlaw, 2012 U.S. Dist. LEXIS 147837, 2012 WL 4866440, at *1 (E.D. Ark. Oct. 15, 2012)*. The photographs described above — those taken in the days following the accident by Mr. Bailey, the safety consultant expert retained by the Rose Law Firm, and Mr. Strother at the direction of Mr. Bailey — are protected work product because they were taken in anticipation of litigation. **[*5]**

The parties dispute whether Chadwell has a substantial need for the photographs and an inability to obtain the substantial equivalent of the contemporaneous photographs without undue hardship. *Fed. R. Civ. P. 26(b)(3)(A)(ii)*. Chadwell says she needs these photographs because without them she cannot adequately prepare her case and present the scene to a jury. Chadwell argues that she cannot obtain their substantial equivalent because the railroad crossing where the derailment occurred has since been removed. Document #109 at 4.

Nucor argues that Chadwell has already obtained the substantial equivalent of the photographs. Nucor points out that it has previously produced photographs of the incident scene that Nucor took immediately after the incident but before retaining legal counsel; photographs of the incident scene taken by the Mississippi County Coroner's Office; and the entire OSHA inspection file created after the incident, which contains photographs of the incident scene and equipment taken by an OSHA representative on the day it occurred. Document #111 at 9; Document #110 at 8-9. Nucor also reports that in November of 2017 plaintiff's counsel and experts photographed, measured, and collected physical information **[*6]** related to the derailed railcar and area where the incident occurred, and that in fall of 2018 plaintiff's counsel interviewed many current or former Nucor employees and locomotive operators. Document #110 at 9.

Certainly obtaining the photographs at issue would make presenting her case at least somewhat easier for Chadwell because it is additional evidence that she lacks. But she does not have a "substantial" need for the photographs, especially considering that she already has contemporaneous photographs taken by Nucor, the coroner's office, and an OSHA investigator; as well as physical information related to the derailed railcar and incident area; and information from interviews with witnesses and current and former Nucor employees and locomotive operators. Nucor need not produce the photographs at issue.

The second category of items Chadwell seeks consists of witness statements regarding the derailment by Nucor employees. According to Mr. Bailey's affidavit, shortly after discovering the incident Nucor contacted the Rose Law Firm and retained its services. Document #110 at 4-5. Anticipating an OSHA inspection later that day, Mr. Bailey asked Nucor to collect witness statements from **[*7]** the two employees who first arrived at the incident scene. *Id.* at 5.

Under *Rule 23*, these statements are not ordinarily discoverable because they were prepared in anticipation of litigation. The Supreme Court has explained that written witness statements obtained by counsel are conditionally free from discovery — unless a showing of necessity can be made. *Hickman v. Taylor, 329 U.S. 495, 511, 67 S. Ct. 385, 394, 91 L. Ed. 451 (1947)*. The Eighth Circuit has likewise stated that "statements prepared or signed by [an] interviewee" are protected work product. *In re Grand Jury Proceedings, 473 F.2d 840, 848 (8th Cir. 1973)*. The cases make a distinction between a lawyer's personal recollections and notes regarding what a witness communicated to the lawyer and statements written or signed by the witness. *Id.* "The latter may be discovered by a showing of good cause while the former may not" be discovered. *Id.* (citing *Hickman, 329 U.S. at 519, 67 S. Ct. 385*). But as to statements written or signed by a witness, the Eighth Circuit has explained that good cause for discovery of the statements is unlikely shown if the individual is known and accessible to the opposing party. *Id. at 849; see also Baker v. GMC (In re GMC), 209 F.3d 1051, 1054 (2000)* ("Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party."). The Court's statement to the contrary in *Schipp* was mistaken. *Schipp v. **[*8]** GMC, 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006)*.

In this case, at the direction of Nucor's outside counsel, Nucor took the statements of two employees who witnessed the incident the same day. This occurred on the day of the incident when litigation was reasonably foreseeable and, indeed, when a civil governmental inspection by OSHA was imminent. The witness statements constitute protected work product. *Diversified Indus. v. Meredith, 572 F.2d 596, 603 (8th Cir. 1977)* ("While the 'work product' may be, and often is, that of an attorney, the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer.").

Chadwell has had the opportunity to depose any potential witness. Her lawyers have, in fact, interviewed many Nucor employees or former employees and locomotive operators — including one of the witnesses whose statement is being withheld. Document #111 at 11; Document #110 at 9-10. She has made no argument or showing that she has not been able to interview or depose the other witness whose statement is being withheld. Under the circumstances Chadwell has not shown that she has a substantial need for the witness statements to prepare her case and that she cannot obtain their substantial equivalent by other means without undue hardship — in other words, **[*9]** she has not shown good cause to obtain the witness statements. *See In re Grand Jury Proceedings, 473 F.2d at 848; Schipp, 457 F. Supp. 2d at 924* ("[A] desire to obtain 'immediate factual observations unmarred by the passage of time' does not rise to the level of substantial need imposed by *Rule 26*.").

2019 U.S. Dist. LEXIS 133423, *9

Finally, Chadwell seeks production of an incident report regarding the derailment prepared by Nucor at the direction of its attorneys. In anticipation of the OSHA inspection the Rose Law Firm requested Nucor Steel to complete an incident report on a form provided by the Rose Law Firm. Document #110 at 6. According to Mr. Bailey's affidavit, the supplied form states that it contains information gathered at the direction of legal counsel in anticipation of litigation and in order to assist legal counsel with work product preparation. *Id.* The form contains information about the incident such as its location, a description, the work being performed at the time, the equipment involved, the witnesses to the incident and any witness statements, information about communication with OSHA, and potential defenses. *Id.*

The incident reports are protected because they were prepared in anticipation of litigation. *See Fed. R. Civ. P. 26(b)(3)(A)*; *Schipp, 457 F. Supp. 2d at 923-24* (holding that an insurance adjuster's investigation report about **[*10]** a car accident was protected work product). Here, Nucor reasonably anticipated litigation. A railcar derailed, killing one of its employees. Individuals from OSHA investigated the site on the day of the accident. On the day of the accident a reasonable person would expect litigation to ensue, and so documents prepared later that day by Nucor regarding the incident were created in anticipation of litigation.

Chadwell cannot show that she has a substantial need for the incident report to prepare her case and an inability to obtain its substantial equivalent without undue hardship. Chadwell has had the opportunity through discovery to find out details about the accident, including by interviewing current and former Nucor employees, and to depose any person with knowledge of the incident. In fact, as mentioned above Chadwell did conduct an interview with one of the witnesses whose statement is being withheld. Document #110 at 9-10; Document #111 at 11. In sum, the incident report prepared by Nucor Steel, at the direction of its attorneys, is protected because it was prepared in anticipation of litigation and because Chadwell has not demonstrated that she has a substantial need for it and **[*11]** that she cannot obtain its substantial equivalent by other means.

For the foregoing reasons, the motion to compel is DENIED. Document #108. IT IS SO ORDERED this 8th day of August, 2019.

/s/ J. Leon Holmes

J. LEON HOLMES

UNITED STATES DISTRICT JUDGE

---

**End of Document**

 Neutral

As of: April 9, 2025 7:34 PM Z

# *Faynik v. Magical Cruises Co.*

United States District Court for the Middle District of Florida, Orlando Division

May 2, 2018, Decided; May 2, 2018, Filed

Case No: 6:17-cv-1282-Orl-37TBS

**Reporter**

2018 U.S. Dist. LEXIS 228428 *; 2018 WL 7360661

CLAUDIA FAYNIK, Plaintiff, v. MAGICAL CRUISES COMPANY, LTD, Defendant.

**Subsequent History:** Motion denied by *Faynik v. Magical Cruise Co., 2018 U.S. Dist. LEXIS 232700 (M.D. Fla., Aug. 2, 2018)*

Motion granted by, in part, Motion denied by, in part *Faynik v. Magical Cruise Co., 2018 U.S. Dist. LEXIS 138729 (M.D. Fla., Aug. 16, 2018)*

## Core Terms

discovery, tripping, objects, Interrogatory, Deck, slipped, lighting, grounds, work product doctrine, ship, falling, request for production, deposition, alleged incident, specificity, overbroad, footage, ambiguous, parties, floor, substantially similar, log, reasonably calculated to lead, alleges, cruise, discovery of admissible evidence, scope of discovery, amended complaint, motion to compel, prior incident

**Counsel:** **[*1]** For Claudia Faynik, Plaintiff: Matthias Masayasu Hayashi, Michelle Elizabeth Hardin, Raul Gabriel Delgado, II, LEAD ATTORNEYS, Aronfeld Trial Lawyers, PA, Coral Gables, FL USA; Spencer Marc Aronfeld, LEAD ATTORNEY, Aronfeld Trial Lawyers, PA, Coral Gables, FL USA; Lovecia A. Holmes, Aronfeld Trial Lawyers, Coral Gables, FL USA.

For Magical Cruise Company, Ltd., doing business as Disney Cruise Line, Defendant: Jerry Dean Hamilton, LEAD ATTORNEY, Hamilton, Miller & Birthisel, LLP, Miami, FL USA; Karina Mabel Cerda-Collazo, Hamilton, Miller & Birthisel, LLP, Miami, FL USA.

**Judges:** THOMAS B. SMITH, United States Magistrate Judge.

**Opinion by:** THOMAS B. SMITH

## Opinion

**ORDER**

This case comes before the court without a hearing on Plaintiff's Motion to Compel Better Responses to Plaintiff's First Requests for Production and First Interrogatories (Doc. 37) and Defendant's response in opposition (Doc. 38).

**Background**

Plaintiff Claudia Faynik asserts that she "slipped and/or tripped and fell while using the retractable flooring over a pool on Defendant, Magical Cruise Line's, cruise ship, the *Dream*." (Doc. 37 at 1). In her one count amended

2018 U.S. Dist. LEXIS 228428, *1

complaint, she alleges she slipped on a foreign liquid, or tripped on a foreign object on the **[*2]** dance floor (Doc. 11, p. 3, ¶¶ 4-8). Plaintiff fell and suffered injuries, including a fractured fibula, which she claims are the result of Defendant's negligence (Id., ¶¶ 10-13). Defendant denies liability and affirmatively alleges, *inter alia*, that it had no notice of any dangerous conditions and that Plaintiff's injuries are a consequence of her own negligence (Doc.15 at 4-5).

During her deposition, Plaintiff testified that her fall was "[p]robably not as much of a trip as a slip" (Doc. 38-1 at 104). She also said she doesn't know what the liquid on the floor was (Id., at 56-57). And, although Plaintiff did not see anyone spill a drink, she believes it "would be sensible to assume that [the liquid] was sitting there from the children's spillage." (Id., at 58-62). Plaintiff testified that it was also conceivable that she slipped on a pirate hat, which was on the floor (Id., at 63-64).

Plaintiff propounded requests for production and interrogatories and Defendant responded, and then supplemented its responses (Docs. 37-1, 37-2, 37-4, 37-5, 37-7). Plaintiff is dissatisfied with certain of Defendant's responses and seeks an order compelling more complete discovery from Defendant (Doc. 37).


**Standards of Law**

The scope of discovery **[*3]** is well known:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Fed. R. Civ. P. 26(b)(1)*. The rules "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985)*. That said, relevancy is key. "The discovery process is designed to fully inform the parties of the relevant facts involved in their case." *U.S. v. Pepper's Steel & Alloys, Inc., 132 F.R.D. 695, 698 (S.D. Fla. 1990)* (citing *Hickman v. Taylor, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947)*). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." **[*4]** *Oliver v. City of Orlando, No. 6:06-cv-1671-Orl-31DAB, 2007 U.S. Dist. LEXIS 80552, 2007 WL 3232227, at * 1 (M.D. Fla. Oct. 31, 2007)* (citing United *States v. Proctor & Gamble Co., 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958)*). "[R]equiring relevance to a claim or defense 'signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.'" *Builders Flooring Connection, LLC v. Brown Chambless Architects, No. 2:11CV373-MHT, 2014 U.S. Dist. LEXIS 60476, 2014 WL 1765102, at *1 (M.D. Ala. May 1, 2014)* (quoting GAP Report of Advisory Committee to 2000 amendments to *Rule 26*). "As the Advisory Committee Notes say, '[t]he Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.'" *Liese v. Indian River Cty. Hosp. Dist., 701 F.3d 334, 355 (11th Cir. 2012)* (quoting the GAP Report).

Parties can seek the production of information or the answers to interrogatories within the scope of *Rule 26(b)*. See *Fed. R. Civ. P. 33* and *34*. A party objecting to a request for production must: (1) "state with specificity the grounds for objecting to the request, including the reasons;" (2) "state whether any responsive materials are being withheld on the basis of that objection;" and (3) "[a]n objection to part of a request must specify the part and permit inspection of the rest." *Rule 34(b)(2)*. Parties must answer or object to interrogatories **[*5]** within 30 days after service. *Fed. R. Civ. P. 33(b)(2)*. "The grounds for objecting to an interrogatory must be stated with specificity." *Fed. R. Civ. P. 33(b)(4)*. "Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Id. The rules leave no place for boilerplate style objections. *Siddiq v. Saudi Arabian Airlines Corp., No. 6:11-cv-69-Orl-19GJK, 2011 U.S. Dist. LEXIS 151474, 2011 WL 6936485, at *3 (M.D. Fla. Dec. 7, 2011)* (quoting

2018 U.S. Dist. LEXIS 228428, *5

*Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 695 (S.D. Fla. 2007))*. With these principles in mind, the Court turns to the discovery at issue.

**Discussion**

The Court has been presented with disputes concerning:

(1) production of video depicting Plaintiff onboard the *Disney Dream*;

(2) the sufficiency of Defendant's objections, including its assertion of the work product doctrine;

(3) the appropriate time frame for Plaintiff's discovery;

(4) whether discovery should be limited to the *Disney Dream* or include all of the vessels in Defendant's fleet;

(5) discovery concerning the adequacy of the lighting where the accident occurred;

(6) discovery of remedial measures, if any, taken by Defendant;

(7) discovery of the ship's log.

These disputes are addressed in the context of the specific discovery requests.

**Request for Production No. 3**

Any and all photographs, maps and videotapes reflecting Plaintiff, Plaintiff's **[*6]**  accident, the scene of Plaintiff's accident, and/or Plaintiff's damages or injuries.
DEFENDANT'S INITIAL RESPONSE: After a reasonable search and inquiry of its records in the manner and location where such information is ordinarily maintained, DCL is not aware of any photographs or videotapes depicting the Plaintiff other than a photograph of the Plaintiff taken before boarding the Disney Dream for the subject cruise and six (6) screenshots of CCTV footage showing Plaintiff being transported in a wheelchair to the medical infirmary and the Pirate Party general area. These screenshots were selected and preserved in anticipation of litigation and are protected by the work product doctrine. See DCL's Privilege Log. Notwithstanding DCL's response, DCL objects to Request No. 3 on the grounds it is overbroad, and seeks information that is or may be protected from disclosure by the attorney-client privilege and work product doctrine.
Additionally, see photographs produced by Plaintiff.

DEFENDANT'S AMENDED RESPONSE: After a reasonable search and inquiry of its records in the manner and location where such information is ordinarily maintained, DCL is not aware of any photographs or videotapes **[*7]**  depicting the Plaintiff other than a photograph of the Plaintiff taken before boarding the Disney Dream for the subject cruise and six (6) screenshots of CCTV footage. See CCTV screenshots attached.

Plaintiff objects to Defendant's claim that the video footage is only displayable on certain software and cannot be produced outside defense counsel's office due to the proprietary nature of the software. Plaintiff also states that Defendant is not permitting Plaintiff to view the actual video footage without signing a confidentiality agreement.

Defendant maintains that it is restricted in providing an actual copy of the video with its required software due to copyright restrictions from the software manufacturer, but says it is not precluding Plaintiff from viewing the footage without a confidentiality agreement. Defendant claims it told Plaintiff's counsel the footage can be viewed at defense counsel's office "and/or" the offices of Plaintiff's counsel. Plaintiff claims such an arrangement creates an undue burden and seeks an order to produce copies of the footage in a format where Plaintiff and her experts can review it privately as often as necessary.

2018 U.S. Dist. LEXIS 228428, *7

While neither side cites any particularized **[\*8]** authority, the production of CCTV videotapes is not a novel ask and the relevance of the footage in a case such as this is obvious. See e.g., *Marsh v. Celebrity Cruises, Inc., No. 1:17-CV-21097-UU, 2017 U.S. Dist. LEXIS 212527, 2017 WL 6498107 (S.D. Fla. Dec. 13, 2017)* (relying on CCTV footage in denying cruise lines' motion for summary judgment in a slip and fall case); *Thomas v. NCL (Bahamas), Ltd., 203 F. Supp. 3d 1189, 1193 (S.D. Fla. 2016)* (relying in part on CCTV footage to find that plaintiff had created an issue of fact regarding NCL's constructive notice of the puddle's existence in a slip and fall case). If other cruise lines have been able to produce CCTV footage, the Court trusts this Defendant can figure it out, as well.[1] The motion with respect to this request is granted, in part. The parties shall confer regarding production, and, if necessary, the cost of obtaining a copy, which may include the cost of a limited license, shall be initially borne by Plaintiff.

## Interrogatories and Requests for Production Pertaining to Prior incidents

Plaintiff seeks discovery of all prior incidents involving persons slipping, tripping, and falling, on a fleet wide-basis.

### Interrogatory Number 11

For a time period beginning five (5) years prior to the date of the Plaintiff's incident, and one (1) year subsequent, identify and describe all **[\*9]** incidents, complaints of incidents, records of incidents, or recollections of incidents similar to the Plaintiff's incident, i.e. passengers, crew members or other persons slipping and/or tripping and falling in or around the subject area, on both the ship on which Plaintiff fell and on any cruise ship in Defendant's fleet with similar styled areas, conducting similar activities. "Similar activities" include but are not limited to, sports, games, dancing).

DEFENDANT'S ANSWER: DCL objects to Interrogatory No. 11 on the grounds it is overbroad, unduly burdensome and not limited in time and scope as it seeks fleet-wide information, ambiguous, seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is or may be protected by the work product doctrine. Moreover, Plaintiff has yet to appear for deposition to describe with specificity the manner and location of her alleged incident.

### Request for Production Number 12

Any and all documents (including, but not limited to, logs) which relate to or concern substantially similar incidents: to wit, passengers, crew or other persons tripping and falling in the subject **[\*10]** area and who stated, claimed or alleged that there was inadequate lighting three years prior to the date of the Plaintiff's incident to the present, either on the same ship or on any sister ships.

DEFENDANT'S RESPONSE: DCL objects to Request No. 12 on the grounds it is overbroad, ambiguous, not limited in time and scope to substantially similar incidents on Deck 11 onboard the Disney Dream, seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is or may be protected by the work product doctrine. Plaintiff has yet to appear for deposition to describe with specificity the manner and location of her alleged incident. Moreover, Plaintiff's Amended Complaint makes no allegation regarding any alleged inadequate lighting.

### Request for Production Number 14

Any and all documents (including log entries) regarding passenger and crew complaints of dangerous tripping hazards in the area where Plaintiff's accident occurred.

DEFENDANT'S RESPONSE: DCL objects to Request No. 14 on the grounds it is overbroad, ambiguous, not reasonably limited in time or scope and seeks information that is or may be protected by the **[\*11]** work

---

[1] Defendant provides no support for its implicit contention that it is unable to provide a copy of the CCTV footage, in any format, without violating copyright protection. Even if Defendant had established such, it has not explained why a limited license would not suffice to allow compliance with its discovery obligations.

product doctrine. Plaintiff has yet to appear for deposition to describe with specificity the manner and location of her alleged incident. Moreover, Plaintiff's counsel has advised that Plaintiff allegedly slipped on Deck 11, not that she tripped.

**Request for Production Number 16**

For a time period beginning five (5) years prior to the date of the Plaintiff's incident, and one (1) year subsequent, identify and describe all incidents, complaints of incidents, records of incidents, or recollections of incidents similar to the Plaintiff's incident, i.e. passengers, crew members or other persons slipping and/or tripping and falling in or around the subject area, on both the ship on which Plaintiff fell and on any cruise ship in Defendant's fleet with similar styled areas, conducting similar activities. "Similar activities include but are not limited to, sports, games, dancing). Additionally, provide copies of pictures and floor plans reflecting the location of the subject incidents disclosed.

DEFENDANT'S RESPONSE: DCL objects to Request No. 16 on the grounds it is overbroad, ambiguous, not reasonably limited in time and scope to substantially similar incidents on Deck 11 onboard the Disney **[*12]** Dream, seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is or may be protected by the work product doctrine. Plaintiff has yet to appear for deposition to describe with specificity the manner and location of her alleged incident. Moreover, Plaintiff's counsel has advised that Plaintiff allegedly slipped on Deck 11, not that she tripped.

**Request for Production Number 17**

For a time period beginning five (5) years prior to the date of the Plaintiff's incident, and one (1) year subsequent, identify and describe all incidents, complaints of incidents, records of incidents, or recollections of incidents of passengers, crew members or other persons sustaining any injury of any severity (great or small), falling, or losing their balance in the area where Plaintiff fell and/or in any similarly configured areas on the ship or any sister ships thereto. "The area where Plaintiff fell" means both the immediate area where Plaintiff fell, as well as the surrounding area, including the entire floor, basketball court, section, and/or subsection of the ship in which Plaintiff fell. "Similarly configured areas" **[*13]** means areas configured similarly to the immediate area where Plaintiff fell.

DEFENDANT'S RESPONSE: DCL objects to Request No. 17 on the grounds it is overbroad, ambiguous, not reasonably limited in time and scope to substantially similar incidents on Deck 11 onboard the Disney Dream, seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is or may be protected by the work product doctrine. Plaintiff has yet to appear for deposition to describe with specificity the manner and location of her alleged incident. Moreover, she has not alleged that she fell at or near any basketball court.

Since serving the responses, Plaintiff has been deposed and the parties conferred and agreed to narrow these requests to covered pool decking (where the incident occurred), but have been otherwise unable to agree to the scope of the requests. Plaintiff claims that five years of fleet-wide information of prior incidents of passengers falling in the area where her incident occurred, as well as in similarly configured areas and on similar areas in Defendant's fleet, is appropriate, citing **[*14]** *Berner v. Carnival Corp., No. 08-22569-CIV, 2009 U.S. Dist. LEXIS 35768, 2009 WL 982621, at *1 (S.D. Fla. Apr. 10, 2009)*. Plaintiff also contends that she should be able to discover information relating to prior incidents involving inadequate lighting because her complaint alleges that Defendant "[f]ail[ed] to place warning signs on or around the subject area where foreign objects and/or liquid substances may rest and/or gather" and this "clearly put Defendant on notice that visibility was an issue in this case." (Doc. 11). Finally, Plaintiff argues that privilege should not apply, but even if it does, she has a substantial need for the material to prepare her case and cannot, without undue hardship, obtain the substantial equivalent by other means. *Fed. R. Civ. P. 26(b)3(ii)*.

Plaintiff's requests are too broad. The proper scope is not, however, as limited as Defendant would have it. Plaintiff is entitled to evidence of "substantially similar" incidents. As Magistrate Judge Torres has explained:

2018 U.S. Dist. LEXIS 228428, *14

The question most pertinent here is the scope of discovery when a plaintiff alleges the shipowner knew or should have known of those risks to warn its passengers and minimize the risks. This requires us to consider the body of caselaw that addresses "substantially similar" incidents. See *Heath v. Suzuki Motor Corp., 126 F.3d 1391, 1396, 1397 n. 12 (11th Cir.1997)* (evidence of prior accidents or occurrences **[*15]** are admissible "in order to show, for example 'notice, magnitude of the danger involved, the [party's] ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation' but "before evidence of prior accidents or occurrences is admitted into evidence, the proponent of such evidence must show that conditions substantially similar to the occurrence cause the prior accidents") (quoting *Jones v. Otis Elevator Co., 861 F.2d 655, 661 (11th Cir.1988))*. The "substantial similarity" doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence. *Sorrels v. NCL (Bahamas) Ltd., 796 F.3d 1275, 1287 (11th Cir.2015)* (citing *Borden, Inc. v. Florida East Coast Railway Co., 772 F.2d 750 (11th Cir.1985))*.

***

For discovery purposes, a court need only find that the circumstances surrounding the other accidents or products are "similar enough" that discovery concerning those incidents is reasonably calculated to lead to the uncovering of substantially similar occurrences.

*Ree v. Royal Caribbean Cruises Ltd., 315 F.R.D. 682, 685-86 (S.D. Fla. 2016)*.

Plaintiff has made an inadequate showing that all slips, trips or falls fleet-wide for five years are within the scope of discovery. Although all of the circumstances of her fall are not clearly set forth, she is claiming that she slipped on a wet surface, foreign object, or **[*16]** both, on covered pool decking, during a pirate show. There is no showing that all falls on all ships in the fleet are similar enough to this one to warrant disclosure. That said, other incidents on covered pool decking on this ship are discoverable. Concerning the appropriate time period, three years is more proportional to the needs of the case.[2] Plaintiff is entitled to discover any other slips/trips/falls due to alleged liquids or foreign objects on covered pool decking on the *Dream* within a three year period preceding the incident. The motion to compel is granted to this extent.

As for discovery of incidents alleged to have involved inadequate lighting, Defendant claims that Plaintiff did not place visibility at issue in her amended complaint and "[e]ven if she had, Plaintiff concedes that prior to her fall, she could see the floor and the people on the dance floor." (Doc. 38 at 6, citing Plaintiff Depo. at p.143, line 21 through p.144, line 4).

While there is no separate claim for inadequate lighting, visibility is an element of Defendant's fourth affirmative defense that the condition was "open and obvious." (Doc. 15 at 4). Additionally, Plaintiff testified that the deck **[*17]** was "unreasonably" and "ridiculously dark." (Doc. 38-1 at 50-51). Plaintiff is entitled to discover any other slips/trips/falls allegedly due to inadequate lighting on covered pool decking on the *Dream* within a three year period preceding the incident. The motion to compel is **granted** to this extent.

Defendant has raised attorney-client privilege and the work product doctrine with respect to prior incident reports and investigative materials. The work-product doctrine is codified in *Fed. R. Civ. P. 26(b)(3)*. It protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Id.

Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation. See *FED. R CIV. P. 26(b)(3)(A)*; *Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1421-22 (11th Cir. 1994)*. Work product protection prevents most inquiries into an attorney's work files and mental impressions. *Hickman v. Taylor, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947)*. The purpose of this protection is to protect the integrity of the adversary

---

[2] Indeed, in other discovery requests, Plaintiff seeks information within a three year time period preceding the incident. See, e.g., Interrogatory Number 15.

process by allowing a lawyer to work "with a certain degree of privacy, free from **[*18]** unnecessary intrusion by opposing parties and their counsel." Id.

But the protection afforded to work product is not absolute. Discovery may be had into factual work product upon a party showing "substantial need for the materials to prepare its case" and that it "cannot, without undue hardship, obtain their substantial equivalent by other means." _Fed. R. Civ. P. 26(b)(3)(A)_. Greater protection is given to the attorney's opinion work product—that is, materials containing "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." _Fed. R. Civ. P. 26(b)(3)(B)_. Such materials "enjoy [ ] a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." _Cox, 17 F.3d at 1422_ (internal quotation marks omitted).

_Drummond Co., Inc. v. Conrad & Scherer, LLP, 885 F.3d 1324, 1334-35 (11th Cir. 2018)_. The party asserting the attorney client privilege or the work-product doctrine has the burden of establishing its application to each document. See _Rep. of Ecuador v. Hinchee, 741 F.3d 1185, 1189 (11th Cir. 2013)_.

Defendant has produced a privilege log relating to this incident (Doc. 37-3) and has tendered a declaration of its Senior Manager for Marine Claims (Doc. 38-3), confirming that Defendant's investigation into prior incidents was done at the direction of legal counsel and in anticipation of litigation. **[*19]** This showing is sufficient to sustain the assertion of the privilege as to the incident reports. See _Eisenberg v. Carnival Corp., No. 07-22058-CIV, 2008 U.S. Dist. LEXIS 56573, 2008 WL 2946029, at *2-3 (S.D. Fla. July 7, 2008)_.

Plaintiff's conclusory assertions that she "is not able to obtain the requested information without undue hardship, and the documents affect critical aspects of Plaintiffs allegations, including Defendant's duty to warn and the existence of notice," without more, are not sufficient to override the privilege. Defendant's objection to the production of these reports is **sustained** and the motion to compel is **denied** to the extent it seeks disclosure of this information.

Just because the incident reports are protected, does not mean that all of the information regarding prior incidents is privileged. The existence of the incident (or alleged incident) is not protected, and responsive, non-privileged information regarding incidents (such as lawsuits or claims) shall be identified or produced.

**Interrogatory Number 7**
Describe any and all policies, procedures, warnings and/or other devices which Defendant had in place, as of the date of Plaintiff's accident, to prevent accidents such as that suffered by Plaintiff.

DEFENDANT'S INITIAL ANSWER: Based on the **[*20]** allegations in the Amended Complaint, it appears the Plaintiff proximately caused any alleged injury by failing to exercise reasonable care for her own safety. Investigation and discovery continue as Plaintiff has yet to specify the location of the incident or appear for deposition. Thus, at this time, DCL is unable to identify any specific policies, procedures, warnings and/or other devices that would be applicable to Plaintiff's alleged incident. As a matter of general routine, inspections of the decks are performed daily.
Notwithstanding DCL's response, DCL objects to Interrogatory No. 7 on the grounds it is overbroad, not reasonably limited in scope, and seeks information that is or may be proprietary, confidential, and protected from disclosure by the work product doctrine.

DEFENDANT'S AMENDED ANSWER: Based on the allegations in the Amended Complaint, it appears the Plaintiff proximately caused any alleged injury by failing to exercise reasonable care for her own safety. See, Amended Answer to Interrogatory Number 6. Additionally, and as a matter of general routine, inspections of the decks are performed daily. See, "Preventing Common Accidents & Injuries - Slips, Trips and Falls," **[*21]** produced in response to Request for Production No. 2. See, also attached photos of warning signs alerting Plaintiff to exercise caution as decks may be wet.

2018 U.S. Dist. LEXIS 228428, *21

Notwithstanding DCL's response, DCL objects to Interrogatory No. 7 on the grounds it is overbroad, not reasonably limited in scope, and seeks information that is or may be proprietary, confidential, and protected from disclosure by the work product doctrine.

Plaintiff alleges that Defendant will not produce its policies and procedures without execution of a confidentiality agreement. Defendant refutes this contention and represents that the request is moot because it has already produced photographs of its warning signs and its policy of "Preventing Common Accidents & Injuries - Slips, Trips and Falls." At the same time, Defendant argues that its proposed confidentiality agreement "is needed to expedite the flow of discovery materials and to protect the confidentiality of its documents." (Doc. 38 at 16). It is not clear whether Defendant has produced all relevant information in response to this Interrogatory or is holding back some information pending execution of a confidentiality agreement. Assuming the latter, the Middle District **[*22]** Discovery Handbook[3] states that, "[u]pon receipt of objectionable discovery, a party has a duty to seek relief immediately, i.e., without waiting until the discovery is due or almost due." *Eli Research, LLC v. Must Have Info Inc., No. 2:13-cv-695-FtM-38CM, 2015 U.S. Dist. LEXIS 103194, 2015 WL 4694046, at *2 (M.D. Fla. Aug. 6, 2015)*, citing Middle District Discovery, A Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida § VII(B); see also *Harris Corp. v. Ruckus Wireless, Inc., No. 6:11-cv-Orl-35KRS, 2011 U.S. Dist. LEXIS 160782, 2011 WL 13142646, at *1 (M.D. Fla. Nov. 23, 2011)* ("[W]hen the parties cannot agree on a confidentiality order, a motion for a protective order must be filed before the date that a response to the discovery request is due."); *Fid. & Guar. Ins. Co. v. Ford Motor Co., No. 6:09-cv-595-Orl-31KRS, 2010 U.S. Dist. LEXIS 149762, 2010 WL 11507576, at *3 (M.D. Fla. Feb. 17, 2010)* ("the proper procedure is for the party asserting confidentiality to move for a protective order before the discovery responses are due"). As Magistrate Judge Snyder explained:

A motion for protective order must be filed timely. See *Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 413 (M.D.N.C. 1991)*; see also *Reed v. Fulton County Gov't, 170 F.App'x 674, 675 n.1 (11th Cir. 2006)* (per curiam); *Williams v. Am. Telephone & Telegraph Co., 134 F.R.D. 302, 303 (M.D. Fla. 1991)*; *Maxey v. Gen. Motors Corp., No. CIV. A. 3:95CV60-D-A, 1996 U.S. Dist. LEXIS 21149, 1996 WL 692222, at *1 (N.D. Miss. Nov. 18, 1996)*; *Berry v. Baca, No. CV01-02069 DDP (SHX), 2002 U.S. Dist. LEXIS 15698, 2002 WL 1777412, at *2 (C.D. Cal. July 29, 2002)*. Communicating to opposing counsel a party's objections to production, without timely bringing the matter to the attention of the Court, **[*23]** is not adequate under *Rule 26(c)*. See *Maxey, 1996 U.S. Dist. LEXIS 21149, 1996 WL 692222, at *2*. "'A motion for [a] protective order is generally untimely if it [is] made after the date the discovery material was to be produced.'" *Morock v. Chautauqua Airlines, Inc., No. 8:07-cv-210-T-17-MAP, 2007 U.S. Dist. LEXIS 104783, 2007 WL 4322764, at *1 (M.D. Fla. Dec. 11, 2007)* (quoting *Laughon ex rel. Laughon v. Jacksonville Sheriff's Office, No. 3:06-cv-692-J-25HTS, 2007 U.S. Dist. LEXIS 31427, 2007 WL 1247305, at *2 (M.D. Fla. Apr. 30, 2007)*) (altered to reflect original text); see also *Maxey, 1996 U.S. Dist. LEXIS 21149, 1996 WL 692222, at *1*; cf. Middle District Discovery (2001) at 20 (party has a duty to seek protective order "immediately, i.e., without waiting until the discovery is due or almost due"); *Ireh v. Nassau Univ. Med. Ctr., No. CV 06-09(LDW)(AKT), 2008 U.S. Dist. LEXIS 76583, 2008 WL 4283344, at *2 (E.D.N.Y. Sept. 17, 2008)* (In the context of , a motion to quash "must be filed within the time set in the subpoena for compliance."); Uzzell v. Teletech Holdings, Inc., No. C07-0232MJP,  ("Because Plaintiff never objected, filed a motion to quash, or filed a motion for a protective order until more than two months after the subpoenas were issued, he has waived all objections to the subpoenas."). Nevertheless, if the party seeking protection can establish good cause for an untimely motion, the Court may grant the relief sought. , *1996 U.S. Dist. LEXIS 21149, 1996 WL 692222, at *2*.

*Andrews v. CSX Transportation, Inc., No. 3:06-CV-704-J-32HTS, 2009 U.S. Dist. LEXIS 136804, 2009 WL 10670852, at *1 (M.D. Fla. Jan. 7, 2009)*. Defendant has not filed a motion for a protective order. Consequently, if it is withholding **[*24]** of information until execution of a confidentiality agreement, that is improper. The motion to compel is granted, to the extent any information responsive to this Interrogatory has not been produced.

---

[3] While the Handbook is not part of the Court's Local Rules, it is instructive and authoritative.

2018 U.S. Dist. LEXIS 228428, *24

**Interrogatories and Requests Pertaining to the Lighting of the Area**

**Interrogatory Number 15**
    Please describe all changes to the maintenance procedures for the lighting of the location where Plaintiff fell, for the period from three years preceding Plaintiff's accident to the present.
    DEFENDANT'S ANSWER: DCL objects to Interrogatory No. 15 on the grounds that it is overbroad, not reasonably limited in scope, ambiguous, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is or may be protected by the work product doctrine. Moreover, Plaintiff has yet to appear for deposition to describe with specificity the manner and location of her alleged incident.

**Interrogatory Number 20**
    State the full name and address of the manufacturing company from whom the Defendant purchased the lights located in the area where Plaintiff's accident occurred.

    DEFENDANT'S ANSWER: DCL objects to Interrogatory Number 20 on the grounds that it is irrelevant and **[*25]** not reasonably calculated to lead to the discovery of admissible evidence as Plaintiff's Amended Complaint does not allege a failure to provide sufficient lighting on Deck 11. Moreover, Plaintiff has yet to appear for deposition to describe with specificity the manner and location of her alleged incident.

**Request for Production Number 24**
    Any and all documents which reflect or concern any and all repairs, replacements and/or alterations to the lights located in the area where Plaintiff's accident occurred since the date of that accident.
    DEFENDANT'S RESPONSE: DCL objects to Request No. 24 on the grounds it is overbroad, ambiguous, not reasonably limited in time and scope, seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, seeks evidence of remedial measures, if existing, and seeks information that is or may be protected by the work product doctrine. Moreover, Plaintiff has yet to appear for deposition to describe with specificity the manner and location of her alleged incident. Moreover, Plaintiff's Amended Complaint makes no allegation regarding any alleged inadequate lighting.

Defendant argues that maintenance procedures, **[*26]** repairs, replacements, and/or alterations for the lighting at the subject location are not relevant because Plaintiff testified that she could see the floor and was not looking at the floor anyway. These objections are overruled. For present purposes, as explained above, information concerning the adequacy of lighting at the covered pool deck where Plaintiff fell is within the relevant scope of discovery. As to the request for information since the date of the accident, the objection is sustained. The motion to compel is granted, as modified to this extent.

**Request for Production Number 13**
    Any and all policies and/or procedures related to the proper inspection for dangerous tripping hazards in the area where Plaintiff's accident occurred.
    DEFENDANT'S RESPONSE: DCL objects to Request No. 13 on the grounds it is overbroad, ambiguous, not reasonably limited in time or scope and seeks information that is or may be protected by the work product doctrine. Plaintiff has yet to appear for deposition to describe with specificity the manner and location of her alleged incident. Moreover, Plaintiff's counsel has advised that Plaintiff allegedly slipped on Deck 11, not that she tripped.

Defendant **[*27]** argues that its objections should be sustained because Plaintiff confirmed at her deposition that she did not trip and discovery pertaining to tripping hazards is therefore irrelevant. Defendant also claims "this is a moot issue as DCL has already produced its policy of "Preventing Common Accidents & Injuries - Slips, Trips and Falls.'" Because it appears that all responsive information has been provided, the motion is denied as to this request.

2018 U.S. Dist. LEXIS 228428, *27

**Request for Production Number 23**

The ship's log for the date of Plaintiff's accident.

DEFENDANT'S RESPONSE: See DCL's Response to Request No. 10, incorporated herein. Notwithstanding DCL's response, DCL objects to Request No. 23 on the grounds it is vague and ambiguous.

During the parties' good faith conferral efforts, Plaintiff narrowed this request to the vessel's deck logs. Defendant's boiler-plate objections as to the alleged vagueness and ambiguity of this request are **overruled**.

Plaintiff contends that she is entitled to the deck logs because they will have the vessel's specific geographic locations and meteorological information. Defendant argues that this information is irrelevant as there is no dispute regarding the location of the vessel **[*28]** or any allegation that weather played a part in Plaintiff's fall. To the extent this is a belated objection of relevancy, it, too, is **overruled**. While the logs may ultimately yield nothing useful, the scope of discovery is broad enough to include this basic information, which relates to conditions at the time of the incident. The motion to compel is **granted as to this request**.

When a court grants a motion to compel, or if the discovery is provided after the motion is filed, the moving party is entitled to recover its reasonable expenses in making the motion, including attorney's fees, unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Fed. R. Civ. P. 37(a)(5)(A)*. Here, the motion has only been granted in part and Plaintiff does not seek such an award. Under these circumstances, no motion costs are awarded.

Defendant shall supplement its responses and provide the requested documents and information within fourteen days of the date of this Order.

**DONE** and **ORDERED** in Orlando, Florida **[*29]** on May 2, 2018.

/s/ Thomas B. Smith

THOMAS B. SMITH

United States Magistrate Judge

---

**End of Document**