UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-21590-ELFENBEIN

**KAYLA HOMINSKI** and **NICHOLAS HOMINSKI**,

    Plaintiffs,

v.

**GUSAR, LLC**, *et al*,

    Defendants.

_____/

### ORDER ON DEFENDANT WAYFAIR LLC'S ORAL MOTION TO DEEM PLAINTIFFS' ATTORNEY-CLIENT COMMUNICATIONS WAIVED

**THIS CAUSE** is before the Court on Defendant Wayfair LLC's ("Wayfair") Oral Motion to Deem Plaintiffs' Attorney-Client Communications Waived (the "Motion"), ECF No. [134]. At the hearing conducted on May 22, 2025, the Court ordered the Parties to submit supplemental briefing on this issue. *See* ECF No. [135] at 3-4. The Parties each submitted simultaneous briefing. *See* ECF Nos. [138] and [139]. On October 10, 2025, due to the discovery of additional evidence supporting its Motion, Wayfair filed its Supplemental Brief in Support of the Motion (the "Supplement"). *See* ECF No. [165]. On October 16, 2025, Plaintiffs filed their Response to Wayfair's Supplement (the "Supplement Response"). *See* ECF No. [173]. For the reasons explained below, the Motion, **ECF No. [134]**, is **DENIED**.

**I.   BACKGROUND**

This products liability action arises from severe injuries sustained by Plaintiff Kayla Hominski ("Ms. Hominski") in July 2023. *See* ECF No. [30] at ¶¶18-24. Plaintiffs allege that a rectangular table-top fire pit, purchased through Wayfair's website in May 2023, malfunctioned

and caused Ms. Hominski to suffer third-degree burns over 40 percent of her body. *See* ECF No. [30] at ¶¶12-13, 19-20.  Wayfair argues that Plaintiffs waived their attorney–client privilege by voluntarily disclosing the substance of communications with their lawyers and legal strategy to non-parties via texts, group chats, and voice notes.  Specifically, Wayfair argues that Ms. Hominski waived attorney-client privilege as to all related communications regarding the "litigation strategy and efforts (through counsel) to influence Greg Ferraro's ('Mr. Ferraro') testimony."  *See* ECF No. [139] at 9-10; ECF No. [165] at 1-3. Wayfair argues that several text messages and voice notes from Ms. Hominski to third parties discuss her counsel's plans to meet with Mr. Ferraro and "explain" facts to him, to reassure him about what he "now knows," and otherwise shape his testimony.  *See id*. at 3-4; ECF No. [165] at 1-3.

Wayfair argues that, under Florida law, disclosure of a significant part of a privileged communication to third parties destroys confidentiality, and that neither the common interest privilege nor the agency exception apply to these third parties   *See* ECF No. [139] at 1-2, 5-7. Further, that waiver is expanded, under Florida's selective disclosure doctrine and Federal Rule of Evidence 502(a) (the "federal fairness doctrine"), to all communications on the same subject because selective disclosure would prejudice Wayfair.  *See id*.  Wayfair argues that it was prejudiced by being unable to timely contact key witnesses while Plaintiffs' counsel coached Mr. Ferraro.  *See id*.  For those reasons, Wayfair asks the Court to compel production of all related communications with counsel.

Plaintiffs concede that Ms. Hominski waived attorney-client privilege as to the specific texts and voice notes already shared with third parties, which they produced in discovery.  *See* ECF No. [138] at 2. Plaintiffs argue, however, there is no broad privilege waiver and Florida law limits any waiver to what was actually disclosed, not the entire subject of "witness coaching" or

all communications about Mr. Ferraro. *See id*. at 3-9. They contend Wayfair shows no "selective and misleading" use of privileged material that would justify subject-matter waiver under Florida law or the federal fairness doctrine. *See id*. at 4-7. Plaintiffs also argue that, as to work product, disclosure to third parties does not create a subject-matter waiver and, at most, could affect only the specific items disclosed. *See id*. at 7-9. Plaintiffs ask that Wayfair's request for all counsel communications regarding Mr. Ferraro be denied and confine any waiver strictly to the already-produced third-party messages. *See id*. at 9.

## II.  LEGAL STANDARDS

### A. Attorney–Client Privilege and Waiver Under Florida Law

In federal diversity actions such as this one, Florida state law governs attorney-client privilege issues, while federal law governs work-product doctrine issues. *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, 300 F.R.D. 590, 593 (S.D. Fla. 2014) (citing *Milinazzo v. State Farm Ins.*, 247 F.R.D. 691, 696–700 (S.D. Fla. 2007)). The party asserting privilege bears the burden to establish each element. *See, e.g., Southern Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994) ("The burden of establishing the attorney-client privilege rests on the party claiming it."); *Seaboard Air Line R. Co. v. Timmons*, 61 So. 2d 426 (Fla. 1952) ("[T]he burden is upon the party asserting a privilege to establish the existence of each element of the privilege in question.") Once the proponent of the privilege has established its elements, the burden shifts to the opponent to show that an exception applies or that the privilege has been waived. *First Union Na'tl Bank v. Turney*, 824 So. 2d 172 (Fla. 1st DCA 2001); *Robichaud v. Kennedy*, 711 So. 2d 186, 188 (Fla. 2d DCA 1998).

Florida's codified attorney–client privilege protects confidential communications between a client and lawyer made for the purpose of seeking or rendering legal advice. Fla. Stat. §

90.502(1)(c), (2).  A "confidential" communication is one not intended to be disclosed to third persons other than those reasonably necessary for the transmission of the communication or the accomplishment of the legal purpose.  *Id*. § 90.502(1)(c).  Florida law states that the privilege holder "waives the privilege if the person . . . voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication."  Fla. Stat. § 90.507; *Coates v. Akerman Senterfitt & Eidson, P.A.*, 940 So. 2d 504, 510 (Fla. 2d DCA 2006).  Disclosure to non-agent third parties destroys confidentiality and waives privilege as to the communication disclosed.  *See* Fla. Stat. § 90.502(1)(c), (2).

Florida law generally disfavors broad waivers and confines any extension to what fairness requires.  *See Courville v. Promedco of SW Fla., Inc.*, 743 So. 2d 41, 42 (Fla. 2d DCA 1999) (waiver limited to disclosed contract provision); *Petzold v. Castro*, 365 So. 3d 1199, 1202 (Fla. 2d DCA 2023) (waiver of privilege as to an email is limited to the email itself); *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, No. 13-CV-23998, 2017 WL 3840354, at *3 (S.D. Fla. Sept. 1, 2017) (applying Florida law, finding that waiver does not automatically extend to other counsel's communications on the same transaction); *Coates*, 940 So. 2d at 508 (waiver limited to communications on the same, specific matter actually disclosed).  Inadvertent or non-substantive disclosures typically do not trigger subject-matter waiver.  *See Petzold*, 365 So. 3d at 1202.

Florida law recognizes the "selective disclosure" doctrine, which provides that "a party may not insist upon the protection of the privilege for damaging communications while disclosing other selected communications because they are self-serving."  *See Petzold*, 365 So. 3d at 1203 (quoting *Coates*, 940 So. 2d at 511) (internal quotations omitted); *Alliant Ins. Servs., Inc. v. Riemer Ins. Grp.*, 22 So. 3d 779, 781 (Fla. 4th DCA 2009) (same "certain matter" rule); *Kipnis*, 2017 WL

3840354 at *4 (applying Florida law); *Paradise Divers, Inc. v. Upmal*, 943 So. 2d 812, 814 (Fla. 3d DCA 2006) (finding that employer's partial waiver of privilege by agreeing to produce documents relevant to an advice of counsel defense did not require production of all documents subject to privilege); *see also McPartland v. GEICO Gen. Ins. Co.*, No. 09-CV-268, 2010 WL 11507535, at *6 (M.D. Fla. Mar. 5, 2010) ("Under Florida law, the attorney-client privilege may be waived as to a limited subject matter." (internal citations omitted)). "To be sure, the scope of the waiver is determined on a case-by-case basis, 'but, fairness dictates that a litigant cannot pick and choose those portions of the attorney-client communications that will be disclosed, thereby disguising, garbling, or manipulating the truth.'" *Kipnis*, 2017 WL 3840354 at *4 (quoting *Guarantee*, 300 F.R.D. at 598 (internal quotation omitted)).

"Courts determining the scope of a subject matter waiver in a particular case consider factors such as: (1) the general nature of counsel's assignment; (2) the extent to which counsel's activities in fulfilling the assignment are undifferentiated and unitary or are distinct and severable; (3) the extent to which the disclosed and undisclosed communications share, or do not share, a common nexus with a distinct activity; (4) the circumstances in and purposes for which disclosure was made originally; (5) the circumstances in and purposes for which further disclosure is sought; (6) the risks to the interests protected by the privilege if further disclosure were to occur; and (7) the prejudice which might result without disclosure." *Guarantee*, 300 F.R.D. at 598 (citing *United States v. Skeddle,* 989 F. Supp. 917, 918–19 (N.D. Ohio 1997)); *Kipnis*, 2017 WL 3840354 at *4.

### B. Federal Fairness Doctrine and Florida Law

As previously stated, in diversity cases, state law governs privilege. *See* Fed. Rule of Evid. 501. However, Federal Rule of Evidence 502 governs the effect of disclosure in a federal proceeding and strives for uniform, predictable waiver rules. *See* Fed. R. Evid. 502(f) ("this rule

applies even if state law provides the rule of decision.")  Section (a) of Rule 502 (the "Federal Fairness Doctrine") states that "[w]hen the disclosure is made in a federal proceeding . . . and waives the attorney-client privilege . . . the waiver extends to an undisclosed communication or information . . . only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  The Advisory Committee Notes emphasize that subject-matter waiver is reserved for "unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *See* Fed. R. Evid. 502 (advisory committee notes).

## III.  DISCUSSION

Applying the governing standards, the Court concludes that Plaintiffs voluntarily waived the attorney–client privilege only as to the specific attorney-client communications that Ms. Hominski herself relayed to third parties, and that this waiver does not expand to all communications on the same general subject.

First, Ms. Hominski's texts and voice notes recounting what her lawyers said or planned to do destroyed the required confidentiality element of privilege; thus, waiving privilege under Florida law. *See* Fla. Stat. § 90.502(1)(c), (2).  The statute expressly provides that a holder "waives the privilege" by voluntarily disclosing "any significant part" of a privileged communication to third parties outside the privilege.  Fla. Stat. § 90.507; *see also Coates*, 940 So. 2d at 510.  Plaintiffs concede that, to this limited extent, Ms. Hominski's disclosures to friends and family waived the privilege as to those communications, and they do not contend that any common-interest or agency exception preserves confidentiality for these third-party exchanges. *See* ECF No. [138] at 2. Accordingly, the Court need not address Wayfair's arguments regarding common-interest

6

privilege and the agency exception. Similarly, Wayfair does not advance a work-product argument in support of its motion, so the Court need not consider Plaintiffs' argument on the subject.[1] Based on the Court's own review and Plaintiffs' concession, the Court find that Plaintiffs have waived the attorney-client privilege as to those text messages and voice notes in which Ms. Hominski told friends and family about her lawyers' meetings and plans with Mr. Ferraro. The Court notes that Plaintiffs have already produced those communications to Wayfair in the course of discovery.

The real dispute is whether this conceded waiver should be extended to a subject-matter waiver, requiring production of all attorney communications about Mr. Ferraro under Florida's selective-disclosure doctrine and the federal fairness doctrine. As previously stated, Florida law generally disfavors broad waivers and confines any waiver extension to what fairness requires. *See Courville*, 743 So. 2d at 42; *Petzold*, 365 So. 3d at 1202; *Kipnis*, 2017 WL 3840354 at *3; *Coates*, 940 So. 2d at 508. The selective-disclosure doctrine and federal fairness doctrine prevent a party from wielding the privilege as a sword and a shield, but it applies only where the holder intentionally puts privileged communications forward in a selective, misleading way that would prejudice the opponent absent fuller disclosure. *See Petzold*, 365 So. 3d at 1203 (quoting *Coates*, 940 So. 2d at 511); *Alliant*, 22 So. 3d at 781; *Paradise Divers*, 943 So. 2d at 814; *McPartland*, 2010 WL 11507535 at *6; *Kipnis*, 2017 WL 3840354, at *4 (quoting *Guarantee*, 300 F.R.D. at 598); Fed. R. Evid. 502(a). Taken together, an intentional disclosure waives only what was disclosed and extends further only if the undisclosed communications concern the same subject

---

[1] A movant "forfeits an issue when [he] raises it in a perfunctory manner without supporting arguments and authority." *Harner v. Comm'r of Soc. Sec.*, 38 F.4th 892, 899 (11th Cir. 2022) (quotation marks and citation omitted); *see also Singh v. United States Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.") (citation omitted); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) (same).

matter and "ought in fairness to be considered together." *See* Fed. R. Evid. 502(a), (advisory committee notes).

Those fairness predicates are not present here. Ms. Hominski did not disclose her counsel's communications in court filings, testimony, or advocacy to secure a tactical advantage; rather, she made extra-judicial statements to friends and family that are disadvantageous to Plaintiffs. Indeed, Ms. Hominski's disclosures hurt her position by providing Wayfair impeachment statements and potential evidence of unreliability and untrustworthiness. This is the opposite of a "selective, self-serving" presentation. *See Petzold*, 365 So. 3d at 1203; *Coates*, 940 So. 2d at 511. Nor do Ms. Hominski's disclosures satisfy the factors articulated in *Guarantee*. The seven factors courts use to determine the scope of a waiver include: (1) the attorney's assignment; (2) whether the assignment is severable; (3) whether the undisclosed communications relate to the disclosed topic; (4) why and how the disclosure occurred; (5) why the opponent seeks the undisclosed communications; (6) risks to privilege if further disclosure is compelled; and (7) the prejudice that might result without disclosure. *See Guarantee*, 300 F.R.D. at 598; *Kipnis*, 2017 WL 3840354, at *3–4.

The first three factors weigh against an extension of the waiver. First, Plaintiffs retained their counsel in this matter for the broad assignment of prosecuting this product-liability action, rather than a single, inseparable project, which favors limiting any waiver to the discrete communications already disclosed. Second, the disclosed and undisclosed information is readily severable, *i.e.* Ms. Hominski's internal attorney–client advice and strategy on witness preparation versus Ms. Hominski's already disclosed recounting of some of those discussions to friends and family. Because those categories are distinct, a subject-matter waiver need not sweep in all attorney communications about Mr. Ferraro. Third, the undisclosed communications could span

8

broader topics beyond what counsel said or planned to do with Mr. Ferraro, supporting a limited, rather than global waiver.  Fourth, as previously stated, the disclosures were informal, extra-judicial messages to friends and family — not a tactical use of privileged content in court.  They were not made to secure a litigation advantage and, if anything, harm Plaintiffs by providing impeachment material and unfavorable credibility inferences.  This weighs heavily against extending waiver on fairness grounds.  The fifth and seventh factors are intertwined.  Wayfair seeks wholesale production of all attorney communications regarding Mr. Ferraro to explore alleged "witness coaching."  While that interest is understandable, it is not tied to curing a selective, misleading use by Plaintiffs in this litigation.  Existing non-privileged avenues — the already produced texts and voice notes, depositions of Mr. Ferraro and others, and third-party discovery — address Wayfair's purpose without broad intrusion.  Any alleged prejudice to Wayfair may be addressed using these non-privileged avenues.  These factors favor a limited waiver rather than the broader waiver Wayfair seeks.  Finally, the sixth factor also favors a limited waiver.  Compelling all attorney communications related to Mr. Ferraro would pierce core attorney–client exchanges and likely reveal opinion work product and subject matters far beyond what Ms. Hominski relayed.  That risk is substantial and irreparable; once disclosed, confidentiality cannot be restored.  This factor strongly weighs against expansion of the waiver.

On this record, expanding the waiver to sweep in all attorney communications about Mr. Ferraro would outrun both Florida's narrow approach to waiver and Federal Rule 502's fairness-based limit on subject-matter waivers.  The appropriate remedy is the one Florida law prescribes: the privilege is waived only as to the specific communications Ms. Hominski disclosed to third parties but not to the entire universe of attorney–client exchanges concerning Mr. Ferraro.  *See*

*Coates*, 940 So. 2d at 508–12; *Courville*, 743 So. 2d at 42; *Kipnis*, 2017 WL 3840354, at *3–4; *Guarantee*, 300 F.R.D. at 598 (listing fairness factors).

Accordingly, it is **ORDERED and ADJUDGED** that Defendant Wayfair LLC's Oral Motion to Deem Plaintiffs' Attorney-Client Communications Waived, **ECF No. [134]**, is **DENIED**. With that said, because Plaintiffs cannot use the partial waiver as both a sword and a shield, if in the future, Plaintiffs use their disclosure of privileged materials to their benefit (as a sword), then Wayfair at that time can revisit the issue and make a targeted application supported by a concrete showing that Plaintiffs have used privileged material in a manner that would render additional, same-subject communications necessary to avoid a misleading presentation.

**DONE and ORDERED** in Chambers in Miami, Florida on October 29, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record