UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-21590-ELFENBEIN

KAYLA HOMINSKI, *et al.*,

      Plaintiffs,

v.

GUSAR, LLC, *et al.*,

      Defendants.

_____/

## ORDER ON SECOND MOTION TO COMPEL
## PRODUCTION OF ATTORNEY-CLIENT COMMUNICATIONS

**THIS CAUSE** is before the Court on Defendant Wayfair LLC's ("Defendant") Second Motion to Compel Production of Attorney-Client Communications Based on Waiver by Production and Crime-Fraud Exception (the "Motion"). *See* ECF Nos. [189] and [231]. In the Motion, Defendant argues that Plaintiffs' current counsel "failed to take reasonable steps to prevent the disclosure through production of attorney-client communications on two separate occasions, failed to immediately address the first disclosure, and subsequently failed to address the second disclosure at any time to the present, thereby waiving any claim of privilege under Federal Rule of Evidence 502(b)." ECF No. [189] at 1. Defendant further argues that Plaintiffs' former counsel "engaged in improper witness coaching, demonstrating the applicability of the crime-fraud exception to the attorney-client privilege." *Id.*

Plaintiffs Kayla Hominski and Nicholas Hominski (collectively "Plaintiffs") filed a Response in opposition, asserting that current counsel took "diligent and reasonable steps" in producing electronically stored information ("ESI") from millions of records, promptly remedied and clawed back any inadvertent, de minimis disclosures of prior attorney-client communications

with proper notice to Defendant, and thus did not waive privilege as to prior counsel's communications. *See* ECF No. [198] at 1. Plaintiffs further assert that "former counsel did not waive all privilege pursuant to any crime-fraud exception to the attorney-client privilege since there were no illegal or fraudulent actions taken by the prior attorneys of record, and, there was no furtherance of any fraudulent conduct where a non-attorney client merely repeated her understanding of what her attorney might say or do." *Id.*

Defendant filed a Reply in support of the Motion, *see* ECF No. [199], and then requested permission to file a Supplemental Brief in further support of the Motion based on new developments, which the Court granted, *see* ECF No. [231]. Plaintiffs then filed a Response to Defendant's Supplemental Briefing. *See* ECF No. [234]. The Court has carefully considered the Parties' submissions, the record, and the applicable law. For the reasons set forth below, the Motion, **ECF Nos. [189] and [231],** is **GRANTED IN PART** and **DENIED IN PART.**

## I.       BACKGROUND

This products liability action arises from severe injuries Plaintiff Kayla Hominski ("Ms. Hominski") sustained in July 2023. *See* ECF No. [30]. Plaintiffs allege that a rectangular table-top fire pit, purchased through Defendant's website in May 2023, malfunctioned and caused Ms. Hominski to suffer third-degree burns over approximately 40 percent of her body. *See id.* The present discovery dispute centers on whether attorney-client communications between Ms. Hominski and her former counsel, Stuart Ratzan ("Ratzan") and Mario Giommoni ("Giommoni"), produced during discovery, must be disclosed due to waiver through production under Federal Rule of Evidence 502(b) or the application of the crime-fraud exception. These privilege issues arose amid substantial ESI discovery.

On September 23, 2025, Plaintiffs produced documents in response to Defendant's requests

for production.  *See* ECF Nos. [189-3] and [189-4].  The production included attorney-client communications between Ms. Hominski and her former attorneys, Ratzan and Giommoni.  *See id*.  The production was organized into folders corresponding to Defendant's numbered requests for production, and the communications at issue appeared in folders labeled "66" and "67."  *See* ECF No. [189-12] at 6.  Request No. 66 sought communications between Ms. Hominski and Giommoni, and Request No. 67 sought communications between Ms. Hominski and Ratzan, limited to communications relating to meetings with or preparation of witnesses, including Greg Ferraro, Kayla Ferraro, and Fire Marshal Goins.  *See* ECF Nos. [189-2] at 50–51 and [189-5] at 17–18.  Ms. Hominski's text thread with her counsel, Ratzan, identified him as "Stuart Ratzan lawyer," making its privileged nature facially apparent.  *See* ECF No. [189-3].

On October 2, 2025, Defendant sent Plaintiffs' counsel correspondence raising multiple issues concerning Plaintiffs' ESI production.  *See* ECF No. [189-6].  Among other things, Defendant stated Plaintiffs had produced "attorney-client communications relating to the lawsuit," many of which appeared to be cut off or incomplete.  *Id.* at 4.  Plaintiffs' counsel responded that same day, requesting to confer but did not request the return or destruction of the attorney-client communications at issue.  *See* ECF No. [189-7].

On October 14, 2025, the Parties conducted a meet-and-confer.  *See* ECF No. [189] at 3.  During that conference, the Parties discussed the disclosed attorney-client communications, and, at Plaintiffs' request, Defendant produced copies of those communications to Plaintiffs' counsel.  *See* ECF No. [189-8] at 2.  On October 15, 2025, the following day, Plaintiffs' counsel sent Defendant a claw-back demand, requesting the return, sequestration, and nondisclosure of the inadvertently disclosed communications.  *See* ECF No. [198-3] at 3–5.  On October 16, 2025, Plaintiffs' counsel sent additional correspondence, invoking Federal Rule of Evidence 502 and

Federal Rule of Civil Procedure 26(b)(5)(B), stating the disclosures were inadvertent, de minimis, arose from the volume of ESI and largely concerned facts or materials already known to Defendant or otherwise produced in discovery. *See* ECF No. [198-4] at 1–2. On October 17, 2025, Plaintiffs' counsel sent further correspondence addressing the inadvertent disclosure issue. *See* ECF No. [198-5] at 4.

Also, on October 17, 2025, Plaintiffs' counsel sent a physical USB drive to Defendant and the Court. *See* ECF No. [189-2] at 50–52. The drive reproduced the same attorney-client communications that Plaintiffs had clawed back two days earlier, again organizing them in folders corresponding to Request Nos. 66 and 67. *See id.* This issue was first presented to the Court at the discovery hearing held on October 22, 2025. *See id.* The Court permitted the Parties to file briefing on the issues of waiver by production and the crime-fraud exception. *See id.*

Defendant then filed the present Motion, arguing Plaintiffs waived attorney-client privilege under Rule 502(b) because they failed to take reasonable steps to prevent disclosure, failed to promptly rectify the initial disclosure, and then produced the same materials a second time after asserting a claw back. *See* ECF Nos. [189], [199], and [231]. Defendant further contends that the crime-fraud exception applies because the disclosed communications between Ms. Hominski and her former counsel, along with Ms. Hominski's voice notes to a third-party describing discussions with that counsel, indicate that the former counsel improperly coached eyewitnesses Greg Ferraro and Kayla Ferraro to modify their testimony from the day of the incident. *See id.*

Plaintiffs oppose both grounds. *See* ECF Nos. [198] and [234]. Regarding waiver, Plaintiffs contend that the initial disclosure was inadvertent, limited, and reasonable given the volume and complexity of the ESI review. *See id.* They further assert that the second transmission was not an intentional disclosure, but rather a good-faith effort to provide both the Court and

Defendant with a consistent production set necessary to address the ESI dispute. *See id.* As to the crime-fraud exception, Plaintiffs contend that Defendant offers only speculation and fails to make a *prima facie* showing of criminal or fraudulent conduct. *See id.* Plaintiffs maintain that the text message from Ratzan to Ms. Hominski, upon which Defendant relies to invoke the exception, is susceptible to a lawful interpretation and does not satisfy the criteria for the crime-fraud exception. *See id.* Plaintiffs further argue that Ms. Hominski's voice notes merely reflect her own understanding of counsel's anticipated witness preparation and do not demonstrate that Plaintiffs sought legal advice to commit a crime or fraud, nor that former counsel's assistance furthered any such conduct. *See id.*

## II.     LEGAL STANDARDS

### A. Waiver Under Federal Rule of Evidence 502(b)

The attorney-client privilege protects confidential communications between a client and counsel made for the purpose of obtaining or providing legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege is intended "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. But "[t]he attorney-client privilege is not absolute." *United States v. Noriega*, 917 F.2d 1543, 1551 (11th Cir. 1990). Like other privileges, it may be waived. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994). In the discovery context, the governing rule for determining whether an inadvertent disclosure operates as a waiver is Federal Rule of Evidence 502(b). *See* Fed. R. Evid. 502(b).

Rule 502(b) provides that when a disclosure is made in a federal proceeding, the disclosure does not operate as a waiver if: "(1) the disclosure is inadvertent; (2) the holder of the privilege or

protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."  Fed. R. Evid. 502(b).  The party asserting privilege or the disclosing party "bears the burden" of establishing all three requirements.  *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-CV-60268, 2015 WL 1565310, at *7 (S.D. Fla. Apr. 8, 2015); *see also Penrod Bros., Inc. v. City of Miami Beach, Fla.*, No. 23-CV-23362, 2025 WL 1555991, at *2 (S.D. Fla. June 2, 2025).  The three requirements of Rule 502(b) are conjunctive.  *See Thermoset*, 2015 WL 1565310, at *7; *see also* Fed. R. Evid. 502(b).  Thus, a producing party must show not only that the disclosure was inadvertent, but also that reasonable steps were taken before production to prevent disclosure and prompt steps were taken after disclosure to rectify the error.  *See id.*  A failure to satisfy any one element is sufficient to find waiver.  *See Penrod Bros.*, 2025 WL 1555991, at *2–3.

The reasonableness inquiry is necessarily fact-specific.  Courts consider the totality of the circumstances, including the reasonableness of precautions taken to prevent disclosure, the time taken to rectify the error, the scope of discovery, the extent of disclosure, and fairness.  *See Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-CV-22539, 2014 WL 4449451, at *4 (S.D. Fla. Sept. 10, 2014) ("There is no hard and fast test for analyzing inadvertent disclosure issues, but, the 11th Circuit found no error in a district court's adoption of the so-called totality-of-the-circumstances test, in which a reviewing court considers five factors: '(1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness.'" (quoting *Koch Foods of Alabama, LLC v. Gen. Elec. Capital Corp.,* 303 F. App'x 841, 846 (11th Cir. 2008))).  Courts may also consider whether the producing party conducted quality control to prevent disclosure of privileged material.  *See Victor Stanley, Inc. v. Creative*

*Pipe, Inc.*, 250 F.R.D. 251, 261 (D. Md. 2008).

Rule 502(b)(3) separately requires prompt remedial action.   Once a producing party learns privileged material has been produced, it must act with diligence to notify the receiving party and request return, sequestration, or destruction.   *See* Fed. R. Evid. 502(b)(3); Fed. R. Civ. P. 26(b)(5)(B).   While promptness is measured in context, a producing party's delay or failure to investigate after notice may establish that the producing party did not promptly take reasonable steps to rectify the disclosure.   *See Penrod Bros.*, 2025 WL 1560947, at *3.

## B.  Crime-Fraud Exception to the Attorney-Client Privilege

Although the "attorney-client privilege" generally "attaches to all communications made in confidence by a client to an attorney for the purposes of securing legal advice or assistance," it "does not protect communications made in furtherance of a crime or fraud."   *In re Grand Jury Subpoena*, 2 F.4th 1339, 1345 (11th Cir. 2021) (quotation marks omitted); *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1305 (S.D. Fla. 2000).   The same limitation applies to documents typically protected by "the attorney work product doctrine," *see Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018) ("The crime-fraud exception allows a party—in rare circumstances—to obtain discovery that otherwise would be protected by the attorney-client privilege or the attorney work product doctrine."), and to information usually protected under the "common interest privilege," *United States v. Stein*, No. 21-CR-20321, 2023 WL 2585033, at *2 (S.D. Fla. Mar. 21, 2023).   To "determine whether the crime-fraud exception applies to an otherwise privileged communication," the Eleventh Circuit uses "a two-part test."   *In re Grand Jury Subpoena*, 2 F.4th at 1345.   "First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime

or fraud subsequent to receiving the benefit of counsel's advice." *Id.* (citation omitted). "Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *Id.* (citation omitted).

To satisfy the first prong of that test, a party must show "evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Id.* (quotation marks omitted). For example, when grand jury proceedings are involved, this "prima facie showing must" have only "some foundation in fact;" it does not require the party to "prove the existence of a crime or fraud beyond a reasonable doubt." *Id.* (quotation marks omitted). While "mere allegations of criminality are insufficient," a party "may meet its burden by providing a good faith statement as to what evidence is before the grand jury" and may rely on circumstantial evidence and reasonable inferences. *Id.* at 1345–46 (alteration adopted, quotation marks omitted). "This is a low hurdle." *Id.* at 1345.

Even so, applying this standard "is often easier said than done." *Gutter*, 124 F. Supp. 2d at 1305. "Many courts have struggled with questions such as what constitutes a *prima facie* showing, whether the *prima facie* showing changes in different contexts, the ultimate burden of proof needed to sustain the crime/fraud exception, and who carries the burden of proof." *Id.* While some of those questions remain unanswered, courts in this District have resolved the burden of proof question with a shifting standard. *See id.* at 1305–07.

Under that shifting standard, the party opposing attorney-client privilege based "on the crime/fraud exception has the initial burden of producing evidence which, if unexplained, would be *prima facie* proof of the existence of the exception." *Id.* at 1307. If that occurs, the "burden of persuasion then shifts to the party asserting the privilege to give a reasonable explanation of its conduct," which it can do by demonstrating "by a preponderance of the evidence that the *prima*

*facie* showing that the crime/fraud exception applies should not be accepted." *Id.* (footnote omitted). "If the court accepts the explanation as sufficient to rebut the evidence presented by the party opposing the privilege, then the privilege remains." *Id.* "If the court does not find the evidence is sufficient to rebut the *prima facie* case, then the *prima facie* case still exists and the privilege is lost." *Id.*

On the other hand, the Eleventh Circuit has not resolved the question of what constitutes a *prima facie* showing. But courts in this District have recognized that it "is often understood to require probable cause to suspect the perpetration or attempted perpetration of a crime or fraud." *See Stein*, 2023 WL 2585033, at *3 (quotation marks omitted); *White Cap, L.P. v. Heyden Enters., LLC*, No. 23-CV-14248, 2024 WL 5473666, at *7 (S.D. Fla. Oct. 25, 2024). "As a practical matter, there is little difference" between the *prima facie* test and the probable cause test. *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984). "Both require that a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Id.*; *see also In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 n.11 (5th Cir. 1982) (recognizing about the *prima facie* test and the probable cause test that, "while the courts phraseology is different, its approach was the same"); *cf. Carroll v. United States*, 267 U.S. 132, 161 (1925) (noting that probable cause exists "[i]f the facts and circumstances . . . are such as to warrant a man of prudence and caution in believing that the offense has been committed").

To satisfy the second prong of the test, a party must show that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it. *Id.* "Courts have enunciated slightly different formulations for the degree of relatedness necessary to meet that standard," *In re Grand Jury Investigation*, 842 F.2d 1223, 1227 (11th Cir. 1987), and the

Eleventh Circuit has historically "taken a less restrictive view of the degree of relatedness required," *In re Grand Jury Subpoena*, 2 F.4th at 1350. Instead of focusing on whether the advice was in furtherance of the crime or fraud, the Eleventh Circuit has looked to whether the party "has shown a sufficient nexus between the alleged criminal or fraudulent activity and the communications at issue to pierce the attorney-client privilege," like if "the advice advanced, or at the very least the client intended the advice to advance, the client's criminal or fraudulent conduct." *Id.* at 1351 (alterations adopted, quotation marks omitted). But either way, "the different formulations share a common purpose — identifying communications that should not be privileged because they were used to further a crime or a fraud." *In re Grand Jury Investigation*, 842 F.2d at 1227.

The Supreme Court has held "that *in camera* review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception." *United States v. Zolin*, 491 U.S. 554, 574 (1989). But "before a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." *Id.* at 574–75. The required showing is not "a stringent one;" in fact, the Court explained that "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome" attorney-client privilege. *Id.* at 572.

"Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* (citation and quotation marks omitted); *Cox*, 17 F.3d at 1417, *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994); *Tindall*

*v. H & S Homes, LLC*, 757 F. Supp. 2d 1339, 1358 (M.D. Ga. 2011) ("While the preliminary evidence presented by Plaintiff may not quite reek of fraud, there is a discernable stench present, and this is enough probable cause to warrant a further search of the relevant documents."). The "threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." *Zolin*, 491 U.S. at 575. "Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Id.* at 572; *Cox*, 17 F.3d at 1417.

## III. DISCUSSION

### A. Waiver of Attorney-Client Privilege

Defendant contends that Plaintiffs' current counsel failed to take reasonable steps to prevent the disclosure of attorney-client communications, did not act promptly to remedy the initial disclosure, and subsequently produced the same communications a second time to both counsel and the Court without taking any steps to correct that second disclosure. *See* ECF No. [189] at 7. The Court agrees and finds that Plaintiffs have failed to carry their burden under Rule 502(b). The record, viewed as a whole, establishes that Plaintiffs failed to take reasonable steps to prevent disclosure and failed to take reasonable steps to rectify the disclosure once the issue was identified.

At the outset, the Court does not disregard the volume and complexity of the ESI production. Plaintiffs represent that the production involved millions of extracted records, numerous search terms, and a complicated review process in which some communications concerning prior counsel had already been disclosed to third parties and therefore were not withheld as privileged. The Court recognizes that large-scale ESI review involves practical challenges and emphasizes that Rule 502(b) requires reasonableness, not perfection.

Plaintiffs, however, have not shown that the procedures used were reasonable as applied to

11

the attorney-client communications at issue. *See Thermoset Corp.*, 2015 WL 1565310, at *7 (placing burden on producing party to demonstrate reasonable precautions). The communications here were not merely stray documents hidden in an undifferentiated production. The communications were produced in folders corresponding to Requests Nos. 66 and 67, which specifically sought communications between Ms. Hominski and her former counsel. At least one thread identified counsel as "Stuart Ratzan lawyer." Those facts are critical to this inquiry. Communications with an individual expressly identified as counsel, located in folders corresponding to requests seeking attorney-client communications, are facially privileged in a way that should have triggered attorney review. *See Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 700 (S.D. Fla. 2009) (finding waiver where privileged nature of documents was readily apparent).

Plaintiffs' explanation focuses primarily on the mechanics of ESI extraction and search-term processing. That explanation does not establish the level of reasonableness Rule 502(b) requires. Courts consistently hold that reliance on keyword searches, vendor processing, or automated filtering without meaningful attorney oversight is insufficient to demonstrate reasonable steps. *See Victor Stanley*, 250 F.R.D. at 260–63. Plaintiffs do not identify a specific attorney review protocol designed to prevent disclosure of direct communications with counsel. They do not identify quality-control measures, sampling procedures, or a post-search privilege review sufficient to explain why facially identifiable attorney-client communications were produced in response to requests for attorney communications.

The timing of Plaintiffs' remedial efforts further supports waiver. Defendant notified Plaintiffs on October 2, 2025 that the production contained "attorney-client communications." Plaintiffs responded the same day but did not then request return, sequestration, or destruction of

12

any direct attorney-client communications.  Plaintiffs contend they understood Defendant's notice to concern third-party communications relaying counsel's advice, not direct communications with counsel.  That explanation provides some context, but it does not eliminate Plaintiffs' burden.  Once Defendant advised that attorney-client communications had been produced, Plaintiffs had an obligation to take reasonable remedial steps.  *See* Fed. R. Evid. 502(b)(3); Fed. R. Civ. P. 26(b)(5)(B).

Plaintiffs, however, did not issue a claw back demand until October 15, 2025 — after the matter was raised again during the October 14 meet-and-confer and after Defendant had provided examples.  The October 17 production of the same privileged documents on a USB drive further weighs against Plaintiffs.  They contend the USB drive was sent to assist the Court and to provide Defendant with an unzipped version of the same production set so the Parties and the Court could address ESI usability issues.  The Court does not find the transmission was necessarily made for the purpose of intentionally waiving privilege.  But Rule 502(b) does not turn solely on subjective intent.  *See* Fed. R. Evid. 502(b).  By October 17, Plaintiffs had already asserted a claw-back request.  At that point, reasonable remedial action required ensuring that the same allegedly privileged communications were not transmitted *again* to Defendant without redaction or segregation.  The re-transmission of the same materials after asserting privilege demonstrates that Plaintiffs had not implemented adequate remedial procedures, and the failure to claw-back that second production from Defendant further shows that Plaintiffs did not take reasonable steps to rectify the disclosure.

But the inadequacy of the steps Plaintiffs took to rectify the disclosure does not end there.  After Plaintiffs were on notice that their discovery production included attorney-client privileged communications in October 2025, they failed to take any steps to determine whether their ESI

production contained additional privileged communications, which it did. Rather than proactively run search terms within their ESI production to determine whether additional privileged communications were among those produced to Defendant, Plaintiffs sat back and did nothing. Instead, Wayfair once again unearthed additional inadvertently produced attorney-client communications within the production, notifying Plaintiff's counsel of this on January 7, 2026 and again on January 15, 2026. *See* ECF No. [231-1] (advising Plaintiffs' counsel that "in addition to the attorney client communications produced and then reproduced to both [Defendant] and the Court, which [Defendant] previously identified, Plaintiff's production also includes communications between Plaintiff Nicholas Hominski and 'Stuart Ratzan lawyer,' as well as communications between Plaintiffs Nicholas and Kayla Hominski.'"); ECF No. [231-4] ("Please be advised that, as we continue our review of Plaintiffs' production of documents, we have now identified **over 30 additional attorney-client communications**, both with prior counsel and with current counsel.") (emphasis in original). Thus, for four months, Defendant had these additional attorney-client communications in its possession; yet, Plaintiffs — knowing since October that they had mistakenly produced some privileged communications — made no effort to determine if there were additional privileged documents within the production. And, importantly, these additional communications are clearly labeled as being between Plaintiffs and either "Mario Giommoni" or "Stuart Ratzan lawyer," *see* ECF No. [231-6], which means that a simple word search within the ESI production for "Giommoni" or "Ratzan" would have located them. Under these circumstances, Plaintiffs' passive approach of waiting to see what Defendant finds in the production and then sending a claw-back notice in response to Defendant's discovery of additional privileged communications is a far cry from taking adequate steps to rectify the inadvertent disclosure. *See Penrod Bros.*, 2025 WL 1560947, at *3.

14

With that said, the Court does not find a wholesale subject-matter waiver of every communication between Plaintiffs and their counsel is appropriate here.  Rule 502(b) addresses whether disclosed communications remain privileged after inadvertent production.  Rule 502(a), by contrast, governs whether a waiver extends to undisclosed communications and requires an intentional waiver and a fairness determination.  *See* Fed. R. Evid. 502(a); *Preferred Care Partners*, 258 F.R.D. at 698–99.  Defendant does not argue that Plaintiffs intentionally disclosed the privileged communication nor does it seek broad subject-matter waiver; Defendant instead asks the Court to find waiver for those communications already identified by Defendant.  *See* ECF No. [231] at 4 (asking the Court to conclude that "Plaintiff's claim that the *identified* attorney-client communications and spousal communications are privileged has been waived under Rule 502(d)" and to "compel production of *these* communications") (emphasis added).  While Plaintiffs have waived privilege as to the communications they produced on September 23, 2025, the Court declines to extend that waiver to all undisclosed communications on the same subject matter.  Accordingly, Defendant's Motion, **ECF Nos. [189] and [231],** is **GRANTED** to the extent that Plaintiffs have **WAIVED** any claim to privilege in the communications included in their September 23, 2025 ESI production.

## B.  Crime-Fraud Exception

Defendant next contends that Plaintiffs' former counsel engaged in witness tampering through text communications with Plaintiff, attempting to suborn perjury — conduct that, if established, would fall within the crime-fraud exception.  *See* ECF [189] at 13.  The Court rejects this contention and reaches a different conclusion.

The Court starts its analysis with the notion that "the existence of a crime or fraud does not create a blanket evisceration of the privilege; it only extinguishes the privilege for those

communications and documents connected to the crime or fraud." *See Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, 519 F. Supp. 3d 1184, 1222 (S.D. Fla. 2021). And, as explained above, to "determine whether the crime-fraud exception applies to an otherwise privileged communication," "there must be [first] a prima facie showing that the *client* was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice," and "[s]econd, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *In re Grand Jury Subpoena*, 2 F.4th at 1345.

Throughout Defendant's Motion, it repeatedly refers to the conduct of Plaintiffs' former counsel — not the conduct of Plaintiffs themselves — as the conduct that forms the basis for the crime-fraud exception. *See* ECF No. [189] at 13 ("The evidence here supports a prima facie showing that Plaintiffs' former counsel engaged in witness tampering in an effort to suborn perjury – conduct that falls squarely within the crime-fraud exception."); ECF No. [187] at 15 ("Attorney Ratzan's and Attorney Giommoni's conduct also satisfies the second prong of *Schroeder*."); ECF No. [187] at 17 ("The communications at issue bear directly on whether Plaintiffs' prior counsel used the attorney-client relationship to further fraudulent objectives."). While the Eleventh Circuit has clearly held that the crime-fraud exception "overcome[s] attorney work product protection when the attorney or law firm was engaged in the crime or fraud but the client was not," *Drummond Co., Inc. v. Conrad & Scherer, LLP,* 885 F.3d 1324, 1337 (11th Cir. 2018), neither Party cites an Eleventh Circuit decision extending this principle to the attorney-client privilege. That is, neither Party directs the Court to any cases within the Eleventh Circuit finding that "an attorney's fraud [or criminal] conduct without the client's involvement implicates the crime-fraud exception to the

16

attorney-client privilege." *Diamond Resorts,* 519 F. Supp. 3d at 1222.   And this Court's independent research, as was also the case in *Diamond Resorts,* has uncovered no such authorities.

Defendant directs the Court to various cases from the Southern District of New York and other courts extending this concept to instances of attorney wrongdoing without client involvement. [1]  *See* ECF No. [187] at 13 (citing *Chevron Corp. v. Salazar,* 275 F.R.D. 437, 452–54 (S.D.N.Y. 2011) (collecting cases)).  However, other courts have declined to extend the crime-fraud exception to pierce the attorney-client privilege for instances of attorney wrongdoing without evidence of client involvement.  *See In re Grand Jury Proc.,* 417 F.3d 18, 23 (1st Cir. 2005) ("[T]he privilege is not lost solely because the client's *lawyer* is corrupt as was certainly true in this case since the lawyer suborned Client A's perjury.  The crime-fraud exception requires the *client's* engagement in criminal or fraudulent activity and the *client's* intent with respect to attorney-client communications.") (emphasis in original).  And other courts have distinguished

---

[1]  Defendant cites several other out-of-circuit authorities applying the crime-fraud exception in cases involving substantial independent evidence of ongoing fraudulent schemes and two of those authorities required evidence that the client was aware of, or participated in, the alleged fraud.  *See*, *e.g.*, *United States v. Rivera*, 837 F. Supp. 565, 568–69 (S.D.N.Y. 1993) (finding probable cause of "wholesale immigration fraud" based on extensive documentary evidence seized from law offices and requiring evidence that clients were aware of and participated in the scheme); *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 53–56 (S.D.N.Y. 1989) (applying the exception based on an extensive evidentiary record involving criminal fraud convictions, sham corporations, concealment schemes, and payoff arrangements, with evidence connecting the clients to the misconduct).  Another of the authorities on which Defendant relies likewise required proof that the client intended to further a crime or fraud through the privileged communications and rejected application of the exception where the government failed to make that showing.  *See In re Sealed Case*, 107 F.3d 46, 49–52 & n.2 (D.C. Cir. 1997) (rejecting application of the crime-fraud exception absent evidence that the client intended to further unlawful conduct through the communications, while noting that "in nearly all cases, a client's innocence will bar application of the crime-fraud exception").  Although the court acknowledged the possibility of "rare cases" in which an attorney's criminal intent alone could defeat privilege, it expressly emphasized that the case before it was not such a circumstance.  *Id.* at 52 n.2.  The remaining authority is likewise materially distinguishable because it involved substantial independent evidence corroborating ongoing criminal conduct and communications directly tied to advancing or concealing that conduct.  *See In re Impounded Case (Law Firm)*, 879 F.2d 1211, 1213–15 (3d Cir. 1989) (holding that the crime-fraud exception may apply where the attorney, rather than the client, is the target of the investigation, but emphasizing that if the client is not implicated in criminal conduct, the privilege remains intact unless the documents are pertinent to the alleged criminal activity of counsel alone).  None of those circumstances are present here.

between the intent necessary to establish the crime-fraud exception for attorney-client communications versus the intent needed to establish the exception for attorney work product. *See In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005) (explaining that the application of the crime-fraud exception to the attorney-client privilege requires evidence of "the client's knowledge and intentions" "because the client is the holder of the privilege" whereas application of the crime-fraud exception to the work-product doctrine requires evidence that "the attorney in question was aware of or a knowing participant in the criminal conduct."). Absent further guidance from the Eleventh Circuit on this issue, the Court declines to extend the crime-fraud exception to attorney-client communications where the only purported evidence of criminal or fraudulent conduct involves the lawyer without any evidence that the "*client* was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that [the client] was planning such conduct when he sought the advice of counsel, or that [the client] committed a crime or fraud subsequent to receiving the benefit of counsel's advice." *In re Grand Jury Subpoena*, 2 F.4th at 1345.

But even if the crime-fraud exception for attorney-client communications were properly extended to scenarios involving criminal or fraudulent conduct solely by the attorney, Defendant has not made the requisite *prima facie* showing of a nexus between a crime and the specific communications and documents at issue here. The Court acknowledges that the crime-fraud exception is a narrowly construed limitation on the attorney-client privilege and must be applied with caution to prevent parties from using it as a pretext for "groundless fishing expeditions." *See Cox*, 17 F.3d at 1416. Because the exception results in the disclosure of otherwise privileged communications, courts require a meaningful evidentiary showing before intruding into the privilege. *See Zolin*, 491 U.S. at 574–75.

Defendant's theory is premised on alleged violations of federal witness tampering, 18 U.S.C. § 1512(b), and subornation statutes, 18 U.S.C. § 1622. Under 18 U.S.C. § 1512(b), a person commits witness tampering if he "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so," with intent to influence or alter testimony in an official proceeding. Likewise, subornation of perjury under 18 U.S.C. § 1622 requires proof that a person procured "another to commit [] perjury." These are not generalized notions of influence — they require evidence of corrupt intent, improper persuasion, and, critically, an effort to induce false testimony.

Defendant's crime-fraud theory rests primarily on two categories of evidence. First, Defendant relies on a text message from Ratzan to Ms. Hominski stating, "Remember Nick waited until fire was out and gave it time to cool down." Defendant characterizes this message as an instruction to adopt a false narrative inconsistent with statements made by Greg Ferraro and Kayla Ferraro to the Fire Marshal shortly after the incident. Second, Defendant relies on Ms. Hominski's voice notes to a friend describing a Zoom meeting with former counsel and counsel's anticipated meeting with the Ferraros, including statements that counsel would "spend time explaining" the case theory, show videos, discuss what the CPSC found, and "massage it a little bit."

The Court does not minimize Defendant's concerns. But the crime-fraud exception requires more than concern, suspicion, or adversarial conjecture. The Eleventh Circuit requires a *prima facie* showing that (1) the client was engaged in or planning criminal or fraudulent conduct when seeking counsel's advice, or committed such conduct after receiving the advice, and (2) the attorney-client communications were in furtherance of that conduct. *See In re Grand Jury Investigation*, 842 F.2d at 1226–27. This showing must be based on evidence that would reasonably establish the elements of some violation — not merely conjecture or speculation. *See*

19

*In re Grand Jury Subpoena*, 2 F.4th at 1345.

On this record, Defendant has not met that burden. With respect to witness tampering under § 1512(b), the Defendant has not identified any evidence showing that counsel intended to use intimidation, physical force, or threats against Kayla or Greg Ferraro to influence their testimony. *See* 11th Cir. Criminal Pattern Jury Instructions, 059.2 (explaining that witness tampering under 18 U.S.C. § 1512(b) requires proof that the defendant used intimidation, physical force, or threats against a witness and did so knowingly and intending to influence, delay, or prevent the witness's testimony). Nothing in the cited communications suggests that Plaintiffs' counsel was going to use intimidation, threats, or physical force to induce the Ferraros to withhold or falsify testimony. Similarly, there is no evidence that any witness was influenced to deviate from the truth, evade testimony, or alter evidence in a manner that would support the elements of subornation of perjury under § 1622.

Indeed, the cited text message is not sufficient, standing alone or considered with the other evidence, to establish a *prima facie* showing of fraud, witness tampering, or subornation of perjury. The message may be read, as Defendant urges, as an attempt to reinforce a preferred factual narrative. But it may also be read as counsel reminding the client of the client's own account based on prior discussions. No other context is provided for this message and the Court cannot infer criminal or fraudulent intent from an isolated statement that is susceptible to multiple reasonable interpretations. *See Cox*, 17 F.3d at 1417.

Further, Ms. Hominski's voice notes do not establish the requisite *prima facie* showing for the crime-fraud exception. Defendant's theory depends on construing the voice notes as evidence that former counsel intended to persuade the Ferraros to abandon truthful testimony and adopt a false narrative. While a party invoking the exception may rely on circumstantial evidence and

20

reasonable inferences, the evidence must still rest on a factual foundation and, if believed, must be sufficient to establish the elements of an ongoing or contemplated violation. *See In re Grand Jury Subpoena*, 2 F.4th at 1345–46. The voice notes do not meet that standard.

Both Greg Ferraro and Kayla Ferraro were deposed after the purported meeting with Plaintiffs' former counsel. *See* ECF Nos. [198-8] and [198-9]. Defendant examined both witnesses under oath. *See id.* During Kayla Ferraro's deposition, Defendant asked what she had done to prepare. ECF No. [198-8] at 4. She testified that she and her husband had dinner with Plaintiffs' counsel the night before and that counsel "just kind of walked us through what to expect" because it was their first deposition. *Id.* When asked whether she reviewed any documents, she explained that counsel showed them "a couple of documents," including prior police statements, "but nothing in depth." *Id.* Defendant then asked about the statements discussed with counsel during dinner. *See id.* Kayla Ferraro responded: "Nothing about those things. **We really just walked him through kind of what our recollection was of the night and our truth behind all of it.**" *Id.* (emphasis added). Defendant also asked whether she had spoken with Mr. or Mrs. Hominski about the deposition, and she answered: "**No.** Just that they're aware that we're having it, but no." *Id.* (emphasis added).

Defendant likewise deposed Greg Ferraro under oath. *See* ECF No. [198-9]. Greg Ferraro testified that he met with counsel before the deposition and, when asked whether he reviewed documents during that meeting, he stated: "**Just the reports**[.]" *Id.* at 4 (emphasis added).

This sworn testimony does not show that Plaintiffs' counsel coached the witnesses, pressured them, instructed them to alter their testimony, or directed them to testify falsely. To the contrary, both witnesses described the meeting as a routine deposition-preparation session involving a review of prior statements, reports, and their recollection of events. Kayla Ferraro

expressly testified that the discussion concerned "our recollection" and "our truth behind all of it." ECF No. [198-8] at 4.  Nothing in the deposition testimony suggests that counsel instructed either witness to repudiate prior truthful statements or adopt testimony counsel knew to be false.

That testimony is particularly significant because Defendant's theory rests on the premise that the preparation meeting was used to manipulate witness testimony.  Yet the record Defendant itself developed from the witnesses does not support that premise.  Defendant has not shown that the statements were accompanied by instructions to lie, directions to repudiate truthful prior statements, or efforts to procure false testimony.  At most, the evidence reflects that counsel met with the witnesses and reviewed documents, discussed prior statements, and explained the deposition process.  Based on the foregoing evidence, no "prudent person [would] have a reasonable basis to suspect" that Plaintiffs' counsel perpetrated or attempted to perpetrate the crimes of witness tampering, subornation of perjury, or fraud.  *In re Grand Jury Subpoena*, 731 F.2d at 1039.

Thus, the present record does not establish that Plaintiffs' counsel — much less Plaintiffs — were engaged in or planning criminal or fraudulent conduct when seeking counsel's advice, or that they committed such conduct after receiving counsel's advice.  *See In re Grand Jury Subpoena*, 2 F.4th at 1345.  Nor does the record show that counsel's assistance was obtained in furtherance of any such conduct.  *See id.*  Because the voice notes and text messages, considered together with the deposition record, do not establish a *prima facie* showing of witness tampering, subornation of perjury, or fraud, the Court declines to pierce the attorney-client privilege under the crime-fraud exception.  *See Cox*, 17 F.3d at 1416.

Since Defendant has failed to satisfy the *prima facie* standard required to pierce the attorney-client privilege under the crime-fraud exception, no evidentiary hearing is warranted.  *See*

22

*Rubinstein v. Keshet Inter Vivos*, No. 17-61019-CIV, 2019 U.S. Dist. LEXIS 240740, at 10 (S.D. Fla. Jan. 29, 2019) (finding that an evidentiary hearing is appropriate under the crime-fraud exception only when the movant makes a *prima facie* showing that the exception may apply).

For these reasons, the Motion, **ECF Nos. [189] and [231]**, is **DENIED** to the extent it seeks to compel attorney-client communications based on the crime-fraud exception. As a point of clarification, however, the Court notes that the text message from Ratzan to Ms. Hominski and Ms. Homniski's voice note were part of the September 23, 2025 ESI production. Even though the crime-fraud exception does not apply, as discussed in Section III(A) above, Plaintiffs have waived the right to assert privilege over any documents that were within that production, including the text message and voice note.

IV.     **CONCLUSION**

Accordingly, Defendant's Motion, **ECF Nos. [189] and [231]**, is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court finds that, under Rule 502(b), Plaintiffs have waived any privilege they held in the communications produced in their September 23, 2025 ESI production. However, the Court finds that Defendant has failed to show the applicability of the crime-fraud exception to those attorney-client communications Plaintiffs have otherwise withheld from production.

**DONE AND ORDERED** in Chambers in Miami, Florida on May 7, 2026.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record