**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CV-21590-ELFENBEIN

**KAYLA HOMINSKI**, *et al.*,

     Plaintiffs,

v.

**GUSAR, LLC**, *et al.*,

     Defendants.

_____/

**ORDER REGARDING DEPOSITION OF
<u>WAYFAIR'S CORPORATE REPRESENTATIVE</u>**

**THIS CAUSE** is before the Court on Plaintiffs Kayla Hominski and Nicholas Hominski's

("Plaintiffs") Notice of Hearing.  *See* ECF No. [261].  Through the Notice, Plaintiffs advised the

Court of several discovery disputes, including but not limited to (1) various issues involving the

deposition of Defendant Wayfair LLC's ("Wayfair") Rule 30(b)(6) corporate representative, Alexa

Reilly ("Ms. Reilly"), (2) Plaintiffs' request for documents concerning warnings, labels,

compliance data, and testing data from Wayfair through its corporate representative, and (3)

Plaintiffs' request for sanctions related to the deposition.  *See id.*  Defendant also filed a Response

to Plaintiffs' Notice of Hearing, together with materials and legal authority addressing the

discovery issues raised by Plaintiffs.  *See* ECF No. [273].  The Court conducted a discovery hearing

on May 8, 2026 (the "Hearing").  *See* ECF Nos. [258] and [280].  At the Hearing, Plaintiffs made

various oral motions, including an Oral Motion to Compel a Second Rule 30(b)(6) Deposition and

Document Production (the "Motion to Compel"), ECF No. [287], and an Oral Motion for Sanctions

pursuant to Rule 30(d)(2) (the "Motion for Sanctions"), ECF No. [288], both relating to the

deposition of Wayfair's Rule 30(b)(6) representative.  The Court heard argument from the Parties,

ruled on several issues on the record, but took the Motion to Compel and the Motion for Sanctions under advisement because it required additional information.  Specifically, the Court ordered Plaintiffs to submit a copy of the video recording of Wayfair's Rule 30(b)(6) deposition along with a supplemental notice identifying with specificity the portions of the transcript that reflect the allegedly <u>non-responsive,</u> rehearsed answers discussed at the Hearing.  *See* ECF No. [290]. Having reviewed the deposition transcript, ECF No. [266],  the video of the deposition, ECF No. [283-1], and the supplemental notice, ECF No. [293], and considered all of the arguments made at the Hearing, for the reasons explained below, Plaintiffs' Motion to Compel, **ECF No. [287]**, is **GRANTED in part and DENIED in part** and Plaintiffs' Motion for Sanctions, **ECF No. [288]**, is **GRANTED in part and DENIED in part**.

### 1.  Plaintiffs' Motion to Compel, ECF No. [287]

Starting with the Motion to Compel, Plaintiffs sought to compel Wayfair to: (a) produce a corporate representative with sufficient knowledge concerning topics 2, 4, 5, 6, 7, 11, 13, 14, 16, 20, 21, 22, 23, 24, 25, 29, 31, and 34 identified in Plaintiffs' Notice of Taking Deposition (the "30(b)(6) Notice"); (b) produce documents responsive to the requests in the 30(b)(6) Notice, specifically documents relating to warnings, labels, compliance data, and testing data; and (c) provide proper answers to the topics over the rehearsed answer and witness coaching objected to on the record.  Plaintiffs argued that Wayfair failed to provide a sufficiently prepared corporate representative on several noticed topics, including topics concerning warnings and labels, compliance data, testing data, recalled or similarly recalled products, the recommender engine, product safety, supplier information, and other matters identified in Plaintiffs' Rule 30(b)(6) Notice.  Plaintiffs also argued that Ms. Reilly gave rehearsed or non-responsive answers, lacked knowledge on material topics, and was improperly coached during the deposition.

Wayfair opposed the requested relief and argued that it produced a knowledgeable corporate representative, who serves as senior counsel for regulatory and government affairs and whose work focuses on product safety, regulatory compliance, and related issues. Wayfair further argued that Ms. Reilly was prepared, testified at length, and answered the noticed topics to the extent information was known or reasonably available to it and that a Rule 30(b)(6) witness is not required to testify with perfect recall or answer every question with the exactitude Plaintiffs desired. The Court will address each of the three arguments in turn.

A. Whether Wayfair's Corporate Representative Was Knowledgeable About The Noticed Topics

Broadly speaking, Plaintiffs argued that Wayfair's corporate representative was not knowledgeable about various topics noticed for deposition. While the Notice of Hearing identified topic numbers 2, 4, 5, 6, 7, 11, 13, 14, 16, 20, 21, 22, 23, 24, 25, 29, 31, and 34 as the specific topics on which Ms. Reilly had insufficient knowledge, Plaintiffs' argument at the Hearing focused solely on whether the witness had sufficient knowledge regarding the recommender engine on the Wayfair website (topics 5 and 29(c)), whether the witness could identify specific individuals or teams responsible for various corporate functions (the Court surmises Plaintiffs' counsel was referring to topics 2, 22, and 29(g)), and whether the witness could provide testimony about Wayfair's knowledge of flame-jetting issues (again the Court surmises this is topic 31). The Court will focus its analysis on the topics raised at the Hearing.

Pursuant to Rule 30(b)(6), a party may depose a corporation if it provides a "notice or subpoena" that "describe[s] with reasonable particularity the matters for examination." *See* Fed. R. Civ. P. 30(b)(6). The corporation must then "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf" and "may set out the matters on which each person designated will testify." *Id.* The Rule further requires that "[t]he

3

person designated must testify about information known or reasonably available to the organization." *Id.* Importantly, the corporation has a duty to prepare its corporate designees "'beyond matters personally known to [the] designee,' to all information reasonably available to the corporation, 'whether from documents, past employees, or other sources.'" *Fuentes v. Classica Cruise Operator Ltd, Inc.*, 32 F.4th 1311, 1321–22 (11th Cir. 2022) (quoting *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) and *Kartagener v. Carnival Corp.*, 380 F. Supp. 3d 1290, 1294 (S.D. Fla. 2019)). A corporation fails to satisfy its obligation to prepare the designee under Rule 30(b)(6), exposing it to sanctions, "[i]f the designee is not able to answer questions regarding the subject matter he was designated to testify about." *Id.* at 1322 (citing *Black Horse Lane Ass'n, L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000)). With that said, "[a]bsolute perfection is not required of a . . . [Rule 30(b)(6)] witness." *Id.* (quoting *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012)). If a designee cannot answer every question on a topic, that "does not necessarily mean that the corporation failed to comply with its obligation[s]." *Id.*

Starting with Ms. Reilly's knowledge regarding topics 5 and 29(c), which was largely the focus of Plaintiffs' argument at the Hearing, these topics requested the following information:

- Topic 5: "The entire process concerning Wayfair's usage of a recommender engine to the consumer/purchaser of its table top fire pit and Colson Brand Fire pits between 2019-present"

- Topic 29(c): "Wayfair Website Polices and Procedures: (c) Wayfair's 'recommender engine' and any other technology or processes involved in suggesting products to customers."

4

On these topics, Plaintiffs argued that Ms. Reilly could only provide high-level descriptions of how the recommender engine on the Wayfair website worked, but she repeatedly deferred to unidentified engineers when questions became more technical.  In support of their argument, they referred the Court to portions of her testimony in which she explained that she did not know the details of how the algorithm works.  Wayfair, in response, argued that the witness could answer many of the questions on this topic, such as general information about the recommender engine, but could not answer the information about the technical back-end engineering.  In further support of its position, Wayfair explained that the deposition of a corporate representative is not a memory test and does not require absolute perfection.

Upon review of the deposition transcript, the Court finds that Ms. Reilly had insufficient knowledge regarding the topics 5 and 29(c).  While the Court agrees that the witness had some general knowledge about how the recommender engine on the Wayfair website works, she could not answer specific questions about how it worked, repeatedly deferring to unknown engineers for the answers.  This is not a situation in which the witness knew almost all the answers on the topic but was stumped on one or two questions. And this is not a situation in which Ms. Reilly's lack of knowledge could be attributed to the corporation's lack of knowledge.  Put simply, Wayfair designated the wrong person to answer questions on this topic or, to the extent  Wayfair wanted to produce Ms. Reilly on this topic, it failed to adequately prepare her.  Indeed, below are several examples of Ms. Reilly's lack of knowledge about the recommender engine in which deferred to others within the corporation to answer the questions:

Q. "Are there different tiers and different funnels of that?" (referring to recommender engines).

A. "*I personally can't speak to exactly how a recommender engine works* but generally speaking, right, yes. You can get marketing emails from Wayfair that show you exactly other things you would be interested in, on certain product pages you might also have recommendations as well."

*See* ECF No. [266] at 264:16-25 (emphasis added).

Q. "[W]ould it be safe to say that there are different lanes or different funnels that this program would capture, so somebody that is buying a larger ticket item perhaps it might put what they're interested more on the back burner because they might think about it and they might return to the website?"

A. "*I would have to refer to sort of a tech person to talk how the back end logistics of that work* but I do know generally speaking on most products, right, we will recommend, make recommendations regardless of, right, what the customer is looking at."

*Id.* at 266:3-16 (emphasis added).

Q. "And so Wayfair itself creates kind of graphs within this program where it captures this data and it can kind of pinpoint what that person is looking for when they buy; is that your understanding?"

A. "Again, generally speaking, *although I would have to defer to a tech person* who actually helps implement this system for Wayfair *to specifically talk about what the specific algorithm was*."

*Id.* at 267:7-21 (emphasis added).

Q. "So when someone creates a new product on Wayfair and it goes into this Hedwig, Hedwig does a balancing act where obviously if it's a new product they

don't know how many people previously clicked on it so they would look at a prior product to get similar products to generate that type of graphic, do you understand that?"

A. "Again, I'm not an engineer *so I can't speak to exactly how the algorithm works in different scenarios*."

*Id.* at 268:22-269:8 (emphasis added).

Q. "And how – how would you as you sit here today – walk us through how Wayfair would determine what products are complementary or frequently bought when a consumer goes on its webpage, how does the recommender engine work for that?

A. "Again, I'm not the engineer that creates the algorithm *so I couldn't speculate on that*."

*Id.* at 276:19-277:1-3 (emphasis added).

Q. "Which systems, if you know, RecNet, Hedwig, Visual Complements, or MARS, which of those systems was in place during 2022 and 2023 at the time this fire pit was purchased by the Hominskis, do you know?

A. "I'm not the engineer so *I would have to defer to an engineer*."

*Id.* at 277:4-11 (emphasis added).

Q. "[C]an you tell me which engineers are responsible for recommender search engines and that you keep reference [*sic*] them, who is responsible, what team is responsible for that?"

A. "I would have to go look for the appropriate engineering team."

Q. "Do you know what team? You don't know what team?"

A. "Off the top of my head *I'm not sure*."

7

*Id.* at 278:15-279:2 (emphasis added).

Q. "And just for my own purposes is that AI driven now? Things are all AI these days. Do you know?

A. "Again, *I would have to refer you to the right engineers* that work on the –"

Q. "Okay. And do you know who they are again?

A. "*Not off the top of my head.*"

*Id.* at 279:12-20 (emphasis added).

Ultimately, Plaintiffs suspended this line of questioning during the deposition because Ms. Reilly could not answer the questions with any level of specificity. Even though Wayfair was on notice that Plaintiffs intended to ask questions about "[t]he entire process concerning Wayfair's usage of a recommender engine to the consumer/purchaser of its table top fire pit and Colson Brand Fire pits between 2019-present" and "Wayfair Website Polices and Procedures," specifically "(c) Wayfair's 'recommender engine' and any other technology or processes involved in suggesting products to customers," Wayfair did not produce a designee who was prepared to answer questions on these topics. Accordingly, as further explained below, Wayfair will be required to sit for a second deposition and produce a witness who can testify about these topics with satisfactory specificity without deferring to engineers to answer the questions.

Next, Plaintiffs argued that Ms. Reilly was not prepared to testify because she could not identify employees responsible for various corporate functions. At the Hearing, Plaintiffs' counsel did not specify the topics at issue, but based on the Court's review of the 30(b)(6) Notice, it assumes that this argument is tied to topics 2, 22(a), and 29(g). These topics seek information about:

8

- Topic 2: "Each employee director, agent, and/or officer of Wayfair who was involved in designing, testing, approving warnings and labeling, and making the decision to manufacture, market, and sell Colson Brand Fire Pits and Table Top Fire Pits, their qualifications and training and individual roles for approving the warning, recommendations and labeling and decisions to manufacture, market and sell the Colson Brand Fire Pits and Table Top Fire Pits."

- Topic 22(a): "Wayfair's Product Safety Organization, Policies, and Procedures: (a) Leadership-Positions with Product Safety in Job Title or Job Description."

- Topic 29(g): "Wayfair Website Policies and Procedures: (g) Identity of most senior person overseeing and giving final approval including person's name, job title and job description."

In support of their argument at the Hearing, Plaintiffs' counsel pointed to specific instances in the transcript in which Ms. Reilly could not identify specific individuals or their job title. For example, when asked whether to identify "any individual at Wayfair that had formal education, training, or professional certification in fire safety in 2022 and 2023," Ms. Reilly answered: "Not at Wayfair. We would expect our suppliers to be knowledgeable about their products and the products that they sell." *Id.* at 98:21-99:2. In response to a follow-up question asking whether the witness can "identify any individual employee with such qualifications?" the witness said "No." *Id.* at 99:3-5. Unlike the recommender engine questions, here, Ms. Reilly's answer did not indicate a lack of preparation for the deposition or lack of knowledge. Rather, she affirmatively testified on behalf of Wayfair that it cannot identify anyone who works at Wayfair with such qualifications. That is the company's official answer to that question and nothing more was required.

Plaintiffs also take issue with Ms. Reilly's inability to identify the title and role of Mackenzie Fazekas, an individual she testified was an employee at Wayfair. *Id.* at 127:2-12. This lack of knowledge falls into the "memory test" category, and as the Eleventh Circuit has explained a Rule 30(b)(6) deposition is not memory test and absolute perfection is not required. *Fuentes*, 32 F.4th at 1322. As a result, Ms. Reilly's inability to answer this very specific question as to someone's job title does not deem her unprepared to testify. Similarly, Plaintiffs argue Ms. Reilly was unprepared when asked to provide the specific "labs and specialists" that Wayfair "consulted with on table top fire pits, particularly the one in this particular case." *Id.* at 107:14-24. In response, Ms. Reilly explained that this consultation was 10 years ago, so she could not provide the specific names of the labs Wayfair consulted with but noted that they have "a number of lab partners that" Wayfair "work[s] with on a very consistent basis." *Id.* at 107:14-24. The Court finds that her isolated inability to recall the specific names of labs and specialists Wayfair used in 2016 is not the sort of lack of preparation that suggests the witness was generally unprepared to testify on the topic.

And as a final example of Ms. Reilly's lack of knowledge about employees responsible for various corporate functions, Plaintiffs point out that Ms. Reilly failed to identify anyone from the engineering team who would have information about the recommender engine. As the Court already determined above, the witness was unprepared to answer any specific questions involving the recommender engine, including but not limited to the engineering team (or any members of the engineering team) involved with this process, which ties into topic 29(g).

In sum, the Court agrees that Wayfair did not provide a witness who was adequately prepared to testify as to topics 5, 29(c), and 29(g). As to the other topics of inquiry, at the Hearing, Plaintiffs did not identify any other portions of the transcript that suggest Wayfair failed to prepare

its designee to testify about those topics, other than pointing to isolated questions and answers in a 342-page deposition transcript. "Absolute perfection is not required of a . . . [Rule 30(b)(6)] witness." *Fuentes*, 32 F.4th at 1322. A corporation does not fail to comply with its obligations in a Rule 30(b)(6) deposition if a designee cannot answer every question on every topic during a seven-hour deposition. *Id.* On this record, the Court declines to find that Wayfair failed to prepare the witness as to any other topics of inquiry.

B.   Whether Wayfair Failed to Produce Responsive Documents at the Deposition

Next, Plaintiffs argue that Wayfair failed to produce documents that were requested in the 30(b)(6) Notice. Specifically, Plaintiffs argue that they requested documents relating to warnings, labels, compliance data, and testing data, but Wayfair failed to produce them at the deposition, despite having such records. Wayfair, on the other hand, argues that Ms. Reilly's testimony was taken out of context and all responsive information was previously produced within a spreadsheet that was the subject of a prior discovery hearing. And as to testing documents specifically, Wayfair explained that the testing documents to which Ms. Reilly referred were produced and marked as Exhibit 20 to her deposition.

As noted above, Plaintiffs specifically contend that Wayfair failed to produce warnings, labels, compliance data, and testing data at the deposition. The Court's review of the transcript reveals conflicting information as to what documents Wayfair maintains, leaving uncertainty as to whether documents should have been produced. Ms. Reilly testified that, as part of its framework of compliance protocols, Wayfair asks its suppliers a "series of questions" "including product safety and regulatory questions" and Wayfair "will also collect documents where necessary for that as well in order to understand all of the – the confirmed safety aspects, make sure that every product meets all government mandated regulations." *See* ECF No. [266] at 37:1-25. It is unclear

11

to the Court from this testimony what types of documents Wayfair collects from its suppliers and whether such documents have been produced. Although Wayfair argued that Ms. Reilly's testimony was taken out of context and that all information was already produced on the spreadsheet, the Court is not so certain that the documents she referred to during this portion of her testimony consist of the same information within the spreadsheet. As Wayfair will be required to sit for a second deposition, at that deposition, Wayfair **SHALL** produce any documents it collects from its suppliers as Ms. Reilly testified about on page 37 of her deposition, to the extent those documents have not already been produced. If Wayfair produces additional documents, Plaintiffs will be permitted to ask questions related to that belated document production. If Wayfair takes the position that it previously produced all such documents to which Ms. Reilly referred on page 37, the witness will be prepared to explain this and answer questions accordingly.

The same is true for the compliance data. The Court is uncertain as to whether Ms. Reilly's testimony on this subject relates to information within the spreadsheet that Wayfair already produced or something else. Ms. Reilly testified that Wayfair maintains compliance data from its suppliers before the product goes live on its website and that such information and "back end data is stored in tables, GBQ tables so not necessarily a document but information they can pull." *Id.* at 50:22-51:12. Specifically, she agreed that Wayfair can "provide the end tables for the compliance data" that "Gusar provided" to Wayfair in 2022. *Id.* at 51:13-16. To the extent that Wayfair has not produced this specific compliance data, Wayfair **SHALL** produce the information at the second deposition of its corporate representative and Plaintiff will be entitled to ask questions about any belatedly produced documents. To the extent that Wayfair takes the position that this information is contained within the spreadsheet, the witness will be prepared to testify and answer any questions on this topic.

Next, Plaintiffs state that Wayfair has the specific warning labels from Gusar but failed to produce them at the deposition. Ms. Reilly testified that "Wayfair would have had all the warnings and information that Gusar provided to us." *Id.* at 182:2-20. When asked whether Wayfair had copies of the instructions and warnings that were provided with the product and the packaging for the subject product, Ms. Reilly's answer was evasive as she testified that Wayfair "would have had anything Gusar provided to [Wayfair] at the time per [its] protocols." *Id.* Because the witness did not directly answer whether Wayfair has the specific warning labels and packaging among the documents that Wayfair received per its protocols, it is unclear to the Court whether Wayfair indeed received this information from Gusar in the first place, potentially triggering an obligation to produce such warning labels and packaging. Accordingly, to the extent Wayfair has this information in its custody, control, or possession, at the second deposition, Wayfair **SHALL** produce any warning labels and packaging for the fire pit and Plaintiffs will be entitled to ask questions about such belatedly produced documents. Again, to the extent Wayfair previously produced this information in discovery, the witness will be prepared to explain that and answer questions accordingly.

Regarding the testing documents, the Court agrees with Wayfair that it timely produced the testing data to Plaintiff, so there is nothing to be compelled in this category. In fact, during the deposition, Plaintiffs noted that the Intertek Test Report was marked as Exhibit 20 and that Wayfair produced it the night before the deposition. *Id.* at 217:16-218:6. Thus, Wayfair indeed complied with the request for documents insofar as testing documents are concerned.

C. <u>Whether Wayfair's Corporate Representative Gave Rehearsed Answers and Was Coached on the Record with Improper Objections</u>

On this point, Plaintiffs made two arguments: (1) the witness gave rehearsed answers that were not responsive to the questions asked and (2) Wayfair's counsel made improper speaking

13

objections throughout the deposition that were intended to coach the witness.  Given the acrimonious relationship between counsel in this case, the Court finds it appropriate to first review what objections can be lodged at a deposition versus those that cannot as this will serve as useful guidance for additional fact and expert witness depositions.

The Court starts its discussion with Rule 30(c)(2), which states, in relevant part:

> Objections. An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. *An objection must be stated concisely in a nonargumentative and nonsuggestive manner.* A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2) (emphasis added).  As "counsel are expected to conduct themselves in a professional manner during a deposition," "objections must be stated in a non-argumentative fashion." *Mitnor Corp. v. Club Condominiums*, 339 F.R.D. 312, 317 (N.D. Fla. 2021) (alterations adopted, internal citations omitted). Indeed, when a lawyer makes an argumentative objection, it improperly prolongs, disrupts, and frustrates deposition testimony, serving no purpose except for wasting time and resources given that a judge is not present to rule on the legal issues. *Id.*

Importantly, when an attorney lodges an objection, the attorney "must not suggest the attorney's preferred answer through [the] objection." *Id.* This is because the testimony obtained during a deposition should naturally come from the deponent "without suggestions from counsel." *Id.* (quoting *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012)).  These suggestive objections are known as "speaking objections" and are not permitted under Rule 30(c)(2), which requires that any objections "be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2).  Examples of forbidden speaking objections are those that "communicate to a

14

deponent his counsel's desired answer to a question," those "designed to prod the deponent to raise the same objection voiced by counsel," "to alert the deponent that the examiner is eliciting information harmful to the" represented party, and to "antagonize the examiner and interrupt the flow of the deposition." *Id.* at 317-18 (citing *Alexander v. F.B.I.*, 186 F.R.D. 21, 52-53 (D.D.C. 1998); *McDonough v. Keniston*, 188 F.R.D. 22, 24 (D.N.H. 1998); *Wright v. Firestone Tire & Rubber Co.*, 93 F.R.D. 491, 493 (W.D. Ky. 1982)).

An objection that is consistent with Rule 30(c)(2), on the other hand, is one that states "the basis of the objection and nothing more." *Id.* (quoting *Damaj v. Farmers Ins. Co.*, 164 F.R.D. 559, 561 (N.D. Okla. 1995)). For example, if an attorney asks an ambiguous question during a deposition, it would be appropriate to communicate the objection as follows: "Objection. Ambiguous." *Id.* at 318. This concise objection allows the examining attorney to clarify the question if he or she believes that to be appropriate. *Id.* And to the extent the examining attorney chooses to go forward with the question as phrased, the witness can answer the question if he or she understands it or can seek clarification from the examining attorney, as needed. *Id.* However, it would be inappropriate for the defending attorney to make a speaking objection or otherwise ask multiple questions of the examining lawyer to clarify the question. *Id.* at 318-19. And if the attorney defending the deposition believes the ambiguity needs clarification, counsel "must wait for cross-examination to attempt to address the ambiguity." *Id.* at 319.

While Rule 30(c)(2) requires an objection to be stated concisely and in a non-argumentative manner, it does not limit an attorney to stating "Objection. Form." *Vargas v. Fla. Crystals Corp.*, No. 16-CV-81399, 2017 WL 1861775, at *6 (S.D. Fla. May 5, 2017). "In actuality, the better practice is for the attorney, in a non-argumentative and non-suggestive manner, to briefly state the specific form problem, such as 'objection as to form, leading' or 'objection as to form, compound

question.'" *Id.* Such concise objections alert the examining attorney to a defect in the form of the deposition question, giving the attorney the opportunity to correct the defect and reformulate the question without coaching the witness. *Id.* But to otherwise object to "form" without identifying the defect does not alert the examining attorney to the specific defect in the question and instead allows the objecting attorney to come up with "numerous reasons why the form was improper months or years later in a motion to strike or exclude the deposition testimony." *Id.* That does not comport with the spirit of the rule either. And employing such an objection tactic (objecting to form without specifying the defect) later forces the trial court to rule on these issues when they could and should have been avoided with a concise, specific form objection followed by the examining attorney re-phrasing the question for the witness. *Id.* (citing *Henderson v. B&B Precast & Pipe, LLC,* No. 4:13-CV-528 (CDL), 2014 WL 4063673, *1 (M.D. Ga. Aug. 14, 2014)); *see also NGM Ins. Co. v. Walker Const. & Dev., LLC*, No. 1:11-CV-146, 2012 WL 6553272, at *2 (E.D. Tenn. Dec. 13, 2012) (explaining that any objection or answer based on the form of the question is waived if not made during the deposition and providing examples of form objections, such as leading questions, lack of foundation, assuming facts not in evidence, mischaracterization or misleading question, non-responsive answer, testimony by counsel, calls for speculation, asked and answered, and argumentative question) (citing *Harper v. Griggs,* No. 04–260–C, 2007 WL 486726, at *1–2, *2 n. 1 (W.D. Ky. Feb. 12, 2007)).

The deposition of a corporate representative under Rule 30(b)(6), like the one here, frequently leads to another issue and that is: what is the appropriate objection to lodge, if any, when the witness is asked questions that are not encompassed in the topics of inquiry listed in the notice of taking deposition? Before answering that question though, it is important to consider what it means to testify as the designated corporate representative under Rule 30(b)(6). A

corporate representative's testimony "represents the collective knowledge of the corporation, not of the specific individual deponents." *Mitnor Corp.*, 339 F.R.D. at 320. To that end, "[a] Rule 30(b)(6) designee presents the corporation's position on the listed topics.'" *Id.* (citation omitted). With that said, a deponent's status as a corporate representative does not change the rules regarding objections. *Id.* Thus, if an examining attorney asks a corporate representative a question that is not within the scope of the listed topics, "counsel cannot instruct the witness not to answer the questions solely because they exceed the scope of the designation." *Id.* (collecting cases). Instead, a designated corporate representative can state he or she lacks sufficient knowledge to answer the question, if that is the case, or can answer the question based on his or her personal knowledge regardless of whether it is beyond the scope of the listed topics. *Id.* at 321. If the latter occurs though and the witness answers based on personal knowledge, then "counsel 'may note on the record that answers to questions beyond the scope of the Rule 30(b)(6) designation are not intended as the answers of the designating party and do not bind the designating party.'" *Id.* (quoting *Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000)). Following that procedure, counsel may later file a pre-trial motion, asking the Court for a jury instruction that explains such answers are those of the individual witness and are not the admissions of the corporation. *Id.* (collecting cases); *see also Christie v. Royal Caribbean Cruises, Ltd.*, No. 20-22439, 2021 WL 2940251, at *4 (S.D. Fla. July 13, 2021) ("If a 30(b)(6) deponent is asked a question thought to be outside the scope of a notice, Defendants should have briefly asserted their objection and allowed the deposition to proceed.").

At a deposition, a rare occasion may arise when a lawyer instructs the witness not to answer the question. This instruction, however, should be used sparingly and only in three scenarios: (1) the question seeks privileged information or trade secret information, (2) "to enforce a court order,"

17

or (3) "to suspend a deposition for the purposes of filing a Rule 30(d)(3) motion related to improper harassing conduct." *Christie*, 2021 WL 294025 at *4.  However, it would be improper for a lawyer to instruct a witness not to answer a question based on relevance grounds or because the question was already asked and answered or, as noted above, it exceeds the scope of the notice of a Rule 30(b)(6) deposition.  *Mitnor Corp.*, 339 F.R.D. at 317, 320.  To sum it up then, "the Federal Rules of Civil Procedure 'do not permit attorneys representing deponents to (1) coach the client by raising rhetoric-filled objections designed to feed the deponent information or advice; (2) answer the substantive questions themselves, before the deponent has provided an under-oath substantive response; and (3) instruct the deponent to not answer questions in the absence of a legitimate privilege objection or a Court-ordered limitation on the subject matter.'"  *Christie*, 2021 WL 2940251, at *3 (quoting *United States v. Tardon*, 493 F. Supp. 3d 1188, 1247 (S.D. Fla. 2020)).

Now that the ground rules are in place, the Court turns to Plaintiffs' arguments about objections and rehearsed answers during the deposition of Wayfair's corporate representative.  The Court finds this issue to be a mixed bag.  Some objections were proper while some were improper speaking objections.  Some answers, which Plaintiffs characterized as "rehearsed" or "canned," were responsive to the questions and appropriate while others were not.  While the Court does not intend to rehash every objection and every answer of the seven-hour deposition, it will provide several examples of each, as these should be instructive for the second Wayfair deposition.

Starting with the objections, the following are examples of improper speaking and coaching[1] objections by Wayfair during the deposition:

---

[1] Plaintiffs also argued there was non-verbal coaching on several occasions.  The Court has reviewed those identified portions of the video deposition and was not able to discern any evident non-verbal coaching. While the witness did look at Wayfair's counsel as she was lodging several objections, the Court finds that it is quite common for a witness to look at whomever is speaking and finds that Wayfair's explanation as to why the witness looked at her — she was giving her counsel an opportunity to lodge the objection — is a plausible and logical explanation for any non-verbal eye contact.

- "It's the ASTM and the witness has answered, you don't like the answer" *See* ECF No. [266] at 73:24-25.

- "But if you want the witness to respond based on you're pulling up of the government of Canada's website on recalls you may go ahead and read the entire —" *Id.* at 84:14-22.

- "Objection. Again, it's beyond the scope and *Wayfair does not recall products.* To the extent you're referring to a government of Canada website that you are asking this witness about you can answer but you're beyond the scope." *Id.* at 85:1-6 (emphasis added).

- "Objection. Same as before, go ahead, *state the government of Canada says*." *Id.* at 86:4-5 (emphasis added).

- "For the record what has been marked as Reilly Exhibit 3 is a 370-page deposition transcript that the witness has testified she has not reviewed. Is there any part in particular? Would you like her to read the entire deposition transcript before you ask her questions?" *Id.* at 92:25 – P. 93:1-6.

- "Just because you don't like the answer does not mean that it's not responsive." *Id.* at 105:16-20.

- "To the extent that that misquotes what number 34 is because it does its fuel recommended for fire pits sold by Wayfair which is not fuel sold by Wayfair in 2026, is also not relevant to any of the allegations in this case." *Id.* at 138:14-19.

- "Objection. To be clear the witness did not write this" (even though the witness testified that she wrote the letter about which questions were being asked). *Id.* at 185:11-17.

- "I'm going to object. Before you show the witness I'm going to object because the witness would have no corporate knowledge of any of the injuries that Miss Hominski is claiming and it doesn't appear to be relevant to any – any company knowledge or matters upon which you would be examining." *Id.* at 188:1-25.

- Instructing witness not to answer the following question: "Do you – how many times do you think you've given me that answer to the questions I've asked you?" *Id.* at 206:21-23.

On the other hand, the Court finds that several of the objections about which Plaintiffs complain were appropriate, concise, and non-argumentative, such as objections to the form of the question or as beyond the scope of the noticed topics of inquiry (while allowing the witness to testify based on her personal knowledge).  The following are examples of such proper objections:

- "Objection to the extent that this is not a topic identified in the notice. The topic is fuel recommended for fire pits sold by Wayfair, not what is presently on Wayfair's website, it's outside the scope. You can answer but not binding on the corporation." *Id.* at 139:14-19.

- "Objection, form, and outside the scope of the notice but independently not on behalf of Wayfair you can answer if you know." *Id.* at 161:22-24.

- "Objection, form outside the scope. You can answer personal knowledge." *Id.* at 216:8-9.

- "Objection. Beyond the scope." "It's beyond the scope of the topics here" (while allowing the witness to answer). *Id.* at 238:1-10.

On balance though, the Court finds that Wayfair certainly had its fair share of inappropriate speaking objections during the deposition.  Such speaking objections unfairly impeded Plaintiffs'

ability to meaningfully conduct the deposition of Wayfair's corporate representative without improper interjections by Wayfair's counsel. The Court expects that the above guidance as to what is proper and improper will guide the Parties during the second deposition of Wayfair's corporate representative as well as any other remaining depositions.

Turning next to what Plaintiffs characterize as rehearsed answers, Plaintiffs argued that Wayfair's representative had a mantra that she repeated over the course of the deposition and that was often non-responsive to the questions asked. Specifically, Plaintiffs take issue with Ms. Reilly repeatedly testifying that Wayfair does not manufacture products, Wayfair has certain protocols and a framework in place for its suppliers, and Wayfair does not sell fuels. Plaintiffs have identified specific pages and lines from the deposition transcript to illustrate the point. The Court has reviewed the transcript and agrees that Ms. Reilly repeatedly gave non-responsive answers that repeated this theme, requiring Plaintiffs' counsel to ask the question multiple times until the witness finally answered it.

For example, at pages 15-17, Plaintiffs' counsel had to ask the same questions four times — whether Wayfair's website would recommend or show what fuels were suggested for the fire pit. In response to the first question, the witness responded that "Wayfair wouldn't make those recommendations" and "Wayfair doesn't sell fuels on [its] website," explaining that Wayfair has a "framework" for suppliers to provide the "necessary safety and compliance information for their products" and that the suppliers "would be responsible for making any recommendations for what fuels go with their products." *See* ECF No. [266] at 15:25-16:1. But the question was whether the Wayfair website recommends specific fuels for the fireplace, not whether Wayfair versus its suppliers come up with the recommendation or whether Wayfair sells fuels. As a follow up, Plaintiffs' counsel next asked whether the Wayfair website would suggest a fuel, and instead of

21

answering that question, the witness answered: "Again, Wayfair doesn't sell." *Id.* at 16:2-9. Notably, the question had nothing to do with selling fuels; it asked whether the website would suggest a fuel. In a third attempt, Plaintiffs' counsel asked if the witness knew whether recommended fuels "would show up on your website?" (referring to Wayfair's website), and the witness again responded that "[a]ny recommendations that would be for fuels would, again, be from Wayfair's suppliers" and then again explained the "framework" in place, including the suppliers' obligation to provide "all the content necessary including the fuel recommendations." *Id.* at 16:10-17:3. And, on the fourth attempt, when Plaintiffs' counsel asked point blank: "So does the Wayfair website generate fuel recommendations or not?" the witness finally answered the question in a responsive way by saying: "Again, there would be content on our website that says which fuels go with products, especially fuel using products, however, that would be the content that comes from our suppliers, Wayfair doesn't sell fuels." *Id.* at 17:7-12. It took Plaintiffs four questions to get a responsive answer.

Similarly, Wayfair evasively answered a question as to when it first became aware of the term "flame jetting," reverting to an explanation about its protocols and the framework it has "in place for the right compliance and safety standards to account, you know, for everything per product category." *Id.* at 28:8-20. The question, however, clearly asked for a timeframe and not anything else. Despite this, Plaintiffs' counsel had to ask three more follow-up questions to obtain a clear answer, which was "at least 2016." *Id.* at 28:21–29:11. Other examples in which Ms. Reilly reflexively testified that Wayfair does not write warning labels and that it is the responsibility of the suppliers to do so, regardless of whether that was responsive to the question, occurred at pages 66:19-67:10 (asking witness whether Wayfair ever consulted "Flikr as to the design and warning labels for the table top fire pit that was sold to Kayla Hominski") and 72:3-73:13 (asking witness

22

whether the warnings provided to Kayla Hominski "particularly advised of flame jetting"). Even when the witness was asked specifically whether the warnings "in this particular case advised Miss Hominski of flame jetting," the witness would not directly answer the question as to whether this specific warning was included, instead responding that "Gusar drafted and included all necessary warnings on their product." *Id.* at 74:16-22. The same occurred when asked: "So are you indicating that [Kayla Hominski] was informed of flame jetting with her product?" and the witness once again reverted to explaining that the "suppliers are responsible for the marketing content on [Wayfair's] website" and that Wayfair has "a framework in place for ensuring that all of the relevant standards are met." *Id.* at 87:9-21. Ultimately, the questions went unanswered.[2]

And in other instances, Ms. Reilly started off giving a non-responsive answer followed by a responsive one after a follow-up question. *Id.* at 117:5-118:17 (initially discussing the "framework" in place with suppliers and the lack of site visits to the manufacturing location when asked whether Wayfair knew the fire pit was manufactured out of "Mr. Colindo's mother's garage" and then, in response to a follow up, responding that she was "not aware of anyone [at Wayfair] being made aware of where the products exactly were being manufactured"). Although the Court saw other instances of such initially non-responsive answers followed by a responsive answer after follow up, the Court does not intend to itemize each instance in this Order. Suffice it to say, the transcript has numerous other instances.

However, there are also many instances in which the deponent's answers were responsive and appropriate to the questions asked. For example, Plaintiffs' counsel engaged in a line of questions regarding Wayfair's knowledge that Gusar had no experience writing warning labels at the time it signed the vendor agreement. *Id.* at 62:10-65:9. The witness repeatedly explained that

---

[2] This is not an exhaustive list as to all instances in which the witness answered questions about flame jetting warnings in a non-responsive fashion.

23

Wayfair's protocols ensure that a supplier has "enough expertise in the testing" and has "done the requisite work to ensure that their products meet all necessary compliance standards as issued by the government," so she could not "really verify" whether Gusar lacked any experience writing warning labels because Gusar demonstrated it met all Wayfair protocols, including the ASTM standard, which includes warnings, when it uploaded its products onto the website. *Id.* at 62:9-63:1-15. As another example, Wayfair was specifically asked to explain the "systems and protocols in place to make sure the warnings in the labels were accurate and complied with safety compliance" and the witness answered responsively, explaining those protocols. *Id.* at 68:22-70:15. While the latter may be repetitive of other testimony, it does not make it non-responsive to the question asked in this instance.

Likewise, the deponent gave responsive answers to questions when asked whether Wayfair audited Gusar's design of the tabletop fire pit sold to Plaintiffs. *Id.* at128:18-130:5. Although the witness explained her answer, again reverting to explanations that Wayfair does not manufacture the products and receives information from the suppliers as part of their framework, she clearly stated that Wayfair did not audit the design of the firepit and did not formally audit the information that Gusar supplied in 2022 or 2023. *Id.*

Overall, the Court finds that, in many instances, Ms. Reilly's answers were evasive and non-responsive. This pattern required Plaintiffs' counsel to ask the same question multiple times, sometimes in multiple ways, until she finally answered the question. This, no doubt, wasted precious time during the deposition — a deposition in which Wayfair's counsel repeatedly reminded Plaintiffs that they only had seven hours with the witness. Given Ms. Reilly's lack of preparation on topics 5, 29(c), and 29(g), the pattern of speaking objections, the potential for additional document production in response to this Order, and Ms. Reilly's non-responsive answers

that required multiple follow-up questions by Plaintiffs' counsel, the Court will allow a second deposition of Wayfair's corporate representative so that Plaintiffs can explore the identified topics with the designated witness and inquire about the completeness of Wayfair's document production as it relates to warnings, labels, and compliance data.  Wayfair shall produce the corporate representative for deposition **no later than June 23, 2026** as further explained below.

### 2.  Plaintiffs' Motion for Sanctions, ECF No. [288]

Plaintiffs also moved for sanctions pursuant to Rule 30(d)(2), arguing that Wayfair's counsel impeded, delayed, or frustrated the fair examination of its Rule 30(b)(6) corporate representative by coaching the witness, instructing her not to answer on behalf of the corporation, and making speaking objections or comments that allegedly suggested how she should answer.  In light of the Court's findings above and the requirement that Wayfair sit for a second deposition, the Court finds it appropriate to sanction Wayfair.  However, the Court will not sanction Wayfair by awarding Plaintiffs the attorney's fees and costs associated with moving to compel the second deposition.  This is because Plaintiffs requested a discovery hearing on nine different issues and only three of the nine issues related to the deposition of Ms. Reilly. It would be inequitable to sanction Wayfair with such attorney's fees and costs when the discovery hearing would have taken place regardless.

With that said, however, Wayfair's failure to adequately prepare the witness on topics 5, 29(c) and 29(g) and its (potential) failure to produce certain documents has forced Plaintiffs to take a second deposition.  In doing so, Plaintiffs will incur certain expenses associated with that deposition, including the cost of the attendance of a court reporter, the cost of the additional transcript, the cost of the videographer, and any travel costs associated with attending a second

deposition.  The Court, therefore, finds it appropriate to tax those costs to Wayfair as a sanction under Rule 30(d)(2).

Accordingly, for the reasons explained above,

1. Plaintiffs' Motion to Compel, **ECF No. [287]**, is **GRANTED in part and DENIED in part**.

    a. **No later than June 23, 2026**, Wayfair shall produce one or more designees to testify at a second deposition about topics 5, 29(c), and 29(g).  Plaintiffs shall have an additional 90 minutes to explore the identified topics with the designated witness(es) and to inquire about the completeness of Wayfair's document production as it relates to warnings, labels, and compliance data and ask any appropriate follow-up questions.  Should Wayfair choose to ask any questions on cross-examination, Plaintiffs will be entitled to an equal amount of time for redirect.

    b. At the continued deposition (and all future depositions for that matter), the Court expects the lawyers to heed the Court's guidance regarding what constitutes an appropriate non-speaking objection.  Failure to follow this guidance may result in the imposition of additional sanctions.

    c. Finally, Wayfair shall instruct the designee(s) to listen to the question that is asked and to answer *only* the specific question asked.  Plaintiffs should not have to ask a question multiple times to obtain an answer.  Failure to follow this instruction may result in the imposition of additional sanctions against Wayfair.

2. Plaintiffs' Motion for Sanctions, **ECF No. [288]**, is **GRANTED in part and DENIED in part**. Plaintiffs shall compile all invoices associated with the second deposition of

26

Wayfair's corporate representative (specifically, invoices for attendance of the court reporter, the cost of the additional transcript, the cost of the videographer, and any travel costs) and serve them on Wayfair's counsel in a single email.  **Within 30 days** of receiving the invoices, Wayfair **SHALL** reimburse Plaintiffs in full.

**DONE AND ORDERED** in Chambers in Miami, Florida on June 8, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record