**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CV-21590-ELFENBEIN

**KAYLA HOMINSKI**, *et al.*,

Plaintiffs,

v.

**GUSAR, LLC**, *et al.*,

Defendants.
_____________________________/

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court on Plaintiff Kayla Hominski and Nicholas Hominski's ("Plaintiffs") Motion for Summary Judgment against Defendants Wayfair LLC ("Wayfair") and Gusar, LLC ("Gusar") (the "Motion"). *See* ECF Nos. [318], [319]. In support of the Motion, Plaintiffs filed a Statement of Material Facts, exhibits, and an appendix. *See* ECF Nos. [318], [330], [331]. Wayfair filed a Response to Plaintiffs' Statement of Material Facts and Additional Facts, ECF No. [345], a Memorandum of Law in Opposition to the Motion (the "Response"), ECF No. [346], and an appendix, ECF No. [349]. Plaintiffs thereafter filed a Reply in Support of the Motion (the "Reply"), ECF No. [351], and a Response to Wayfair's Additional Facts, ECF No. [352]. The Court has carefully considered the Motion, the Response, the Reply, the Parties' respective statements of material facts, the supporting record, and the applicable law. For the reasons explained below, the Motion, **ECF No. [318]**, is **DENIED**.

## I. BACKGROUND[1]

### A. Factual Background

This products-liability action arises from a fire incident involving a tabletop fire pit on the evening of July 14, 2023, or the early morning of July 15, 2023, at Plaintiffs' home in Delaware. *See* ECF Nos. [30] at ¶¶12–29; [318] at ¶¶45–47; [345] at ¶¶45–47. The fire caused Plaintiff Kayla Hominski ("Mrs. Hominski") to sustain extensive burn injuries. *See* ECF Nos. [318] at ¶¶69–78; [345] at ¶¶69–78.

In approximately May 2023, Mrs. Hominski purchased the fire pit from Wayfair's e-commerce website. *See* ECF Nos. [318] at ¶6; [345] at ¶6. Specifically, Gusar manufactured the fire pit, and Wayfair sold the product to Mrs. Hominski through its website. *See* ECF Nos. [318] at ¶¶1–2, 6; [345] at ¶¶1–2, 6. The product was advertised as a smokeless and odorless tabletop fire pit that was easy and safe to use. *See* ECF Nos. [318] at ¶3; [345] at ¶3. Gusar's advertising identified isopropyl alcohol as an appropriate fuel source for the product. *See* ECF Nos. [318] at ¶13; [345] at ¶13.

In the Amended Complaint and the Motion, Plaintiffs contend that the fire pit's design and manufacture created several interrelated dangers that were not apparent to an ordinary consumer. *See* ECF Nos. [30] at ¶¶43–69, 90–119; [319] at 3–12. Specifically, Plaintiffs maintain that the porous concrete used to manufacture the fire pit could absorb isopropyl alcohol, retain fuel beneath the surface, and conceal an invisible or difficult-to-detect flame. *See* ECF Nos. [318] at ¶¶19–24; [319] at 4–9. Plaintiffs further contend that the product lacked a metal liner, flame

[1] To the extent a cited statement does not support the Parties' proposed fact, the Court does not accept that proposed fact as undisputed. *See* Fed. R. Civ. P. 56(c); S.D. Fla. L.R. 56.1(c).

arrestor, or other safety feature that could prevent fuel absorption or reduce the danger of flame jetting during refueling. *See* ECF Nos. [318] at ¶¶25–30; [319] at 4–9.

Certain facts concerning Gusar's manufacturing decisions are not genuinely disputed. *See* ECF Nos. [318] at ¶¶19–32; [345] at ¶¶19–32. Gusar's representative testified that concrete is porous, that the concrete used for the fire pit was porous, and that Gusar did not take steps during manufacturing to eliminate that porosity. *See* ECF Nos. [318] at ¶¶19–24; [345] at ¶¶19–24. Gusar's representative also testified that a metal liner could prevent isopropyl alcohol from being absorbed into the concrete and that Gusar did not incorporate such a liner into the fire pit. *See* ECF Nos. [318] at ¶25; [345] at ¶25. Gusar was aware of flame-jetting hazards associated with isopropyl alcohol and ultimately sold its own alcohol-fuel container with a flame arrestor through other retail channels, although that fuel container was not sold through Wayfair. *See* ECF Nos. [318] at ¶¶28–29; [345] at ¶¶28–29.

The Parties nevertheless dispute the conclusions to be drawn from those facts. *See* ECF Nos. [318] at ¶¶19–32; [345] at ¶¶19–32. Plaintiffs characterize the use of porous concrete, the absence of a liner, and the absence of an integrated flame arrestor or safer fuel system as evidence that the fire pit was negligently and defectively designed and manufactured. *See* ECF No. [319] at 3–12. Wayfair responds that Gusar instructed consumers to empty the fire pit after use to prevent residual alcohol from being absorbed into the concrete. *See* ECF No. [345] at ¶¶21, 24. Wayfair also points to evidence that Gusar retained Intertek Building & Construction ("Intertek"), an independent laboratory, to test the fire pit between March 10 and April 5, 2022, and that the tested product complied with ASTM International F3363-2019.[2] *See* ECF Nos. [345] at ¶95.

---

[2] Although Plaintiffs direct the Court to testimony from Wayfair's corporate representative, Alexa Reilly, to state that the Gusar fire pit was recalled for failing to comply with this ASTM standard, the witness testified that the product was recalled for "[a] number of flame jetting concerns," making no reference to

The Parties also dispute Wayfair's knowledge of the alleged dangers and the adequacy of its supplier-vetting procedures. *See* ECF Nos. [318] at ¶¶5, 7–18, 33–43, 48–65; [345] at ¶¶5, 7–18, 33–43, 48–65. Plaintiffs contend that Wayfair knew about flame-jetting hazards involving fuel-burning products by at least 2016 and knew that other tabletop fire pits had been recalled because of flame-jetting dangers. *See* ECF Nos. [318] at ¶¶7–8, 16. Plaintiffs maintain that Wayfair nevertheless did not independently verify Gusar's warnings, did not conduct an on-site inspection of Gusar's manufacturing operation, and did not specifically require warnings addressing flame jetting, invisible flames, or flame arrestors. *See* ECF Nos. [318] at ¶¶9–12, 15–18, 33–43, 48, 59–65.

Wayfair acknowledges that it had general knowledge of flame jetting in connection with products that use fuels but disputes that it knew this particular fire pit presented a flame-jetting hazard. *See* ECF No. [345] at ¶¶7–8, 16. Wayfair maintains that the earlier recalls cited by Plaintiffs involved different fire-pit models manufactured by unrelated suppliers. *See id.* at ¶8. Wayfair also presents evidence that its suppliers underwent business-registration and insurance verification, were required to execute a Supplier Agreement and Code of Conduct, and were contractually obligated to comply with applicable product-safety, regulatory, testing, warning, labeling, and certification requirements. *See id.* at ¶¶8–12, 15, 17–18, 42–43, 56–57, 95. According to Wayfair, its system prevented a supplier's product listing from becoming active until the supplier provided the required product and compliance information. *See* ECF Nos. [345] at ¶¶9–10, 17.

The Parties generally agree that Wayfair was not involved in creating the fire pit's warnings and marketing materials but disagree about Wayfair's involvement in the review process for such

failing this ASTM standard as the reason for the recall. *See* ECF Nos. [352] at ¶95; [272] at 219:17-23.

materials. *See* ECF Nos. [318] at ¶¶5, 9–10, 38–43, 48, 56–65; [345] at ¶¶5, 9–10, 38–43, 48, 56–65. Plaintiffs contend that Wayfair merely accepted the information Gusar uploaded to its website without independently determining whether the warnings and marketing materials accurately conveyed the product's safety risks. *See* ECF Nos. [318] at ¶¶9–10, 15–18, 38–43, 56–65. Wayfair responds that Gusar, as the supplier and manufacturer, was responsible for creating the warnings, instructions, marketing materials, and fuel recommendations associated with its product, but Wayfair had a series of protocols in place to ensure it had all the necessary product safety information. *See* ECF Nos. [345] at ¶¶9–10, 16, 38–39, 42–43, 48, 50, 56–57, 62.

Plaintiffs also rely on customer reviews that they claim appeared on Wayfair's website before or shortly after the incident. *See* ECF Nos. [318] at ¶¶49–54; [351] at 4–5. According to Plaintiffs, those reviews reported that certain Colsen fire pits cracked, leaked fuel, emitted flames through the sides, or otherwise presented fire hazards. *See* ECF Nos. [318] at ¶¶49–51; [351] at 4–5. Plaintiffs contend that Wayfair's product-recommendation algorithms were driven by sales performance and did not incorporate a mechanism that independently prevented allegedly unsafe products from being recommended to consumers. *See* ECF Nos. [318] at ¶¶51–55; [319] at 7–8.

Wayfair disputes Plaintiffs' characterization and attribution of the customer reviews. *See* ECF No. [345] at ¶¶49–54. Wayfair contended that several reviews identified in the Amended Complaint came from Amazon rather than Wayfair and that the Wayfair review produced during discovery did not reference "base cracking, fuel leaking, flames coming out of the sides and a child being burned." *See id.* at ¶¶49–51. Plaintiffs respond that an exhibit used during Wayfair's corporate-representative deposition contains multiple reviews expressly identified as reviews from Wayfair.com, including reviews reporting cracking, leaking fuel, flames escaping from the sides, and an injury. *See* ECF Nos. [351] at 4–5; [351-1]. Wayfair also

contends that, apart from its recommendation algorithms, it maintained other processes for monitoring customer reviews and promoting customer safety. *See* ECF No. [345] at ¶¶52–54.

The Parties further dispute the warnings and instructions that accompanied the specific fire pit purchased by Mrs. Hominski. *See* ECF Nos. [318] at ¶¶36–41, 48, 59, 63–64; [345] at ¶¶36–41, 48, 59, 63–64, 96–100. Gusar's representative testified that different instruction sheets existed before and after March 2023 and that he could not identify which set of instructions was included with the fire pit purchased by Mrs. Hominski. *See* ECF Nos. [318] at ¶¶36–37; [345] at ¶¶36–37. Plaintiffs contend that the relevant instruction sheet and product listing did not specifically warn about flame jetting, flame arrestors, or the invisible nature of isopropyl-alcohol flames. *See* ECF Nos. [318] at ¶¶38–41, 48, 59, 63–64. Wayfair responds that warnings on the fire pit and in Gusar's written instructions told users not to refill the fire pit while it was burning, not to pour fuel into a fire, not to pour fuel onto a hot surface, and never to add fuel to a hot device. *See* ECF Nos. [345] at ¶¶96–100.

The Parties' principal factual disagreement concerns what happened immediately before Mrs. Hominski was burned. *See* ECF Nos. [318] at ¶¶45–47, 69; [345] at ¶¶45–47, 101–105, 107; [352] at ¶¶101–105, 107. Plaintiffs contend that the fire pit had appeared extinguished for at least twenty minutes, no flame was visible, and Mr. Hominski passed his hand over the fire pit before attempting to relight it. *See* ECF Nos. [318] at ¶¶46–47. According to Plaintiffs, when Mr. Hominski poured isopropyl alcohol into the apparently extinguished fire pit, a concealed or invisible flame caused a flame-jetting event that engulfed Mrs. Hominski. *See* ECF Nos. [318] at ¶¶46–47, 69.

Wayfair offers a materially different account of the incident. *See* ECF Nos. [345] at ¶¶46–47, 101–105, 107. Wayfair points to statements reportedly made to Fire Marshal William Goins

shortly after the incident indicating that the fire pit was almost out but still burning when Mr. Hominski added fuel. *See* ECF Nos. [345] at ¶¶102–105. Wayfair also relies on Fire Marshal Goins's conclusion that the incident was caused by liquid fuel being poured onto an open flame. *See* ECF Nos. [345] at ¶103.

Plaintiffs dispute Wayfair's account and contend that the record establishes that Mr. Hominski observed no visible flame before adding fuel. *See* ECF Nos. [318] at ¶¶46–47; [352] at ¶¶102–107. Plaintiffs further argue that the absence of visible thermal or mechanical damage to the fuel container does not establish that flame jetting did not occur. *See* ECF Nos. [351] at 6–10.

The identity and concentration of the fuel used during the incident are also disputed. *See* ECF Nos. [318] at ¶¶14, 44, 47; [345] at ¶¶14, 44, 96–101; [351] at 6–9; [352] at ¶¶96–101. Plaintiffs maintain that Mr. Hominski used the gallon container of isopropyl alcohol located at the scene and examined during discovery. *See* ECF Nos. [318] at ¶¶14, 44, 47; [351] at 6–8. Wayfair points to a text message arguing that it reflects uncertainty as to whether that gallon container was the container used during the incident and to evidence that Plaintiffs had also purchased another fuel container equipped with a flame arrestor. *See* ECF Nos. [345] at ¶¶14, 44. Plaintiffs challenge the foundation for Wayfair's alternative-container theory and contend that no witness identified the other container as the one used during the incident. *See* ECF No. [351] at 6–9.

Wayfair also contends that the gallon container contained 99.9% isopropyl alcohol, whereas Gusar's written instructions allegedly recommended 70% or 91% isopropyl alcohol. *See* ECF Nos. [345] at ¶¶96–101. According to Wayfair, the gallon container also bore a warning directing users to keep the product away from fire or flame. *See* ECF Nos. [345] at ¶¶96–101. Plaintiffs dispute the materiality of the concentration difference and maintain that Gusar generally promoted higher concentrations of isopropyl alcohol as providing a better

burn. *See* ECF Nos. [318] at ¶¶13–14, 44; [352] at ¶¶96–101. Wayfair additionally relies on evidence that Mr. Hominski had consumed alcoholic beverages before the incident. *See* ECF Nos. [345] at ¶101.

Finally, Wayfair contends that certain damaged physical evidence — including patio furniture, cushions, a rug, a table, and mineral wool — was discarded after Plaintiffs had contemplated litigation. *See* ECF Nos. [345] at ¶¶79–84. Wayfair argues that the discarded items could have assisted its experts in reconstructing the incident and determining the origin and spread of the fire. *See* ECF No. [346] at 15, 18. Plaintiffs respond that family and friends discarded damaged items while Mrs. Hominski remained hospitalized because they did not want Mrs. Hominski or her children to see the burned property when she returned home. *See* ECF Nos. [318] at ¶¶79–84. Plaintiffs further maintain that Mrs. Hominski did not contemplate litigation until approximately two months after her discharge from the hospital. *See* ECF Nos. [318] at ¶84.

Although the Parties vigorously dispute the mechanism and cause of the fire, they do not meaningfully dispute that Mrs. Hominski sustained severe burns requiring intubation and an extended hospitalization in a burn unit. *See* ECF Nos. [318] at ¶¶69–78, 85–86; [345] at ¶¶69, 71–72, 74–78. The present Motion concerns liability on Plaintiffs' substantive claims rather than the amount of Plaintiffs' claimed damages. *See* ECF Nos. [318], [319].

**B. Procedural History**

Plaintiffs commenced this action on April 25, 2024, ECF No. [1], and filed the operative Amended Complaint on August 13, 2024. *See* ECF No. [30]. As relevant to the Motion, the Amended Complaint asserts claims against Gusar, Colsen Fire Pits, LLC,[3] and Wayfair for

[3] Pursuant to Plaintiffs' Motion to Drop Parties, ECF No. [50], Colsen Fire Pits, LLC was dismissed with prejudice on May 22, 2025. *See* ECF No. [136].

negligent design (Count I), negligent manufacturing (Count II), negligent failure to warn (Count III), strict liability based on a design defect (Count IV), strict liability based on a manufacturing defect (Count V), and strict liability based on a failure to warn (Count VI). *See id.* at ¶¶43–138. Plaintiffs allege that the same underlying design, manufacturing, warning, and causation issues support both their negligence and strict-liability theories. *See id.*

Wayfair filed its Amended Answer, Affirmative Defenses, and Crossclaim on January 21, 2025. *See* ECF No. [77]. Wayfair denies that the fire pit was defective, denies that it breached a duty owed to Plaintiffs, disputes Plaintiffs' flame-jetting theory, and asserts defenses including product misuse, comparative fault, apportionment of fault to Gusar and other non-parties, superseding or intervening causation, and spoliation. *See id.*

Plaintiffs filed the Motion and supporting memorandum on July 7, 2026, seeking summary judgment against Wayfair and Gusar on Counts I through VI. *See* ECF Nos. [318], [319]. Plaintiffs also filed audiovisual exhibits and an appendix in support of the Motion. *See* ECF Nos. [330], [331]. Wayfair filed its Response, statement of disputed and additional facts, and appendix on July 21 and July 23, 2026. *See* ECF Nos. [345], [346], [349]. Plaintiffs filed their Reply and Response to Wayfair's additional facts on July 27, 2026. *See* ECF Nos. [351], [352]. The Motion is fully briefed and ripe for review. *See* ECF Nos. [318], [319], [330], [331], [345], [346], [349], [351], [352].

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

A federal court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if "a reasonable trier of fact could return judgment for

the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). A factual dispute is material if it "would affect the outcome of the suit under the governing law." *Id.*

"The mere existence of a scintilla of evidence in support of" the nonmovant's position is insufficient; rather, "there must be evidence on which the jury could reasonably find for the" nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). At the same time, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and the court may not perform those functions at summary judgment. *Id.* at 255. Thus, the question is not whether the court believes the evidence offered by the nonmovant but whether "a fair-minded jury could return a verdict for the [nonmovant] on the evidence presented." *Id.* at 252.

"The moving party" bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). When the movant bears the burden of proof at trial, the movant "must show affirmatively the absence of a genuine issue of material fact" and must support its motion with evidence "that would entitle it to a directed verdict if not controverted at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). The burden imposed on a plaintiff seeking summary judgment on its own claims is therefore greater than the burden imposed on a defendant who may prevail merely by demonstrating an absence of evidence supporting an essential element on which the plaintiff bears the burden at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir. 1993).

If the movant satisfies its initial burden, the nonmovant must identify specific record

evidence demonstrating a genuine dispute for trial. *See Shiver*, 549 F.3d at 1343. The nonmovant may not rely solely on the pleadings or on speculation, conjecture, or evidence that is merely colorable. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Nevertheless, the nonmovant need not prove its case at the summary-judgment stage; it need only present evidence from which a reasonable jury could return a verdict in its favor. *See Anderson*, 477 U.S. at 248–49.

In applying Rule 56, the court must view the evidence "in the light most favorable to the nonmovant" and draw all reasonable inferences in that party's favor. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "Even when the parties agree on the basic facts, summary judgment is inappropriate if reasonable minds might differ on the inferences to be drawn from those facts." *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986). The court "may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Id.*

Rule 56(c) requires the Parties to support their factual positions by citing particular portions of the record or demonstrating that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). The court may consider other materials in the record, although it is not required to search the record independently for uncited evidence. Fed. R. Civ. P. 56(c)(3); *see also Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011). Evidence need not be submitted in the precise form that would be admissible at trial, but the proponent must be able to present the substance of that evidence in an admissible form. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012); Fed. R. Civ. P. 56(c)(2).

Even where a party fails to respond properly to a factual assertion, summary judgment does

not follow automatically and "can only be entered when 'appropriate.'" *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). The court must still determine whether the cited materials establish the asserted fact and whether those facts entitle the movant to judgment as a matter of law. *See id.*; Fed. R. Civ. P. 56(e).

**B. Negligence Under Florida Law**

Under Florida law, negligence requires proof of (1) a duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a failure on the defendant's part to conform to the standard required; (3) a proximate causal connection between the conduct and the resulting injury; and (4) actual loss or damage. *See Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007) (quoting *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). "Negligence may occur at any stage of the design, manufacturing, or marketing process." *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1226 (M.D. Fla. 2009). "To prove any products liability claim sounding in negligence, whether negligent design, negligent manufacture, or the negligent failure to provide adequate warnings or instructions, a plaintiff must establish (1) that the defendant owed a duty of care toward the plaintiff, (2) that the defendant breached that duty, (3) that the breach was the proximate cause of the plaintiff's injury, and (4) that the product was defective or unreasonably dangerous." *Id.*

Whether a defendant breached a duty of reasonable care is ordinarily a question for the jury. *See Williams v. Davis,* 974 So.2d 1052, 1056 n.2 (Fla. 2007). Breach may be resolved as a matter of law only when the evidence permits a single reasonable inference concerning whether the defendant's conduct satisfied the applicable standard of care. *See Fla. Power & Light Co. v. Lively*, 465 So. 2d 1270, 1273 (Fla. 3d DCA 1985) ("The issue of breach of duty is often considered

a question of fact for the jury, unless only one reasonable conclusion may be drawn from the facts in evidence."); *see also Williams*, 974 So. 2d at 1057 n.2 (noting that "establishing the existence of a duty under our negligence law is a minimum threshold legal requirement that opens the courthouse doors to the moving party," and that "[t]he determination of whether that duty was breached in a particular instance, however, will ordinarily be reserved for the fact-finder"); *Randall v. Target Corp.*, No. 13-CV-61196, 2014 WL 222340, at *3 (S.D. Fla. Jan. 21, 2014) ("Whether a party has breached the applicable duty of care is a question of fact generally reserved for the jury.").

Proximate causation likewise ordinarily presents a question of fact. *See McCain v. Fla. Power Corp.*, 593 So. 2d 500, 504 (Fla. 1992) ("[T]he question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve. Thus, where reasonable persons could differ as to whether the facts establish proximate causation—i.e., whether the *specific* injury was genuinely foreseeable or merely an improbable freak—then the resolution of the issue must be left to the fact-finder. The judge is free to take this matter from the fact-finder only where the facts are unequivocal, such as where the evidence supports no more than a single reasonable inference.") (emphasis in original). A defendant's conduct is a legal cause of injury when it directly and in a natural and continuous sequence contributes to the injury such that the injury would not have occurred but for that conduct. *See Sardell v. Malanio*, 202 So. 2d 746, 747 (Fla. 1967). When the evidence supports competing reasonable inferences concerning the cause of an injury, causation must be resolved by the finder of fact. *See Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1116 (Fla. 2005).

Florida follows a comparative-fault system under which a plaintiff's contributory fault generally diminishes the damages awarded in proportion to the plaintiff's percentage of fault. *See*

Fla. Stat. § 768.81(2). As of March 24, 2023, Florida law provides that, if a plaintiff is found to be greater than fifty percent at fault, then that plaintiff may not recover damages. *See* § 768.81(6).[4] Allocation of comparative fault is generally a factual determination for the jury when supported by the evidence. *See Williams v. Davis*, 974 So. 2d 1052, 1061 (Fla. 2007) (noting that "tort liability in Florida is premised on pure comparative negligence, which means that a jury should apportion fault between the plaintiff, defendant, and any third parties alleged to have been at fault").

**C. Strict Products Liability Under Florida Law**

A strict products-liability claim under Florida law requires proof of "(1) a relationship between the defendant and the product; (2) a defect which caused the product to be unreasonably dangerous; and (3) causation between the defect and the harm suffered by the user." *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 607 (11th Cir. 2008). A product may be defective because of its design, its manufacture, or an inadequate warning. *See Cooper*, 653 F. Supp. 2d at 1224.

Strict liability focuses primarily on the condition of the product rather than the manufacturer's or seller's conduct. *See Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1582 n.12 (11th Cir. 1990). Florida extends strict products liability to entities in the distribution chain, including manufacturers, distributors, wholesalers, and retailers that place an allegedly defective product into the stream of commerce. *See Samuel Friedland Fam. Enters. v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994). Under the consumer-expectations test, a product is defectively designed if it "fails to perform as safely as an ordinary consumer would expect when used as intended or in

[4] Section 768.81(6), however, does not apply to an action for damages for personal injury or wrongful death arising out of medical negligence.

a manner reasonably foreseeable by the manufacturer." *Pierre v. Intuitive Surgical, Inc.*, 476 F. Supp. 3d 1260, 1270 (S.D. Fla. 2020) (quoting *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1338-39 (M.D. Fla. 2015)). Under the risk-utility test, a product is unreasonably dangerous when the risks inherent in the design outweigh its benefits. *See id.* at 1271. The consumer-expectations test remains the default test under Florida law, although evidence relevant to risk and utility may also be considered. *See id.* at 1270.

As to claims for a manufacturing defect, a manufacturing defect exists when the particular product "departed from its intended design and failed to perform as safely as the intended design would have performed." *Dye v. Covidien LP*, 470 F. Supp. 3d 1329, 1337 (S.D. Fla. 2020). For negligent and strict liability failure-to-warn claims, a plaintiff must prove that the warning was inadequate and that the inadequacy proximately caused the injury. *See Cooper*, 653 F. Supp. 2d at 1225. Regarding causation, a plaintiff must also establish that an adequate warning would have altered the user's conduct and avoided the injury. *See Stanley Indus., Inc. v. W.M. Barr & Co.*, 784 F. Supp. 1570, 1573 (S.D. Fla. 1992). A plaintiff proceeding under strict liability must still establish that the product defect, rather than an independent cause, proximately caused the injury. *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976) ("In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages."). Product misuse or conduct by the user does not invariably foreclose strict liability, but it may defeat causation, establish that the product was not used as intended or in a reasonably foreseeable manner, or support an allocation of comparative fault. *See Standard Havens Prods., Inc. v. Benitez*, 648 So. 2d 1192, 1197 (Fla. 1994). Although

the adequacy of the warnings will typically be a question of fact, it may "become a question of law where the warning is accurate, clear, and unambiguous." *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 105 (Fla. 1989).

## III. DISCUSSION

Plaintiffs seek summary judgment on all six products liability claims asserted against Wayfair and Gusar. *See* ECF Nos. [318], [319]. Plaintiffs contend that the undisputed evidence establishes negligent design, negligent manufacturing, negligent failure to warn, strict liability for defective design, strict liability for defective manufacture, and strict liability for inadequate warnings. *See* ECF No. [319] at 3–13. Wayfair responds that disputes concerning the product's condition, Wayfair's conduct, the applicable warnings, Plaintiffs' use of the product, the occurrence of flame jetting, and the cause of the fire preclude judgment as a matter of law.[5] *See* ECF Nos. [345], [346].

The Court agrees that summary judgment is inappropriate because genuine disputes exist concerning essential elements of every claim at issue. *See* ECF Nos. [318], [345], [351], [352]. Those disputes cannot be resolved without weighing conflicting evidence, assessing witness

---

[5] The Parties' competing requests to strike one another's Statements of Undisputed Material Facts are denied. *See* ECF Nos. [345] at 1; [346] at 3–5; [351] at 2–4, 6–10. Both sides exceeded the page limitations prescribed by Local Rule 56.1 without leave of Court and are therefore poorly positioned to fault one another for the same deficiency. *See* S.D. Fla. L.R. 56.1. Specifically, Plaintiffs exceeded the page limit by 1.5 pages, not including the signature pages and the Certificate of Service. *See* ECF No. [318]; S.D. Fla. L.R. 7.1(c)(2) (explaining that signature pages and certificates of service do not count toward page limitations). Similarly, Wayfair's Response to Plaintiff's Statement of Undisputed Facts (not including Wayfair's Additional Facts, which are allotted an additional 5 pages) spanned a total of 13.5 pages, exceeding the page limit by 3.5 pages. *See* ECF No. [345]. The Court accepts the filings on this occasion but cautions the Parties that future filings must strictly comply with the Local Rules. The Court also declines to resolve Plaintiffs' challenges to the admissibility of Wayfair's evidence and expert opinions at this time because, even excluding the challenged materials from consideration, genuine disputes of material fact in the record preclude summary judgment. *See* Fed. R. Civ. P. 56(c)(2); ECF No. [351] at 6–10.

credibility, and choosing among competing reasonable inferences, which Rule 56 prohibits. *See Anderson*, 477 U.S. at 255; *Carlin Commc'n*, 802 F.2d at 1356.

**A. Negligent Design – Count I**

Plaintiffs first seek summary judgment on their negligent-design claim. *See* ECF Nos. [30] at ¶¶43–57; [319] at 3–10. To prevail, Plaintiffs must establish the existence of a design defect, a duty to exercise reasonable care in connection with the product, a breach of that duty, and proximate causation. *See Cooper*, *653 F. Supp. 2d at 1226; Williams*, 974 So. 2d at 1056.

Plaintiffs rely heavily on evidence that Gusar manufactured the fire pit from porous concrete, did not incorporate a metal liner, knew about flame-jetting hazards involving isopropyl alcohol, and knew that fuel containers with flame arrestors or alternative fuels could reduce certain dangers. *See* ECF Nos. [318] at ¶¶19–30; [319] at 4–9. That evidence is relevant to whether the fire pit was reasonably designed and whether safer alternative designs were available. *See Pierre*, 476 F. Supp. 3d at 1270. It does not, however, establish negligent design as a matter of law because the record contains conflicting evidence concerning the safety and intended operation of the fire pit. Wayfair identifies evidence that Gusar instructed consumers to empty remaining fuel from the fire pit after use and that the product passed independent testing under ASTM F3363-19. *See* ECF Nos. [345] at ¶¶21, 24, 31, 95; [346] at 10–12. Evidence of compliance with an industry standard does not conclusively establish that a product was reasonably designed, but it may constitute relevant evidence for the jury's consideration in evaluating the reasonableness of the design. *See Davis v. Little Giant Ladder Sys., LLC*, No. 19-CV-780, 2022 WL 3924144, at *7 (M. D. Fla. Aug. 31, 2022)("Generally, compliance with an industry standard is evidence relevant to negligence. Of course, compliance with [such] standards is not dispositive here."). Likewise, the availability of an alternative design may support Plaintiffs' claim but does not necessarily prove that the

selected design breached the standard of reasonable care. *See Taylor v. Johnson Controls Battery Grp., Inc.*, No. 13-CV-1405-MARTINEZ, 2013 WL 12076539 (S.D. Fla. Dec. 13, 2013), *report and recommendation adopted*, No. 13-CV-1405-MARTINEZ, 2014 WL 12187354 (S.D. Fla. Sept. 30, 2014) ("Although the existence of alternative designs does not necessarily mean that the product is defective or unreasonably dangerous . . . it still counts as relevant evidence.").

The Parties also dispute whether the alleged design characteristics caused the fire. *See* ECF Nos. [318] at ¶¶45–47, 69; [345] at ¶¶45–47, 95–105, 107. Plaintiffs contend that the porous concrete retained fuel or concealed an invisible flame that caused flame jetting when Mr. Hominski attempted to relight the product. *See* ECF Nos. [318] at ¶¶19–25, 46–47, 69; [319] at 4–9. Wayfair offers evidence that the product remained burning or hot and that the incident occurred because Mr. Hominski added highly flammable fuel to an existing flame or hot surface. *See* ECF Nos. [345] at ¶¶46–47, 96–105, 107; [346] at 14–18.

Where record evidence supports competing reasonable explanations for an accident, a court may not choose the explanation it finds more persuasive at summary judgment. *See Anderson*, 477 U.S. at 255; *Carlin Commc'n*, 802 F.2d at 1356. Determining whether the fire pit's design caused the incident will require the factfinder to evaluate witness testimony, the physical evidence, the Parties' expert opinions, and the reasonable inferences arising from that evidence. Because breach and causation remain genuinely disputed, Plaintiffs are not entitled to summary judgment on Count I. *See Williams*, 974 So. 2d at 1056; *Goldberg*, 899 So. 2d at 1116.

**B. Negligent Manufacturing – Count II**

Plaintiffs next seek summary judgment on their negligent-manufacturing claim. *See* ECF Nos. [30] at ¶¶58–69; [319] at 3–10. Plaintiffs allege that the particular fire pit deviated from its intended design because it was cracked, constructed with substandard material, insufficiently

tested, or manufactured in a condition that permitted fuel to leak or remain concealed. *See* ECF No. [30] at ¶¶63–68.

A manufacturing-defect claim ordinarily requires evidence that the specific unit departed from the product's intended design or from otherwise identical units in the same product line. *See Dye*, 470 F. Supp. 3d at 1337. Evidence that all units were intentionally designed with the same allegedly unsafe characteristic ordinarily concerns design defect rather than manufacturing defect. *See Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1317–18 (11th Cir. 1989); *see also Hackler v. Gen. Motors LLC*, No. 221-CV-019, 2022 WL 270867, at *7 (S.D. Ga. Jan. 28, 2022) ("Simply put, where all vehicles are alleged to have the same defect, plaintiffs allege a design defect—not a manufacturing or material defect.").

The evidence Plaintiffs emphasize — Gusar's deliberate use of porous concrete and its decision not to use a metal liner or integrated flame arrestor — principally concerns the product's intended design rather than a deviation in this specific unit. *See* ECF Nos. [318] at ¶¶19–30; [319] at 4–9. Although Plaintiffs also contend that the subject fire pit cracked or leaked, Wayfair disputes that the particular unit contained a manufacturing variance and disputes that any crack, leak, or manufacturing deviation caused the fire. *See* ECF Nos. [318] at ¶¶49–51; [345] at ¶¶49–51, 95–105, 107; [346] at 12–18. Even assuming the admissibility of the existence of complaints that other fire pits cracked or leaked, these complaints do not conclusively establish that this particular fire pit deviated from its intended specifications when it left Gusar's possession. *See Dye*, 470 F. Supp. 3d at 1337–38. Nor does the fact that porous concrete was used establish a manufacturing deviation if porous concrete was part of the intended design for all units. *See Harduvel*, 878 F.2d at 1317–18; *Hackler*, 2022 WL 270867, at *7.

The record presented by both Parties raises factual questions concerning whether the subject fire pit differed from its intended design, whether it cracked or leaked before or during the incident, and whether any manufacturing condition caused Mrs. Hominski's injuries. *See* ECF Nos. [30] at ¶¶63–68; [318] at ¶¶19–24, 45–51, 69; [345] at ¶¶ 19–24, 45–51, 95–105, 107. Regarding causation, Wayfair provides competing evidence that Mr. Hominski's negligence, as opposed to a manufacturing defect, proximately caused Mrs. Hominski's injuries. All of these questions require evaluation of the evidence and cannot be resolved in Plaintiffs' favor under Rule 56. *See Anderson*, 477 U.S. at 255; *Carlin Commc'n*, 802 F.2d at 1356. Plaintiffs are therefore not entitled to summary judgment on Count II.

**C. Negligent Failure to Warn – Count III**

Plaintiffs also seek summary judgment on their negligent failure-to-warn claim. *See* ECF Nos. [30] at ¶¶70–89; [319] at 3–10. Plaintiffs must establish that Defendants had a duty to warn about a danger associated with the fire pit, that the warnings provided were inadequate, and that the inadequate warning proximately caused Plaintiffs' injuries. *See Cooper*, 653 F. Supp. 2d at 1224–25.

Plaintiffs identify several dangers that were not expressly described in the warnings, including flame jetting, invisible isopropyl-alcohol flames, the alleged retention of fuel in porous concrete, and the use of fuel containers without flame arrestors. *See* ECF Nos. [318] at ¶¶36–41, 48, 59, 63–64; [319] at 5–9. Plaintiffs also present evidence that Gusar's representative could not determine which of two sets of instructions accompanied the fire pit purchased by Mrs. Hominski. *See* ECF Nos. [318] at ¶¶36–37; [345] at ¶¶36–37.

Wayfair, however, identifies evidence that the fire pit and written instructions warned users not to add fuel to a burning or hot device, not to pour fuel into a fire, and not to pour fuel onto hot

surfaces. *See* ECF Nos. [345] at ¶¶96–100; [346] at 13–17. Those warnings directly relate to Wayfair's theory that the incident occurred because fuel was added while the fire pit remained burning or hot. *See* ECF Nos. [345] at ¶¶102–105, 107; [346] at 15–18.

"[A] warning is adequate if it is communicated by means of positioning, lettering, coloring, and language that will convey to the typical user of average intelligence the information necessary to permit the user to avoid the risk and to use the product safely." *Stanley Indus., Inc.,* 784 F. Supp. at 1575 (citation omitted). Reasonable jurors could disagree about whether a warning to avoid adding fuel to a burning or hot fire pit adequately communicated the more particular risks alleged by Plaintiffs. *See* ECF Nos. [318] at ¶¶36–41, 48, 59, 63–64; [345] at ¶¶36–41, 48, 59, 63–64, 96–100. That disagreement creates a jury question rather than establishing Plaintiffs' entitlement to judgment as a matter of law. *See Felix*, 540 So. 2d at 105; *Anderson*, 477 U.S. at 248–49.

Warning causation is also disputed. *See* ECF Nos. [318] at ¶¶45–48, 69; [345] at ¶¶45–48, 96–105, 107. Plaintiffs contend that they would have acted differently had Defendants warned them about flame jetting, invisible flames, and flame arrestors. *See* ECF Nos. [30] at ¶85; [319] at 5–9. On the other hand, Wayfair's evidence supports an inference that Plaintiffs did not follow warnings already directing users not to add fuel to a burning or hot device. *See* ECF Nos. [345] at ¶¶96–105; [346] at 13–17.

Determining whether Plaintiffs saw, understood, or followed the existing warnings — and whether an additional warning would have prevented the incident — requires credibility determinations and the drawing of competing inferences from Plaintiffs' conduct. *See Cooper*, 653 F. Supp. 2d at 1225; *Stanley Indus., Inc.*, 784 F. Supp. at 1573. The Court cannot resolve

those questions on summary judgment. *See Anderson*, 477 U.S. at 255; *Carlin Commc'n*, 802 F.2d at 1356. Plaintiffs are therefore not entitled to summary judgment on Count III.

**D. Strict Liability Based on Design Defect – Count IV**

Plaintiffs next seek summary judgment on their strict liability design-defect claim. *See* ECF Nos. [30] at ¶¶90–107; [319] at 10–13. Plaintiffs must establish that Wayfair and Gusar had the requisite relationship to the product, that the fire pit contained a defect rendering it unreasonably dangerous, and that the defect caused Plaintiffs' injuries. *See Bailey*, 288 F. App'x at 607.

The relationship element is not meaningfully disputed for purposes of the present Motion because the record reflects that Gusar manufactured the fire pit and Wayfair sold it to Mrs. Hominski. *See* ECF Nos. [318] at ¶¶1–2, 6; [345] at ¶¶1–2, 6. Wayfair's contention that Gusar bore contractual responsibility for the product's design, warnings, and regulatory compliance does not remove Wayfair from the chain of distribution for purposes of strict liability. *See Samuel Friedland*, 630 So. 2d at 1068; ECF Nos. [345] at ¶¶8–10, 16–18, 38–43; [346] at 9–14. The disputed issues are whether the fire pit was unreasonably dangerous and whether an alleged defect caused the fire. *See* ECF Nos. [318] at ¶¶19–30, 45–48, 69; [345] at ¶¶19–31, 45–48, 95–105, 107.

Under the consumer-expectations test, Plaintiffs argue that an ordinary consumer would not expect the fire pit's concrete to absorb fuel, an apparently extinguished fire pit to conceal an invisible flame, or an attempted relighting to result in flame jetting. *See* ECF Nos. [318] at ¶¶19–30, 45–48, 63–65; [319] at 10–13. Wayfair responds that the fire pit did not fail during an intended or reasonably foreseeable use because Mr. Hominski added 99.9% isopropyl alcohol while the product remained burning or hot and contrary to express warnings. *See* ECF Nos. [345] at ¶¶96–

105, 107; [346] at 15–18. The consumer-expectations analysis turns in substantial part on whether Mr. Hominski attempted to relight an apparently extinguished fire pit containing an invisible flame or instead poured fuel onto a fire pit that remained visibly or detectably burning or hot. *See* ECF Nos. [318] at ¶¶45–48, 69; [345] at ¶¶45–48, 96–105, 107. The Court cannot resolve that factual dispute under Rule 56. *See Anderson*, 477 U.S. at 255; *Carlin Commc'n*, 802 F.2d at 1356.

The risk-utility analysis presents similar factual disputes. *See* ECF Nos. [318] at ¶¶19–30; [345] at ¶¶19–31, 95. Plaintiffs rely on the availability of a metal liner, flame arrestor, or alternative fuel to contend that the product's risks outweighed its utility. *See* ECF Nos. [318] at ¶¶25–30; [319] at 4–13. Wayfair points to the product's independent ASTM testing, the intended method of use, and warnings against adding fuel to a burning or hot device. *See* ECF Nos. [345] at ¶¶21, 24, 31, 95–100; [346] at 10–17. Determining the comparative significance of those considerations would require the Court to weigh competing evidence concerning risk, utility, feasibility, and intended use. Because the Court cannot make credibility determinations on summary judgment, Plaintiffs have not established as a matter of law that the fire pit failed the consumer-expectations or risk-utility test. *See Aubin*, 177 So. 3d at 494. Plaintiffs are not entitled to summary judgment on Count IV.

**E. Strict Liability Based on Manufacturing Defect – Count V**

Plaintiffs also seek summary judgment on their strict liability manufacturing-defect claim. *See* ECF Nos. [30] at ¶¶108–119; [319] at 10–13. That claim requires proof that the particular fire pit departed from its intended design or from other units in the product line, that the deviation rendered the product unreasonably dangerous, and that the deviation caused Plaintiffs' injuries. *See Dye*, 470 F. Supp. 3d at 1337–38.

As discussed above, Plaintiffs principally identify characteristics that appear to have been part of the product's intended design, including the use of porous concrete and the absence of a metal liner or integrated flame arrestor. *See* ECF Nos. [318] at ¶¶19–30; [319] at 4–13. Those characteristics may support Plaintiffs' design-defect theory but do not independently establish that the subject unit departed from Gusar's intended specifications. *See Harduvel*, 878 F.2d at 1317–18; *Dye*, 470 F. Supp. 3d at 1337; *Hackler*, 2022 WL 270867, at *7.

Plaintiffs also rely on evidence that some Colsen fire pits cracked or leaked during use. *See* ECF Nos. [318] at ¶¶49–51; [351] at 4–5. Wayfair disputes whether the subject fire pit contained such a crack or leak and whether any physical deviation in this unit contributed to the incident. *See* ECF Nos. [345] at ¶¶49–51, 95–105, 107; [346] at 12–18. Subject to admissibility determinations at trial, the customer reviews may constitute evidence that some units experienced cracking or leaking, but even if considered on summary judgment, they do not establish the condition of Plaintiffs' particular fire pit when it left Gusar's possession. *See Dye*, 470 F. Supp. 3d at 1337–38.

Even assuming a manufacturing deviation existed, Plaintiffs must prove that the deviation caused the fire. *See Bailey*, 288 F. App'x at 607; *Dye*, 470 F. Supp. 3d at 1337–38. The competing evidence concerning flame jetting, an existing flame or hot surface, the fuel container, the fuel concentration, and the fire marshal's conclusions creates a genuine dispute regarding that element. *See* ECF Nos. [318] at ¶¶44–47, 69; [345] at ¶¶44–47, 96–105, 107; [351] at 6–10; [352] at ¶¶96–107. Plaintiffs are therefore not entitled to summary judgment on Count V.

**F. Strict Liability Based on Failure to Warn – Count VI**

Plaintiffs finally seek summary judgment on their strict liability failure-to-warn claim. *See* ECF Nos. [30] at ¶¶120–138; [319] at 10–13. Plaintiffs must establish that the warnings

rendered the product unreasonably dangerous and that an adequate warning would have altered the relevant conduct and prevented the injury. *See Cooper*, 653 F. Supp. 2d at 1224–25; *Stanley Indus., Inc.*, 784 F. Supp. at 1573.

Plaintiffs have produced evidence that the product materials did not expressly address flame jetting, invisible flames, or the need to use a fuel container equipped with a flame arrestor. *See* ECF Nos. [318] at ¶¶36–41, 48, 59, 63–64; [319] at 5–13. Wayfair has produced evidence that the product warned users not to add fuel while the fire pit was burning or hot and not to pour fuel into a fire or onto a hot surface. *See* ECF Nos. [345] at ¶¶96–100; [346] at 13–17. The record therefore presents a factual dispute about whether the warnings sufficiently conveyed the nature and extent of the danger that materialized. *See Felix*, 540 So. 2d at 105; ECF Nos. [318] at ¶¶36–41, 48, 59, 63–64; [345] at ¶¶36–41, 48, 59, 63–64, 96–100.

The record also presents a dispute about whether a different warning would have changed Plaintiffs' conduct. *See* ECF Nos. [30] at ¶85; [345] at ¶¶96–105; [346] at 13–17. Plaintiffs allege that they would not have acted in the same manner had they received adequate warnings regarding invisible flames and flame jetting. *See* ECF Nos. [30] at ¶85; [319] at 5–9. Wayfair's evidence, however, permits an inference that the existing warnings already warned a consumer against engaging in the very conduct that Wayfair contends caused the incident. *See* ECF Nos. [345] at ¶¶96–105; [346] at 13–17.

Whether Plaintiffs would have followed a warning specifically addressing flame jetting or invisible flames is a credibility-dependent factual question. *See Cooper,* 653 F. Supp. 2d at 1225; *Stanley Indus., Inc.*, 784 F. Supp. at 1574-75. Whether Plaintiffs instead disregarded adequate warnings prohibiting the addition of fuel to a burning or hot device is likewise a question for the factfinder. *See Cooper,* 653 F. Supp. 2d at 1225; *Stanley Indus., Inc.*, 784 F. Supp. at 1574-75.

The Court cannot decide either question as a matter of law without crediting one version of the incident over the other. *See Anderson*, 477 U.S. at 255; *Carlin Commc'n*, 802 F.2d at 1356. Accordingly, Plaintiffs are not entitled to summary judgment on Count VI.

**G. Wayfair's Affirmative Defenses**

Plaintiffs' Motion is also denied for an independent reason: Wayfair's affirmative defenses, standing alone, are sufficient reason to deny summary judgment in this case. For Plaintiffs, as the moving party, to obtain summary judgment on liability, they must "show that the record as a whole satisfies each essential element of its case *and* negates any [applicable] affirmative defenses in such a way that no rational trier of fact could find for the non-moving party." *Inversiones YV3343, C.A. v. Lynx FBO Fort Lauderdale, LLC,* No. 21-CV-60197, 2024 WL 2938805, at *4 (S.D. Fla. June 11, 2024) (emphasis in original) (collecting cases). Wayfair has asserted numerous affirmative defenses on liability, including Plaintiffs' comparative fault and the fault of other party and non-party tortfeasors. *See* ECF No. [77] at 22-27. In their Motion, Plaintiffs have not even addressed, much less satisfied their burden, to show that no genuine issue of material facts exists as to any of Wayfair's liability affirmative defenses; therefore, even if there were no disputed issues of fact in Plaintiffs' case in chief, summary judgment would still not be appropriate under the circumstances.

**H. The Motion as to Gusar**

The docket does not reflect that Gusar filed a separate response to the Motion. Gusar's failure to oppose the Motion does not relieve Plaintiffs of their Rule 56 burden or entitle Plaintiffs to summary judgment by default. *See One Piece of Real Prop.*, 363 F.3d at 1101–02; Fed. R. Civ. P. 56(e). The factual disputes identified above are not limited to Wayfair's individual conduct. Whether the fire pit contained a design or manufacturing defect, which instructions accompanied

the product, whether those warnings were adequate, whether flame jetting occurred, whether the product was used as intended, and what caused the fire are material to the claims against Gusar as well as Wayfair. *See* ECF Nos. [30] at ¶¶43–138; [318] at ¶¶19–30, 36–47, 63–69; [345] at ¶¶19–31, 36–47, 63–65, 67–68, 95–105, 107.

Wayfair has identified record evidence that a reasonable jury could use to reject Plaintiffs' account of the incident or determine that Plaintiffs failed to prove defect, warning inadequacy, or causation. *See generally* ECF No. [345]. Evidence contained in the summary-judgment record does not cease to create a genuine factual dispute merely because it was identified by Wayfair rather than by Gusar. *See* Fed. R. Civ. P. 56(c)(3). Rule 56 permits the Court to consider the full record and requires the Court to deny summary judgment when that record reveals a genuine dispute concerning an essential element of the movant's claim. *See* Fed. R. Civ. P. 56(a), (c)(3). Accordingly, Plaintiffs are not entitled to summary judgment on liability against Gusar on Counts I though IV of the Amended Complaint.

## IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that Plaintiffs' Motion for Summary Judgment, **ECF No. [318]**, is **DENIED**.

**DONE and ORDERED** in Chambers in Miami, Florida on September 18, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record