**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CV-21590-ELFENBEIN

**KAYLA HOMINSKI**, *et al.*,

Plaintiffs,

v.

**GUSAR, LLC**, *et al.*,

Defendants.
______________________________/

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

**THIS CAUSE** is before the Court on Defendant Wayfair LLC's ("Wayfair" or "Defendant") Motion to Dismiss for Fraud on the Court (the "Motion"). *See* ECF No. [320]. Plaintiffs Kayla Hominski and Nicholas Hominski ("Plaintiffs") filed a Response in Opposition to the Motion (the "Response"), ECF No. [338], and Defendant filed a Reply in Support of the Motion (the "Reply"), ECF No. [342]. The Court has carefully reviewed the Motion, the Response, the Reply, the exhibits submitted by the Parties, the pertinent portions of the record, and the applicable law. For the reasons explained below, the Motion, **ECF No. [320]**, is **DENIED**.

## I. BACKGROUND

On July 7, 2026, Wayfair filed the Motion seeking dismissal with prejudice of Plaintiffs' claims under the Court's inherent authority based on fraud on the court arising from a series of communications and meetings described below that, according to Wayfair, led the only two eye witnesses to the accident to change their version of events as to how the accident occurred. *See* ECF No. [320]. In the alternative, Wayfair asks the Court to strike portions of the testimony from eye witnesses, Greg Ferraro ("Mr. Ferraro") and Kayla Ferraro ("Ms. Ferraro"), preclude

testimony or expert opinions allegedly derived from improper witness coaching, provide an adverse-inference instruction, and award other appropriate relief. *See id.* at 20.

**A. The Underlying Action**

This products-liability action arises from severe burn injuries that Plaintiff Kayla Hominski ("Mrs. Hominski") sustained while using a tabletop fire pit during the early morning hours of July 15, 2023. *See* ECF No. [30] at ¶¶12–29. Mrs. Hominski purchased the fire pit from Wayfair's website in approximately May 2023. *See id.* at ¶12. Defendant Gusar, LLC ("Gusar") manufactured the fire pit, and Wayfair sold the fire pit through its e-commerce platform. *See id.* at ¶¶5, 7, 12–13.

On the evening of July 14, 2023, Mrs. Hominski, Plaintiff Nicholas Hominski ("Mr. Hominski"), and their friends Mr. and Ms. Ferraro gathered on Plaintiffs' patio and used the fire pit. *See id.* at ¶¶18–21; ECF No. [320] at 2–3. Plaintiffs allege that the fire pit eventually appeared to be extinguished and that Mr. Hominski observed no visible flame before adding isopropyl alcohol to relight it. *See* ECF No. [30] at ¶¶19–23. Plaintiffs further allege that a concealed or invisible flame caused a flame-jetting event that engulfed Mrs. Hominski and inflicted extensive burn injuries. *See id.* at ¶¶23–29.

Wayfair disputes Plaintiffs' account of the incident and maintains that the fire pit remained burning when Mr. Hominski added isopropyl alcohol. *See* ECF No. [320] at 2–3. Wayfair relies principally on statements attributed to Mr. and Ms. Ferraro in the investigative report of Delaware State Fire Marshal William Goins. *See id.* at 3; ECF No. [320-1]. According to the report, Mr. Ferraro stated that the fire was "almost out but still burning" when Mr. Hominski attempted to refill the fire pit, and Ms. Ferraro reportedly stated that Mr. Hominski began refilling the device "while it was still burning." ECF Nos. [320] at 3; [320-1]. Fire Marshal Goins ultimately classified

the cause of the incident as accidental and described it as “liquid fuel poured onto open flame.” ECF Nos. [320] at 3; [320-1].

Wayfair also relies on records from law enforcement, emergency response, and the fire department along with medical records containing statements that rubbing alcohol or another accelerant was poured onto a fire or fire pit. *See* ECF No. [320] at 3; ECF Nos. [320-2]–[320-5]. Plaintiffs dispute that those records conclusively establish that a visible flame was present when Mr. Hominski added fuel and maintain that the presence of an invisible flame is consistent with their flame-jetting theory. *See* ECF Nos. [30] at ¶¶19–29; [338] at 3–7.

**B. Witness Preparation and Depositions**

Plaintiffs identified Mr. and Ms. Ferraro in their initial disclosures as individuals with discoverable information concerning the incident and instructed that communications with them be directed through Plaintiffs’ then-counsel. *See* ECF Nos. [320] at 4; [320-6]. Wayfair’s counsel thereafter asked Plaintiffs’ former counsel whether they represented the Ferraros. *See* ECF Nos. [320] at 4; [320-7] at 2. According to Wayfair’s counsel, Plaintiffs’ former counsel informed her during a telephone conversation that his firm represented the Ferraros. *See* ECF Nos. [320] at 4; [320-8] at ¶¶3–4. Ms. Ferraro subsequently testified at her deposition that she was not represented by counsel. *See* ECF Nos. [320] at 4; [320-9] at 7:2–4. Plaintiffs respond that the cited communications are consistent with counsel coordinating the scheduling of depositions. *See* ECF No. [338] at 6–7.

Before the depositions of the Ferraros, Plaintiffs’ former counsel met with them and reviewed materials concerning the incident. *See* ECF Nos. [277] at 20–21; [320] at 7–10; [338] at 3–7. During their depositions, both Ferraros acknowledged that they learned about flame jetting or invisible flames after the incident. *See* ECF No. [320] at 10; ECF Nos. [320-18]–[320-21]. Ms.

Ferraro testified that Plaintiffs' former counsel showed her a video of something she considered similar to the incident and explained that a flame could burn invisibly. *See* ECF No. [320] at 10; ECF Nos. [320-18], [320-20]. Mr. Ferraro similarly testified that Plaintiffs' former counsel explained the concept of flame jetting to him. *See* ECF Nos. [320] at 10; [320-21].

The Ferraros also testified about the substance of their preparation meetings. *See* ECF No. [277] at 20–21. Ms. Ferraro testified that Plaintiffs' former counsel walked the witnesses through what to expect during their depositions and reviewed prior statements and reports with them. *See id.* at 20–21. Ms. Ferraro characterized the discussion as addressing "our recollection" and "our truth behind all of it" and testified that she did not discuss the substance of her anticipated testimony with Plaintiffs. *See id.* Mr. Ferraro testified that he met with counsel and reviewed reports, but he denied that counsel told him what had occurred. *See id.* at 21.

At Fire Marshal Goins's deposition, Plaintiffs' former counsel represented that the Ferraros testified they did not see a visible flame when Mr. Hominski added fuel and asked whether an invisible flame could reconcile that testimony with the Fire Marshal's report. *See* ECF No. [320] at 10–12; ECF No. [320-24] at 193:4–195:9. Fire Marshal Goins maintained that both witnesses told him the fire pit was still burning when it was refueled. *See* ECF No. [320] at 11–12; ECF No. [320-24] at 195:19–20, 197:12–15, 199:2–8.

**C. Plaintiffs' Communications With Former Counsel and Third Parties**

Wayfair also relies on text messages and voice notes involving Mrs. Hominski and Plaintiffs' former counsel. *See* ECF No. [320] at 5–7, 12. In an October 23, 2024 text message, Mrs. Hominski stated that Mr. Ferraro was concerned he might have told an investigator that Mr. Hominski poured fuel onto an open flame, but that Mr. Ferraro did not understand invisible flames and would speak with Plaintiffs' former counsel. *See id.* at 5; ECF No. [320-10]. Mrs. Hominski

further related that counsel had said Mr. Ferraro did not know at the time what Plaintiffs asserted they now knew to be true. *See* ECF Nos. [320] at 5; [320-10].

In an October 24, 2024 voice note to a friend, Mrs. Hominski discussed Mr. Ferraro's concern that he might have previously stated that he saw Mr. Hominski pour fuel onto a flame. *See* ECF No. [320] at 5–7; ECF No. [320-11]. Mrs. Hominski described counsel's anticipated plan to explain the Consumer Product Safety Commission's findings, show the videos to the Ferraros concerning invisible flames and flame jetting, and explain why Mr. Ferraro might have perceived an open flame after Mr. Hominski poured the fuel. *See* ECF Nos. [320] at 5–7; [320-11]. The voice note included Mrs. Hominski's statement that counsel needed to "massage it a little bit" by explaining why Mr. Ferraro might believe he saw what he reported despite Plaintiffs' theory that the relevant flame was invisible. *See* ECF Nos. [320] at 6–7; [320-11].

On October 24, 2024, Plaintiffs' former counsel sent Mrs. Hominski a text message stating, "Remember Nick waited until fire was out and gave it time to cool down." ECF No. [320] at 7; ECF No. [320-12] at 3. In an October 25, 2024 text message, Mrs. Hominski again stated that Mr. Ferraro believed he saw Mr. Hominski pour fuel onto a flame but did not understand flame jetting, and she stated that Plaintiffs' counsel needed "to prove to him the facts." ECF No. [320] at 7; ECF No. [320-13].

Wayfair additionally relies on a November 2024 email exchange in which Mrs. Hominski sent counsel text messages obtained by searching the term "Wayfair." ECF No. [320] at 12; ECF No. [320-25]. One of Plaintiffs' former attorneys responded that Plaintiffs would not produce the texts and instructed Mrs. Hominski not to put similar matters in writing to anyone other than her attorneys or husband. *See* ECF Nos. [320] at 12; [320-25]. Wayfair maintains that the underlying text-message screenshots attached to Mrs. Hominski's email have not been produced. *See* ECF

No. [320] at 12. Plaintiffs dispute that the communications show a scheme to suppress discoverable information and argue that Wayfair did not seek the production of specific contextual materials in accordance with the Court's prior discovery order. *See* ECF No. [338] at 6. Plaintiffs further argue that Wayfair could have sought to reconvene the depositions of the Ferraros after learning additional information about their witness-preparation meetings but did not do so. *See* ECF No. [338] at 6–7.

**D. The Court's Prior Privilege Order**

The communications and witness-preparation allegations previously arose in connection with Wayfair's Second Motion to Compel Production of Attorney-Client Communications. *See* ECF Nos. [189], [231], [277]. In that motion, Wayfair argued that Plaintiffs had waived the attorney-client privilege under Federal Rule of Evidence 502(b) and that the crime-fraud exception independently required disclosure of additional communications. *See* ECF No. [277] at 1–5. The Court agreed that Plaintiffs waived privilege as to attorney-client communications contained in their September 23, 2025 production because Plaintiffs did not satisfy Rule 502(b)'s requirements for avoiding waiver following an inadvertent production. *See id.* at 10–15, 22–23. The Court therefore permitted Wayfair to use the communications actually contained in that production, including the October 24, 2024 text message and Mrs. Hominski's voice note. *See id.* at 22–23.

The Court rejected Wayfair's separate reliance on the crime-fraud exception. *See id.* at 15–23. The Court determined that Wayfair had not made a *prima facie* showing that Plaintiffs or their former counsel engaged in witness tampering, subornation of perjury, or fraud, or that the attorney-client communications furthered any such conduct. *See id.* at 18–22. The Court found that the cited communications were susceptible to more than one reasonable interpretation and that the Ferraros' sworn testimony described their meetings with counsel as ordinary deposition

preparation involving a review of reports, prior statements, and their recollections. *See id.* at 19–21. The Court further found no evidence that counsel instructed the Ferraros to lie, repudiate truthful statements, or adopt testimony counsel knew to be false. *See id.* at 20–22.

## II. LEGAL STANDARDS

Federal courts possess inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). That authority includes the power to impose sanctions for conduct that abuses the judicial process. *See id.* at 44–46; *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

Dismissal with prejudice is among the most severe sanctions a federal court may impose. *See Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006). It is "a sanction of last resort, applicable only in extreme circumstances," and generally requires both "a clear record of willful conduct" and a finding that lesser sanctions are inadequate. *Id.* (quoting *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)); *see also Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1339 (11th Cir. 2005). A court exercising its inherent authority must find "bad faith," and the sanction imposed must bear a sufficient relationship to the misconduct found. *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017); *Martin*, 307 F.3d at 1335.

"Fraud upon the court" is a narrow category of misconduct. *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551–52 (11th Cir. 1985). It encompasses "only that species of fraud which does or attempts to[] defile the court itself, or is a fraud perpetrated by officers of the court so that the

judicial machinery cannot perform in the usual manner its impartial task of adjudging cases[.]" *Id.* at 1551 (quoting *7 Moore's Federal Practice* § 60.33). The doctrine is generally reserved for "the most egregious misconduct," such as bribery of a judge or juror or the fabrication of evidence by counsel in which an attorney is implicated. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978); *see also S.E.C. v. ESM Grp., Inc.*, 835 F.2d 270, 273 (11th Cir. 1988).

Conduct constitutes fraud on the court only when it involves an unconscionable scheme calculated to improperly influence the court or interfere with the judicial system's ability impartially to adjudicate the matter. *See Stonecreek - AAA, LLC v. Wells Fargo Bank N.A.*, No. 12-CV-23850, 2014 WL 12514900, at *1 (S.D. Fla. May 13, 2014) ("A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989))).

Fraud between the parties, without more, does not ordinarily constitute fraud on the court. *See Patterson v. Lew*, 265 F. App'x 767, 769 (11th Cir. 2008); *Travelers Indem.*, 761 F.2d at 1552. Neither nondisclosure nor perjury by a witness, standing alone, ordinarily rises to fraud on the court because the adversary system provides mechanisms for exposing those matters. *See Travelers Indem.*, 761 F.2d at 1552; *Patterson*, 265 F. App'x at 769.

The moving party must establish fraud on the court by clear and convincing evidence. *See Booker v. Dugger*, 825 F.2d 281, 283 (11th Cir. 1987); *Gupta v. U.S. Att'y Gen.*, 556 F. App'x 838, 840 (11th Cir. 2014). Clear and convincing evidence is proof that produces "a firm belief or conviction" regarding the truth of the allegations and is more demanding than proof by a

preponderance of the evidence. *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 285 n.11 (1990); *see also Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). "Conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud." *Booker*, 825 F.2d at 283–84 (quoting *Di Vito v. Fidelity & Deposit Co. of Maryland,* 361 F.2d 936, 939 (7th Cir.1966)).

## III. DISCUSSION

### A. The Court's Prior Order Does Not Procedurally Bar the Motion

Plaintiffs principally characterize the Motion as an untimely request for reconsideration of the Court's prior privilege ruling and invoke Federal Rule of Civil Procedure 59(e) and the law-of-the-case doctrine. *See* ECF No. [338] at 1–6. Wayfair responds that the present Motion invokes the Court's inherent authority, applies a different legal standard, and seeks case-dispositive sanctions rather than disclosure of privileged communications. *See* ECF No. [342] at 4–5.

The Court agrees with Wayfair that the Motion is not procedurally barred. The prior order resolved whether Plaintiffs waived privilege under Federal Rule of Evidence 502(b) and whether the crime-fraud exception permitted discovery of otherwise privileged communications. *See* ECF No. [277] at 1–23. The present Motion, by contrast, asks the Court to exercise its inherent authority to dismiss the action based on alleged fraud on the court. *See* ECF No. [320] at 13–20. Those inquiries concern different relief, burdens, and legal standards. *See* ECF Nos. [277] at 5–10; [320] at 13–20.

Rule 59(e) does not apply because the privilege order was an interlocutory discovery order rather than a final judgment. *See* Fed. R. Civ. P. 54(b), 59(e); ECF No. [277]. Nor does the law-of-the-case doctrine categorically bar the Court from considering a later motion that seeks different

relief under a distinct source of authority, particularly where the Court did not previously decide the issue of fraud on the Court. *See Murphy v. FDIC*, 208 F.3d 959, 966 (11th Cir. 2000) ("Law of the case is an amorphous concept. The doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the *same issues* in subsequent stages in the same case. The purpose of the doctrine is to bring an end to litigation by foreclosing the possibility of repeatedly litigating *an issue already decided*.") (citations omitted) (emphasis added). The Court will therefore consider the Motion on its merits.[1]

### B. Wayfair Has Not Established an Unconscionable Scheme by Clear and Convincing Evidence

Wayfair's theory is that Plaintiffs and their former counsel deliberately attempted to replace the Ferraros' contemporaneous accounts with a litigation-created narrative involving invisible flames and flame jetting. *See* ECF Nos. [320] at 1–2, 5–19; [342] at 1–6. Wayfair maintains that the alleged scheme included restricting access to the Ferraros, showing them litigation-created and post-incident materials, discussing how to persuade Mr. Ferraro that his prior understanding was mistaken, eliciting testimony consistent with Plaintiffs' theory, and then using that testimony to challenge Fire Marshal Goins's findings. *See* ECF Nos. [320] at 4–19; [342] at 1–6.

The October 2024 communications might be understood as reflecting Plaintiffs' desire to persuade Mr. Ferraro that his initial understanding of the incident was incorrect. *See* ECF No. [320] at 5–7; ECF Nos. [320-10]–[320-13]. Those circumstances, however, do not establish by

---

[1] That conclusion does not render the prior order irrelevant. *See* ECF No. [277]. The prior order evaluated substantially the same text messages, voice notes, preparation meetings, and deposition testimony now offered in support of dismissal and found that those materials did not establish even a *prima facie* basis for applying the crime-fraud exception. *See* ECF No. [277] at 18–22. Although the present inquiry is legally distinct, Wayfair must now satisfy the substantially more demanding requirement of proving fraud on the court by clear and convincing evidence. *See Booker*, 825 F.2d at 283–84.

clear and convincing evidence that Plaintiffs and counsel knowingly devised an unconscionable scheme to manufacture false testimony. *See Stonecreek - AAA, LLC*, 2014 WL 12514900, at *1; *Aoude*, 892 F.2d at 1118. The communications might also be consistent with Plaintiffs' belief — whether ultimately correct or incorrect — that the Ferraros initially misunderstood the scientific mechanism of the incident because they lacked information about invisible alcohol flames and flame jetting. *See* ECF No. [320] at 5–10; ECF Nos. [320-10]–[320-13]. Whether a visible flame was present, whether an invisible flame remained, whether flame jetting occurred, and what caused the fire remain disputed liability questions. *See* ECF Nos. [30] at ¶¶19–29; [320] at 2–3, 10–12; [338] at 3–7. The Court cannot infer a knowing effort to fabricate testimony merely because Plaintiffs and their counsel advocated for Plaintiffs' version of those unresolved facts. *See ESM Grp.*, 835 F.2d at 273; *Travelers Indem.*, 761 F.2d at 1551–52.

The Ferraros' sworn testimony also does not establish that counsel directed either witness to testify falsely. Ms. Ferraro described the preparation meeting as a review of what to expect, prior reports, the witnesses' recollection, and "our truth behind all of it." ECF No. [277] at 20–21. She testified that she did not discuss the substance of the deposition with Plaintiffs. *See id.* Mr. Ferraro testified that counsel reviewed reports with him and denied that counsel told him what happened. *See* ECF Nos. [277] at 21. This does not convert the Ferraros' sworn testimony into clear and convincing evidence of fraud. *See ESM Grp.*, 835 F.2d at 273; *Travelers Indem.*, 761 F.2d at 1551–52.

Nor does the existence of inconsistencies between the Fire Marshal's report and the Ferraros' later testimony compel a finding that the later testimony was fabricated. The report attributes statements to both witnesses indicating that the fire pit was still burning, while their later testimony distinguishes between the existence of a flame and whether the flame was visible.

*See* ECF No. [320] at 3, 10–12; ECF Nos. [320-1], [320-22]–[320-24]. That distinction may prove persuasive or unpersuasive, but determining whether it reflects a genuine clarification, a changed recollection, an inaccurate report, or improper influence requires credibility determinations that this Court cannot make. *See Howell v. Compass Grp.*, 448 F. App'x 30, 36 (11th Cir. 2011) ("It is the jury's job, not ours, to make credibility determinations.").

Fraud on the court cannot be established merely by asking the Court to select Wayfair's interpretation of disputed evidence over Plaintiffs' interpretation. *See Booker*, 825 F.2d at 283–84; *Travelers Indem.*, 761 F.2d at 1551–52. The clear-and-convincing standard requires evidence capable of producing a firm conviction that Plaintiffs knowingly participated in a scheme designed to corrupt the adjudicative process. *See Booker*, 825 F.2d at 283–84; *Cruzan*, 497 U.S. at 285 n.11; *see also Colorado*, 467 U.S. at 316. The competing reasonable interpretations of the communications and witness testimony prevent such a finding on this record.

**C. The Alleged Restriction on Witness Access Does Not Establish Fraud on the Court**

Wayfair also argues that Plaintiffs' former counsel falsely represented that counsel represented the Ferraros and thereby prevented Wayfair from independently contacting them before their depositions. *See* ECF No. [320] at 4; ECF Nos. [320-6]–[320-9]. Plaintiffs respond that the written communications may reflect nothing more than counsel's coordination of the depositions. *See* ECF No. [338] at 6–7.

The Court need not determine which interpretation is ultimately correct because the evidence here does not establish fraud on the court by clear and convincing evidence. Wayfair's supporting declaration recounts its counsel's understanding of an oral representation, while the written correspondence does not itself memorialize a representation that the Ferraros were represented parties. *See* ECF Nos. [320-7], [320-8]. Ms. Ferraro's later testimony that she was

not represented does not establish that Plaintiffs or counsel intentionally misrepresented the Ferraros' status to corrupt the judicial process. *See* ECF Nos. [320] at 4; [320-9] at 7:2–4. Wayfair ultimately deposed both Ferraros, questioned them under oath, obtained their accounts, and obtained the opportunity to compare those accounts with the Fire Marshal's report. *See* ECF Nos. [277] at 20–21; [320] at 10–12. On the existing record, the alleged restriction on pre-deposition access does not demonstrate that the judicial machinery can no longer perform its ordinary adjudicative function. *See Travelers Indem.*, 761 F.2d at 1551–52.

**D. The Discovery Communications Do Not Establish Fraud on the Court**

Wayfair further relies on former counsel's email stating that Plaintiffs would not produce certain text messages and directing Mrs. Hominski not to put similar information in writing outside communications with counsel or her husband. *See* ECF No. [320] at 12; ECF No. [320-25]. Wayfair maintains that the referenced attachments remain unproduced and characterizes the communication as evidence of continued efforts to control or suppress the factual record. *See* ECF No. [320] at 12, 18.

Wayfair has failed to explain as to how this establishes fraud on the court. Former counsel's statement that particular communications will not be produced may reflect a privilege position, a relevance objection, a discovery dispute, or an improper intent; the isolated statement does not establish which explanation applies. *See* ECF Nos. [320] at 12; [320-25]; [338] at 6. Wayfair has not shown by clear and convincing evidence that Plaintiffs destroyed the underlying messages, submitted fabricated discovery responses, violated an order compelling their production, or prevented Wayfair from presenting the issue to the Court through the ordinary discovery process. Even intentional nondisclosure between litigants ordinarily does not constitute fraud on the court unless it is part of conduct that defiles the Court itself or prevents the judicial

machinery from operating impartially. *See Rozier*, 573 F.2d at 1339; *Travelers Indem.*, 761 F.2d at 1551–52; *Patterson*, 265 F. App'x at 769. The record does not establish that extraordinary circumstance here.

**E. The Alleged Inconsistencies Are Proper Subjects for Impeachment and Trial**

The central premise of Wayfair's Motion is that the Ferraros' later testimony materially differs from the statements attributed to them in Fire Marshal Goins's report. *See* ECF No. [320] at 2–3, 10–12, 16–19. The adversarial process remains capable of addressing that discrepancy. The jury can then evaluate each witness's credibility and determine which account, if any, is reliable. *See Howell*, 448 F. App'x at 36. The existence of those ordinary trial mechanisms weighs strongly against employing the extraordinary doctrine of fraud on the court. *See Travelers Indem.*, 761 F.2d at 1551–52.

**F. Dismissal and the Requested Alternative Sanctions Are Not Warranted**

Dismissal with prejudice requires a clear record of willful misconduct and a determination that no lesser sanction would adequately protect the judicial process. *See Zocaras*, 465 F.3d at 483; *Betty K Agencies*, 432 F.3d at 1337–39. Wayfair has not established either requirement. The record does not support a finding that the alleged conduct has made a fair trial impossible or has so corrupted the judicial process that dismissal is the only effective response. *See Travelers Indem.*, 761 F.2d at 1551–52; *Zocaras*, 465 F.3d at 483.

Wayfair's alternative requests to strike portions of the Ferraros' testimony, exclude expert opinions, or obtain an adverse-inference instruction are also denied. *See* ECF No. [320] at 20. An adverse inference ordinarily requires findings concerning the loss, alteration, or suppression of evidence and the responsible party's intent, which must rise to the level of bad faith, none of which Wayfair has established in the Motion. *See ML Healthcare Servs., LLC v. Publix Super Mkts.,*

*Inc.*, 881 F.3d 1293, 1308 (11th Cir. 2018). The Court's ruling does not determine the permissible scope of examination at trial. It holds only that Wayfair has not established fraud on the court by clear and convincing evidence and therefore has not demonstrated entitlement to dismissal or the requested alternative sanctions.

## IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that Wayfair's Motion to Dismiss for Fraud on the Court, **ECF No. [320]**, is **DENIED**.

**DONE and ORDERED** in Chambers in Miami, Florida on September 21, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record